COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                         SUPERIOR COURT DEPARTMENT OF THE
                                       TRIAL COURT



```
                                    )
WILLIAM A. STORIE,                  )
     Plaintiff,                     )
                                    )
VS.                                 )   No. 2003-2104 C
                                    )
BENEFICIAL FINANCE/HOUSEHOLD        )
RETAIL FINANCE,                     )
     Defendants.                    )
                                    )
```

## DEFENDANTS' OBJECTION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

Now come Defendants, Beneficial Finance and Household Retail Finance, in the above-captioned matter, and hereby object to the Plaintiff's purported Application for a Preliminary Injunction.[1] As grounds for this Objection, Defendants state that Plaintiff cannot show a likelihood of success on the merits or that he will suffer irreparable harm if his application for preliminary injunction is denied.  Moreover, Plaintiff cannot show that his alleged risk of irreparable harm outweighs the probable harm to the Defendants or justifies changing the status quo.  As further grounds for this Objection, Defendants rely upon and incorporate by reference the attached Memorandum of Law and Exhibits annexed thereto.

---

[1] Plaintiff did not file a separate Motion for Preliminary Injunction but filed a hand-written Complaint in which he sought injunctive relief.

WHEREFORE, Defendants request that this Honorable Court deny Plaintiff's

Application for Preliminary Injunction.

                                    Defendants,
                                    Beneficial Finance/Household Retail Finance
                                    By its Attorneys,
                                    Shechtman Halperin Savage, LLP,


                                    _____
                                    Christine L. DeRosa BBO# 641171
                                    86 Weybosset Street
                                    Providence, RI 02903
                                    (401) 272-1400 phone
                                    (401) 272-1403 fax


## CERTIFICATE OF SERVICE

        I certify that the within Defendants' Objection To Plaintiff's Motion for
Preliminary Injunction was served upon the following *pro se* Plaintiff by overnight mail,
postage prepaid, on November 12, 2003:

William A. Storie
59 Crawford Road
Oakham, MA 01068

                                    _____
                                    Christine L. DeRosa

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT

|  |  |  |
|---|---|---|
| WILLIAM A. STORIE,<br>　　　Plaintiff, | ) ) ) | |
| VS. | ) ) | No. 2003-2104 C |
| BENEFICIAL FINANCE/HOUSEHOLD<br>RETAIL FINANCE,<br>　　　Defendants. | ) ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

Defendants, Beneficial Finance and Household Retail Finance ("Defendants"), in the above-entitled matter, respectfully submit this Memorandum of Law in Support of their Objection to Plaintiff's Application for Preliminary Injunction.

### I. INTRODUCTION

Plaintiff entered into a loan agreement with Beneficial Massachusetts Inc. Plaintiff asserts vague claims that Defendants acted improperly with respect to the loan agreement at issue. Although not entirely clear from the Complaint, it appears as if Plaintiff is seeking to rescind his loan agreement. As part of his Complaint, Plaintiff requested injunctive relief. Specifically, Plaintiff requested that the outstanding principal balance on the loan be placed in escrow, that Defendants be restrained from taking any action on the loan, and that Defendants bear court costs for any order entered in response to his requests.

Plaintiffs' request for relief must be denied as he cannot sustain his burden of proving that a preliminary injunction should issue in his favor. First, Plaintiff cannot show a reasonable

likelihood of success on the merits because: (1) the Complaint fails to state a claim upon which

relief may be granted; (2) the statute of limitations for rescission or any action regarding the loan

at issue have expired; (3) Plaintiff admits that he entered into a General Release regarding the

loan at issue as part of a settlement facilitated by the Massachusetts Attorney General; (4)

Plaintiff has failed to name or serve the appropriate defendant or actual existing legal entity; and

(5) even if Plaintiff has cognizable claims against Defendants, such claims must be submitted to

arbitration pursuant to Plaintiff's contracts with Beneficial Massachusetts Inc.

Second, Plaintiff cannot prove that he is at risk of any irreparable harm if his request is

denied since Defendants have not taken any adverse actions regarding the loan at issue. Third,

the weighing of equities favor maintaining the status quo and requiring Plaintiff to continue

honoring his loan agreement with Beneficial Massachusetts Inc.

## II. PROCEDURAL HISTORY

William Store, the *pro se* Plaintiff, filed a Complaint against Defendants on or about

October 30, 2003. At that time he also obtained a Summons and Order of Notice setting this

matter down for hearing on his purported Application for Preliminary Injunction on November 7,

2003. The matter was heard by the Honorable Judge Page who issued an order, upon Plaintiff's

payment of $90.00, ordering Plaintiff "not to make any payments to the defendant until after the

[further] hearing" which the Court originally set down for November 17th. Upon agreement of

the parties and approval of the Court, the further hearing has been rescheduled to November 21st.

## III. FACTS

Plaintiff entered into Home Equity Credit Line Revolving Loan Agreement (the "Loan")

with Beneficial Massachusetts Inc. ("Beneficial") on August 24, 2000.[1] Pursuant to the terms of

---

[1] Beneficial Massachusetts Inc. has not been named or served in this matter.

2

the Loan, Plaintiff was given an initial line of credit in the amount of $37,000.00. See Ex. A.

Plaintiff granted Beneficial a mortgage in his property located in Oakham, Massachusetts to

secure the Loan. See Ex. B. When Plaintiff obtained the Loan from Beneficial, he executed a

Loan Agreement as well as an Arbitration Rider. See Ex. C. The Arbitration Rider contains a

mutual mandatory arbitration clause and states that it applies to any and all claims "arising from

or relating to this [Loan] Agreement or the relationships which result from Agreement, including

the validity or enforceability of this arbitration clause." See Ex. C.

On August 23, 2003, Plaintiff executed a General Release in favor of Household

International, Inc., Household Finance Corporation, Beneficial Corporation, and their direct and

indirect subsidiaries, affiliates, officers, directors, employees, agents, related entities, successors,

and assigns. In exchange for a minimum specified sum, Plaintiff released Household

> from all civil actions and causes of actions which [Plaintiff] may have as
> of the date of this release agreement, in contract, in tort . . . whether know
> or unknown . . . that arise from or are related to the restitution received or
> the following lending practices by Household in connection with
> [Plaintiff's Loan]

The lending practices set forth in the release included "Household's conduct with respect to":

> loan points and origination fees, interest rates, monthly payment amounts,
> single premium credit and other insurance products, prepayment penalties,
> loans offered through a negotiable check . . . home equity lines of credit,
> loan billing practices relating to simple interest calculations, balloon
> payments, payoff information, non English documentation, and net
> tangible benefit in loan refinancing.

After executing the General Release in August of 2003, Plaintiff requested a

payoff figure from Beneficial using an on-line form on or about October 26, 2003. See

Ex.D   In response to his request, Beneficial forwarded Plaintiff a payoff figure that was

good through October 31, 2003, and contained a per diem figure in the event Plaintiff

chose to pay off the loan after the expiration of the estimated pay-off date. See Ex. E

Plaintiff was apparently angered by the 5-days that elapsed from the time he requested

the pay off until the time he received it in the mail. Based upon vague allegations that the

Loan had "placed [him] in a very difficult situation" on October 29, 2003, Plaintiff

demanded that Beneficial reduce his principal balance by $2,000.00. See Ex. F. Plaintiff

then commenced this suit the next day and sought injunctive relief pursuant to which it

appears that Plaintiff is seeking to avoid making any payments or accruing any interest

during the pendency of this matter.

### III. STANDARD FOR PRELIMINARY INJUNCTIONS

In deciding whether or not to grant an application for preliminary injunction, the Court

must act upon "an abbreviated presentation of the facts and the law." Packaging Indus. Group,

Inc. v. Cheney, 380 Mass. 609, 616 (1980). Although the Court acts on an abbreviated record,

the Plaintiff's burden of proof is rather high and includes a showing that: (1) he has a reasonable

likelihood of success on the merits; (2) he will suffer a substantial risk of immediate and

irreparable harm if the court denies the requested relief; and (3) the harm he will suffer

outweighs any harm Defendants may suffer if an injunction issues.   Loyal Order of Moose, Inc.

v. Bd. of Health of Yarmouth, 439 Mass. 597, 601 (2003); Tri-Nel Mgt., Inc. v. Bd. of Health of

Barnstable, 433 Mass. 217, 219 (2001). "Only where the balance between these risks [the risk of

harm to the Plaintiff and risk of harm to the Defendants] cuts in favor of the moving party may a

preliminary injunction properly issue." Planned Parenthood League v. Operation Rescue, 406

Mass. 701, 717 (1990)(quoting Packaging Indus., supra at 609). Generally, the court should

strive to preserve the status quo pending a final outcome such that "a meaningful decision may

be rendered for either party" at the conclusion. Packaging Indus., 380 Mass. At 616; Boston City

Council v. Menino, 2000 Mass. Super. LEXIS 161 *26 (J. Burnes)(refusing to grant preliminary

4

injunction where doing so would change the status quo in favor of a party not likely to succeed

on the merits.) If granted, a preliminary injunction must be "narrow, carefully tailored, and

reasonably specific". <u>Planned Parenthood</u>, <u>supra</u> at 717 (1990)(internal quotations and citations

omitted).

## IV. ARGUMENT

### A.    Plaintiff Cannot Demonstrate A Likelihood Of Prevailing On The Merits.

Plaintiff alleges in his Complaint that he obtained a home equity loan from "Beneficial

Finance" for approximately $38,000.00 more than 3 years ago. He further claims that his loan

was deemed predatory in nature by some unidentified source. Plaintiff admits that he elected to

participate in a settlement facilitated by the Massachusetts Attorney General and that he executed

a General Release in that regard. As described above, this Court must, as a threshold matter in

considering the present application, evaluate the likelihood that Plaintiff would succeed on each

of these claims at trial. Defendants assert that Plaintiff's factual allegations, as contained in his

Complaint supporting the present request for injunctive relief do not, and cannot, support these

claims.

1.    <u>The Complaint fails to state a claim upon which relief may be granted.</u>

Based upon the assertions contained in the Complaint, Plaintiff has failed to state a

cognizable claim. Although Massachusetts requires only notice pleading, Plaintiff must still

plead his case sufficiently so as to put the Defendants on notice as to the nature of the claims.

<u>Berish v. Bornstein</u>, 437 Mass. 252, 269 (2002)("A complaint must, however, contain 'a short

and plain statement of the claim,' which affords fair notice to the defendant of the basis and

nature of the action against him.")(quoting Mass. R. Civ. P. 8(a)(1)). Plaintiff's claim that the

Loan was "predatory" is insufficient because he fails to describe the manner in which the Loan

5

was "predatory" and further fails to specify the damages, if any, he claims to have suffered as a result of Defendants' conduct. Defendants are left to guess as to the claims that Plaintiff is asserting. In fact, it is unclear as to whether Plaintiff is even aware of the claims he believes he has against Defendants since he claims he is *in the process* of consulting with an attorney to determine whether he can negate the General Release that he signed. "Even by the generous standards of notice pleading, the plaintiff's complaint is 'grievously murky'." Epstein v. Liberty Bank & Trust Co., 12 Mass. App. Ct. 1000 (1981).

Plaintiff failed to even completely and properly fill out the civil action cover sheet regarding his statement of damages and thus, it is unclear as to whether Plaintiff claims he has suffered any damage as a result of Defendants' conduct and if so, the cause and the amount. Moreover, Plaintiff's failure to cite even one statute or common law theory of recovery has made it impossible for Defendants to adequately respond to the Complaint.[2] Defendants are left to guess as to the nature of Plaintiff's claims and the amount, or even existence, of damages.[3]

In addition, the Complaint names "Beneficial Finance/Household Retail Finance." There are no such entities or corporations in existence under those names. The only potential proper party is Beneficial Massachusetts Inc. since that is the corporation with whom Plaintiff contracted regarding the Loan at issue. Plaintiff's failure to properly name and serve the proper defendant mandates that his Complaint be dismissed.[4]

---

[2] Plaintiff has indicated that he intends to amend the Complaint. Defendants will likely file a Motion for More Definite Statement if Plaintiff does not amend his Complaint to more specifically plead his case.

[3] Plaintiff's failure to complete the statement of damages renders it impossible to ascertain whether or not this Court even has subject matter jurisdiction over this matter as a question exists as to whether Plaintiff meets the threshold damage amount.

[4] Plaintiff has intimated that he plans to amend his Complaint. At the hearing on November 7th, he indicated that he would be amending his complaint to add his wife as a party in an attempt to circumvent the General Release which she did not sign. Such an attempt to amend would be futile as Mrs. Storie was not a party to the Loan agreement.

2.    The statute of limitations has expired.

Although it is unclear as to what claims Plaintiff has attempted to assert against

Defendants, Plaintiff has intimated that he is seeking to rescind his Loan and such a claim must

arise under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Under TILA, when a

consumer loan is secured by the borrower's principal dwelling, that borrower may rescind the

loan if the lender does not accurately disclose certain important terms. See Beach v. Ocwen

Federal Bank, 523 U.S. 410, 118 S. Ct. 1408, 1412-13, 140 L. Ed. 2d 566 (1998). "Under

§ 1635(f) of the statute, this right of rescission 'shall expire' in the usual case three years after

the loan closes or upon the sale of the secured property, whichever date is earlier." Id. In Beach,

the Supreme Court unequivocally stated that "§ 1635(f) completely extinguishes the right of

rescission at the end of the 3-year period." Any right Plaintiff may have had to rescind the Loan

expired at the time he closed on the Loan in August of 2000 or, at the latest and upon certain

circumstances, in August of 2003. The filing of the Complaint in October of 2003, thus, was

untimely and Plaintiff's claim for rescission is barred by the statute of limitations.

3.    Plaintiff's execution of the General Release bars his claims against Defendants.

Plaintiff admits that he executed a General Release in favor of the Defendants. The scope

of the General Release is extremely broad and releases any claims arising from Household's

conduct in connection with "home equity lines of credit". The Loan at issue is a home equity

line of credit and thus, Plaintiff's decision to participate in the settlement facilitated by the

Massachusetts Attorney General bars him from pursuing his claims against the Defendants. See

Schuster v. Baskin, 354 Mass. 137, 140 (1968)(holding that the "release is broad and general"

and barred plaintiff's claims). Our Supreme Judicial Court has clearly stated its position that a

release must "be given effect, even if the parties did not have in mind all the wrongs which

7

existed at the time of the release. Naukeag Inn, Inc. v. Rideout, 351 Mass. 353, 356 (1966).

Thus, any and all claims Plaintiff may have regarding the Loan are barred by the General

Release.

    4.    Plaintiff executed a valid and enforceable Arbitration Rider.

Even if Plaintiff's claims were not barred by the General Release, he is required to submit

any and all claims to arbitration pursuant to the terms of the Loan agreement and the

incorporated Arbitration Rider. The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") governs

the enforcement of the Arbitration Rider.[5] See 9 U.C.C. § 2 (noting that the FAA applies to any

"contract evidencing a transaction involving commerce to settle by arbitration . . "); DeLuca v.

Stearns & Co., Inc., et al., 175 F.Supp. 2d 102, 106 (D.Mass. 2001)(noting the FAA governs the

enforcement of most arbitration agreements). The United States Supreme Court has announced

that public policy strongly favors arbitration and the enforcement of arbitration agreements

"*notwithstanding any state substantive or procedural policies to the contrary*." Moses H. Cone

Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 74 L.Ed. 2d 765, 103 S.Ct. 927

(1983)(emphasis added); see also Perry v. Thomas, 482 U.S. 483, 493, 107 S.Ct. 2520, 96 L. Ed.

2d 426 (1987)(holding FAA preempted California state statute regarding enforceability of

arbitration agreement); Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 404, 87 S.Ct. 1801,

1806, 18 L.Ed. 2d 1270, 1277 (1967)(noting courts must honor "the unmistakably clear

congressional purpose that the arbitration procedure, when selected by the parties to a contract,

be speedy and not subject to delay and obstruction in the courts."); see also, McGrew v. Kraft

Patriots, Inc., 3 Mass. L. Rep. 316, 1995 Mass. Super. LEXIS 854, *6-9 (1995) (J.Connolly)

(granting defendant's motion to enforce arbitration and stay proceedings in light of broad

_____

[5] The Arbitration Rider provides that it is "made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 – 16 (the "FAA")."

language which required the parties submit "any dispute, claim, cause of action" to arbitration.).

Thus, even if Plaintiff's unarticulated claims arise under state law, it would not impact the

applicability of the FAA or the federal courts' and Congress's general policy of enforcement.

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."

Title 9 U.S.C. § 2. Thus, when presented with a valid arbitration agreement, the court must

direct the parties to proceed to arbitration in accordance with the terms of their agreement. See

Title 9 U.S.C. § 4. Given the "strong federal policy favoring arbitration . . . any doubt over

whether a particular dispute is covered by an arbitration agreement should be resolved in favor of

arbitration." Williams v. HealthAlliance Hosps., Inc., 158 F.Supp.2d 156, 159 (D.Mass.2001)

(citing Moses, supra and AT&T Tech., Inc. v. Communications Workers, 106 S.Ct. 1415, 89

L.Ed.2d 648, (1986)); see PacifiCare Health Sys. v. Book, 123 S. Ct. 1531, 1536, 155 L. Ed. 2d

578, 584 (2003); Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001).

Here, the Plaintiff must submit to arbitration because he executed the Arbitration Rider which

contains broad language and warrants a presumption of validity and enforcement.

Since Plaintiff failed to state a claim upon which relief may be granted, failed to name

and serve the appropriate defendants, executed a General Release which effectively bars him

from maintaining any action against the Defendants, failed to seek rescission within the

applicable statute of limitations, and must submit all claims to arbitration in accordance with a

valid and enforceable Arbitration Rider, he cannot show a reasonable likelihood of success on

the merits and his application for preliminary injunction must be denied. See Siemens Building

Tech., Inc. v. Div. of Capital Asset Mgt., 439 Mass. 759 (2003)(affirming superior court's denial

of motion for preliminary injunction where claims were unlikely to succeed).

9

**B.    Plaintiff Cannot Demonstrate A Substantial Risk Of Irreparable Harm.**

In order to be entitled to a preliminary injunction, Plaintiff must show he will incur a substantial risk of irreparable harm if the injunction does not issue.  To prove a substantial risk of irreparable harm, Plaintiff must prove that has no adequate remedy at law.  If money damages can compensate Plaintiff for is alleged loss, Plaintiff has an adequate remedy at law and an injunction may not issue.  Boston City Council v. Menino, 2000 Mass. Super. LEXIS 161*26 (J.Burnes.)("Irreparable harm is a loss of rights that cannot be vindicated, should the party seeking an injunction prevail after a full hearing on the merits.")(citing Planned Parenthood supra at 710).

Here, it appears that Plaintiff is seeking to obtain a reduction of his principal balance as a result of Defendants' conduct.  "The degree to which money can soothe the injury is a principal indicator of the irreparability of the harm." Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc., 10 Mass. App. Ct. 70, 72 (1980). Plaintiff has not even asserted that he will suffer substantial risk of irreparable harm if his request for preliminary injunction is denied.  Since money damages will suffice to compensate Plaintiff if he ultimately prevails against Defendants, he cannot demonstrate he will be irreparably harmed if his request for relief is denied.  Al Cass, Inc. v. Cassinelli, 1999 Mass. Super. LEXIS 50 (J.Toomey)(noting loss of money loss does not constitute an irreparable injury) (citing Foxboro Co. v. Arabian American Oil Co., 805 F.2d 34 (1st Cir., 1986)).  This is particularly true in a case such as this where Plaintiff is current on his Loan and is not facing foreclosure.

**C.    The Harm Defendants Will Suffer If An Injunction Issues Outweighs Any Alleged Harm To Plaintiff If The Injunction Is Denied.**

"[P]reliminary injunction is a drastic remedy that a court should not grant unless the movant, by a clear showing, carries the burden of persuasion. Knapik v. McGuire, 1999 Mass.

10

Super. LEXIS 209 (J. Hillman)(citing Charles Wright & Arthur Miller, 11 FED. PRACTICE &
PROCEDURE, 2948, at pp. 129-30 (1995)). "[T]he purpose of a preliminary injunction is "only to
preserve the status quo while the case is under consideration." Petricca Constr. Co. v.
Commonwealth, 37 Mass. App. Ct. 392, 399 (1994)(citing Jet-Line Servs., Inc. v. Selectmen of
Stoughton, 25 Mass. App. Ct. 645, 649-650 (1988)). The issuance of an injunction in this case
would completely alter the debtor-creditor relationship between the parties. Since an injunction
would change the status quo, Plaintiff's request must be denied.

Plaintiff has requested that all activity cease on the Loan. Presumably Plaintiff is seeking
to block the accrual of interest during the pendency of this matter. Pursuant to the Loan
agreement, Beneficial is entitled to the interest which continues to accrue on the Loan and is
entitled to timely monthly payments from the Plaintiff. Since Plaintiff's Complaint is likely to
be dismissed based upon the reasons set forth above, most notably due to the existence of the
General Release, requiring Beneficial to forego its right to interest during the pendency of this
action is unfair and would result in harm to Beneficial. If the Court denies Plaintiff's application
for injunctive relief, Plaintiff would not be harmed because he is still free to pay off his Loan if
he so chooses and to attempt to continue to pursue his claims (subject to the defenses raised by
Defendants). Since the balance of harms cuts against Plaintiff, his application for injunctive
relief must be denied. See Planned Parenthood, supra at 710 (noting only if balancing of "risks
cuts in favor of the moving party may a preliminary injunction properly issue.")(internal citation
omitted).

Plaintiff cannot demonstrate that he is likely to prevail on the merits, that he will suffer a
substantial and immediate risk of irreparable harm if his request for relief is denied, or that the

risk of harm he may to bear is greater than the actual harm that Defendants will suffer if the injunction issues. Accordingly, Plaintiff's application for preliminary injunction must be denied.

## V. CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants respectfully request that Plaintiff's Application for Preliminary Injunction be denied.

<div style="margin-left:40%">

Defendants,
Beneficial Finance/
Household Retail Finance
By its Attorneys,
Shechtman Halperin Savage, LLP,

Christine L. DeRosa BBO# 641171
86 Weybosset Street
Providence, RI 02903
(401) 272-1400 phone
(401) 272-1403 fax

</div>

## CERTIFICATE OF SERVICE

I certify that the within Memorandum of Law in Support of Defendants' Objection To Plaintiff's Motion for Preliminary Injunction was served upon the following *pro se* Plaintiff by overnight mail, postage prepaid, on November 12, 2003:

William A. Storie
59 Crawford Road
Oakham, MA 01068

Christine L. DeRosa

A true copy by photostatic process
Attest:
Asst. Clerk

12

## HOME EQUITY CREDIT LINE REVOLVING LOAN AGREEMENT (Page 1 of 6)

**LENDER (called "We", "Us", "Our")**
BENEFICIAL MASSACHUSETTS INC.
72 MADISON STREET
WORCESTER MA 01608

**BORROWERS (called "You", "Your")**          LOAN NO: 521721-17-506554
STORIE, WILLIAM A
SS# 020445742
59 CRAWFORD RD
OAKHAM MA 01068

| ON PORTION OF AVERAGE DAILY BALANCE | MONTHLY PERIODIC RATE | ANNUAL PERCENTAGE RATE: |
|---|---|---|
| .01 AND OVER | 1.167 % = | 14.000 % |
|  |  |  |
|  |  |  |
|  |  | % |

| CREDIT LIMIT | DATE OF THIS AGREEMENT |
|---|---|
| $ 37000 | 08/24/00 |
| INITIAL ANNUAL FEE | SUBSEQUENT ANNUAL FEE |
| $ 50.00 | $ 60.00 |

**ORIGINATION FEE FINANCE CHARGE**
$ 1850.00

In this Agreement, "you", "your" and "Borrower" mean the customer(s) who signs this Agreement. "We", "us", and "our" refer to Lender. This Agreement covers the terms and conditions of your Home Equity Credit Line Revolving Loan Account ("Account"). We want you to understand how your Home Equity Credit Line Revolving Loan Account works. Read this carefully, ask us any questions, and if you agree to be bound by this Agreement, sign below. If more than one person signs, each will be responsible for repaying all sums advanced under this Agreement.

Your Home Equity Credit Line Account is a revolving line of credit extended to you and secured as described below. You can obtain funds from your Home Equity Credit Line Revolving Loan Account (up to your credit limit) directly from us or by using the special checks we supply to you. You may pay your total unpaid balance at any time or in installments.

YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS.

REQUIRED INSURANCE. You may obtain any required insurance from anyone you choose. You must obtain insurance for term of loan covering security for this loan as indicated by the word "YES" below, naming us as Loss Payee:

YES
Title Insurance on real estate security.
Fire and extended coverage insurance on real estate security.
Physical damage insurance on vehicle listed under "Security" above if "Y" appears under "Insured".
Physical damage insurance on other property listed under "Security" above if "Y" appears under "Insured".

NOTICE: SEE THE FOLLOWING PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.

01-24-00 F RE
2ND MTG

*S050A74BDP95RLA9000MAB579110**STORIE          *          ORIGINAL

MAB57911

## HOME EQUITY CREDIT LINE REVOLVING LOAN AGREEMENT (Page 2 of 6)

**Available Credit:** You may obtain funds directly from us or through your special checks up to your available credit. Your available credit is your credit limit (shown on page one) less the total unpaid balance, including Finance Charges. Your Account. If you make loan payments by check, we will adjust your available credit seven days after we receive your check to allow for check clearing. You agree not to request funds in an amount that would cause you to exceed your available credit. If you do so, we are not obligated to honor your request, but if we do lend you an amount over your available credit, you agree to pay us that excess amount, plus Finance Charges and Over the Credit Limit Charges, if any, immediately upon our request.

**Minimum Draw and Balance Requirements:** The maximum amount that may be withdrawn in any billing cycle is your available credit. The minimum credit advance by check that you can receive is $100.

**Promise to Pay:** You promise to pay Lender: (a) amounts borrowed under this Agreement; (b) Finance Charges, Administrative Charges (the late charge, bad check charge and over the credit limit charge), the Prepayment Penalty, and other charges provided in this Agreement; (c) credit insurance charges, if any; (d) collection costs permitted by applicable law, including reasonable attorneys' fees and court costs; (e) amounts in excess of your credit limit that we may lend you; and (f) amounts that we may (but need not) pay or that are otherwise due under your Mortgage.

**Payments:** You may not use your special checks to pay any amounts due under this Agreement. If you repay the entire outstanding balance of your Account at any time and your account is cancelled, you may have to pay a prepayment penalty as described on Page 3. You may not use your special checks to pay any amounts due under this Agreement. Because the Periodic Finance Charge is computed each day, you will contact us regarding the exact payoff amount for the day you intend to make full payment.

If you do not pay the entire unpaid balance on your Account at once, you agree to pay at least the minimum payment shown on your monthly statement at the address indicated on the monthly statement.

**Payment Amount:** The monthly repayment amount necessary to completely repay the Principal Balance and applicable Finance Charge during the time period represented by the Payment Factor indicated below, assuming no additional cash advances are taken.

Your initial Payment Amount is calculated using the Payment Factor shown below. Every time you take an additional cash advance, the Payment Amount on your Account will be recalculated using the Payment Factor shown below.

Once your Payment Amount is determined, this amount will remain fixed for subsequent billing periods until a new advance is posted to your account. When this occurs, your Payment Amount will be recalculated based on the Payment Factor described below.

**Payment Factor:** The time period in months during which, if each Payment Amount is paid on the Due Date specified on the billing statement, the Principal Balance and applicable Finance Charge will be fully repaid. The appropriate Payment Factor is determined with reference to the following schedule:

| Credit Limit | Payment Factor (months) |
|---|---|
| $0 through $25,000 | 120 |
| $25,001 through $50,000 | 180 |
| $50,001 through $100,000 | 240 |
| $100,001 and over | 360 |

**Minimum Payment:** The Minimum Monthly Payment for any billing cycle will be the greater of $50 or the Payment Amount (as described above) plus any Insurance Charges, Administrative Charges and any amounts past due.

**Application of Payments:** Your payments on this Account are applied first to past due amounts of the following charges in the following order: (a) insurance charges, if any, (b) Finance Charge, if any, (c) Administrative Charges if any, and (d) Principal, if any. Your payments are then applied to current due amounts of these charges in the same order.

**Finance Charge:** Finance Charges are the total of (a) Periodic Finance Charges, (b) Origination Fee Finance Charge, and (c) Document Preparation Fee.

NOTICE: SEE THE FOLLOWING PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.

01-24-00 F RE
2ND MTG

MAB57912

*S050A74BDP95RLA9000MAB579120M**STORIE          *          ORIGINAL

HOME EQUITY CREDIT LINE REVOLVING LOAN AGREEMENT (Page 3 of 6)

(a) **Periodic Finance Charges:** This is the interest charged on the balance of your Account during each billing cycle. The Periodic Finance Charge is calculated from the date that each advance, check or charge is posted to your Account. The Periodic Finance Charge is computed by multiplying the average daily balance in your Account in each billing cycle times the monthly periodic rate stated on page one. The average daily balance is determined by totaling all daily unpaid balances in each billing cycle and dividing the total by the number of days in that cycle. A daily unpaid balance is the amount owed each day, including any unpaid Periodic Finance Charge, Administrative Charges, and credit insurance charges for prior billing cycles. The Annual Percentage Rate stated on page one (corresponding to the monthly periodic rate) includes only interest and does not include other costs.

(b) **Origination Fee Finance Charge:** This is the one-time origination fee that we charge for opening this Account. The Origination Fee Finance Charge is stated on page one and is due and payable on this date.

(c) **Document Preparation Fee:** This is a one time fee shown on the Revolving Loan Voucher that we charge for processing your loan and preparing your loan documentation.

**Annual Fee:** You agree to pay an annual fee for participation in this revolving credit plan. The initial Annual Fee stated on page one is due and payable on the date your account is opened. The Subsequent Annual Fee stated on page one is due and payable on the same day of each subsequent year.

**Late Charge:** If you do not pay the Minimum Payment within 15 days after the Due Date shown on your Billing Statement, we will charge you a Late Charge equal to 10% of the unpaid Monthly Payment or $10.00, whichever is less.

**Bad Check Charge:** If you pay by a check which is returned for any reason, you agree to pay a bad check charge of $10.

**Over the Credit Limit Charge:** We may charge you $25.00 if you issue a special check for which you do not have sufficient available credit and which is returned to us by the bank on which it is drawn.

**Other Charges:** You agree to pay any amounts actually incurred by us for services rendered in connection with the Credit Line Revolving Loan Account for taxes, title examination, appraisal, title insurance, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Mortgage. You agree that these fees may be charged to your account balance.

**Prepayment Penalty:** If you prepay the entire outstanding balance of your Account at any time within five (5) years of the contract date, and your Account is cancelled (including a release of the Mortgage on your real estate), you agree to pay a prepayment penalty equal to not more than 6 months advance interest (at the monthly periodic rate in effect as of the pay-off date) on the unpaid balance as of the pay-off date. No prepayment penalty will be imposed: (a) for prepayment by proceeds of any credit insurance or acceleration after default; (b) after five years from the contract date.

**Security:** There is a Mortgage on your real estate, which is located at your address stated on page one, unless a different address is stated. You agree to give us a security interest in the real estate as described in the Mortgage/Deed of Trust which will secure all indebtedness, including future advances under this Agreement.

**Property Insurance:**

A.  **Your Obligation to Insure:** You shall keep the structures located on the real property securing this Account insured against damage cause by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is cancelled or expires while the Account is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.

B.  **Lender's Right to Place Hazard Insurance:** You authorize us, at our option, to obtain coverage on the Property in an amount not greater than the outstanding balance of principal and interest on the Account or, if known to be less, the replacement value of the Property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance and add the insurance charges to the Unpaid Balance of your Account which will accrue interest at the Monthly Periodic Rate in effect on the Account. The addition of these insurance charges to the Unpaid Balance on your Account is treated just like a cash advance and will result in the recalculation of the Payment Amount on your Account as explained in the Payment Amount provision of this Agreement. The cost of Lender Placed Hazard Insurance might be higher than the cost of standard insurance protecting the Property. The Lender Placed Hazard Insurance will not insure the contents of the Property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit (i.e. commission, service fee, expense reimbursement, etc.) from the

NOTICE: SEE THE FOLLOWING PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.

01-24-00 F RE
2ND MTG

*S050A74BDP95RLA9000MAB57913D**STORIE          *          ORIGINAL

MAB57913

### HOME EQUITY CREDIT LINE REVOLVING LOAN AGREEMENT (Page 4 of 6)

placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your Account.

**Exchange of Information:** You understand that from time to time we may receive credit information concerning you from others, such as stores, other lenders, and credit reporting agencies. You authorize us to share any information, on a regular basis, we obtain related to your Account, including but not limited to credit reports and insurance information, with any of our affiliated corporations, subsidiaries or other third parties. The uses of this information may include an inquiry to determine if you qualify for additional offers of credit. You also authorize us to share any information regarding your Account with any of our affiliated corporations, subsidiaries or other third parties. **You may prohibit the sharing of such information (except for the sharing of information about transactions or experiences between us and you) by sending a written request which contains your full name, Social Security Number and Address to us at P.O. Box 1547, Chesapeake, VA 23320.**

If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to you.

**Changes in this Agreement:** We may change the terms of this Agreement if you consent or if such changes benefit you or are insignificant. We may change any amounts that we collect for taxes, property insurance, or credit insurance, if applicable. Prior written notice of changes will be given to you when required by applicable law. Changes may apply to both new and outstanding balances unless prohibited by applicable law. Termination of your credit limit will occur only as provided in the "Default and Cancellation of Agreement" and "Suspension or Reduction of Credit Privileges" paragraphs.

**Tax Deductibility:** You should consult a tax advisor regarding the deductibility of interest and charges for the credit line.

**Default and Cancellation of Agreement:** We have the right to terminate your Credit Line Account and to require you to pay your entire balance plus all other accrued but unpaid charges immediately because of:

(a) failure to make two or more payments when due under this Agreement;

(b) fraud or material misrepresentation in connection with the credit line; including failure to supply us with any material information requested or supplying us with misleading, false, incomplete or incorrect material information;

(c) the filing of a bankruptcy petition by or against you accompanied by failure to make any payment when due under this Agreement;

(d) the death of any borrower who signs this Agreement which adversely affects the property or our rights in the property securing this Agreement;

(e) the institution of foreclosure proceedings or condemnation proceedings on the property or the institution of a trustee sale by a lienholder, or governmental seizure of the property;

(f) the sale or transfer of any interest in the property securing this Agreement, without our consent (unless our consent is not required under your Mortgage);

(g) the creation of a lien on the property if such lien adversely affects the property or our rights in the property securing this Agreement;

(h) failure to maintain the property, failure to pay real estate taxes on the property, abandonment of the property, failure to keep the property insured, or any action which is a default under your Mortgage which adversely affects the property or our rights in the property securing this Agreement; or

(i) any other action or inaction you take that adversely affects the property or our rights in the property securing this Agreement.

After default, you will pay our court costs, reasonable attorney fees (if attorney is not our salaried employee), and other collection costs related to the default, if not prohibited by applicable law.

Any balance outstanding under this Agreement when the credit limit is terminated will continue to accrue interest at the contract rate until paid in full. You agree to pay interest on any judgment at the contract rate.

**Suspension or Reduction of Credit Privileges:** We have the right to prohibit additional advances or extensions of credit and to reduce the credit limit applicable to this Agreement if:

NOTICE: SEE THE FOLLOWING PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.

01-24-00 F RE
2ND MTG



*S050A74BDP95RLA9000MAB57914D**XSTORIE          *          ORIGINAL

MAB57914

HOME EQUITY CREDIT LINE REVOLVING LOAN AGREEMENT (Page 5 of 6)

(a) the amount of your unused equity in the property securing this Agreement has decreased by 50% or more (from the amount of your unused equity at the time the current credit limit was established), based on a decrease in the appraisal value from the time the current credit limit was established;

(b) we reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances (including the filing of a bankruptcy petition);

(c) you are in default of any of the material terms or conditions of this Agreement, including frequent overdraws of your line of credit or failure to use or occupy real estate security as your primary residence;

(d) any governmental action occurs that prevents us from charging the annual percentage rate provided for in this Agreement or that adversely affects our rights in the property securing this Agreement such that the value of our security interest in the property is less than 120% of your credit limit;

(e) any regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice;

(f) any borrower who signs this Agreement requests us to prohibit additional advances or to reduce the credit limit; or

(g) any of the events listed under "Default and Cancellation of Agreement" occurs.

Notice will be given to you as required by applicable law.

**Miscellaneous:** If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this Agreement will remain valid and enforceable. Our failure to enforce any terms of this Agreement shall not be deemed to constitute a waiver of such terms. In order for any amendment to this Agreement to be valid, it must be in writing.

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and Lender's responsibilities under the Fair Credit Billing Act.

#### Notify Lender In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write Lender on a separate sheet at the address listed on your bill after the words: "Send your billing error notice to: (Lender's name and address)". Write to Lender as soon as possible. Lender must hear from you no later than 60 days after Lender sent you the first bill on which the error or problem appeared. You can telephone Lender, but doing so will not preserve your rights.

In your letter, give Lender the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

#### Your Rights and Lender's Responsibilities After Lender Receives Your Written Notice

Lender must acknowledge your letter within 30 days, unless Lender has corrected the error by then. Within 90 days, Lender must either correct the error or explain why Lender believes the bill was correct.

After Lender receives your letter, Lender cannot try to collect any amount you question, or report you as delinquent. Lender can continue to bill you for the amount you question, including Finance Charges, and Lender can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while Lender is investigating, but you are still obligated to pay the parts of your bill that are not in question.

If Lender finds that Lender made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If Lender did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, Lender will send you a statement of the amount you owe and the date that it is due.

NOTICE: SEE THE FOLLOWING PAGE FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.

01-24-00 F RE
2ND MTG                                                                              MAB57915



×SD50A74BDP95RLA900QMAB579150×*STORIE          ×                    ORIGINAL

## HOME EQUITY CREDIT LINE REVOLVING LOAN AGREEMENT (Page 6 of 6)

If you fail to pay the amount that Lender thinks you owe, Lender may report you as delinquent. However, if Lender's explanation does not satisfy you and you write to Lender within ten days telling Lender that you still refuse to pay, Lender must tell anyone Lender reports you to that you have a question about your bill. And, Lender must tell you the name of anyone Lender reported you to. Lender must tell anyone Lender reports you to that the matter has been settled between us when it finally is.

If Lender doesn't follow these rules, Lender can't collect the first $50 of the questioned amount, even if your bill was correct.

**Insurance:** Optional credit insurances and any required insurance disclosures are attached to this Agreement and are incorporated herein by reference.

**Alternative Dispute Resolution and Other Riders:** The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference.

**Applicable Law:** The terms and conditions of this Agreement will be governed by the laws of the Commonwealth of Massachusetts, including the provisions of Section 114B, Chapter 140, Massachusetts General Laws.

Before signing this Agreement, you have read and received this Agreement and the Federal Truth-In-Lending disclosures contained in it.

_____ (SEAL)        _____ (SEAL)
Customer Signature                              Customer Signature

Date: _____                   Date: _____

Witness _____                   _____

01-24-00 F RE
2ND MTG

MAB57916



*S050A74BDP95RLA9000MAB57916D**STORI E                    *                    ORIGINAL

Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

521721-17-506654

## MORTGAGE

[X]  IF BOX IS CHECKED, THIS MORTGAGE SECURES FUTURE ADVANCES.

THIS MORTGAGE is made this ___24TH___ day of ___AUGUST___ 20 __00__ , between the Mortgagor,
WILLIAM A. STORIE AND MARITZA STORIE, HUSBAND AND WIFE

(herein "Borrower"), and Mortgagee  BENEFICIAL MASSACHUSETTS INC.
a corporation organized and existing under the laws of ___DELAWARE___ whose address is
72 MADISON STREET, WORCESTER, MA  01608
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

[ ]  WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____ ,
evidenced by Borrower's Loan Agreement dated _____ and any extensions or renewals thereof
(including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of
principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable,
with the balance of the indebtedness, if not sooner paid, due and payable on _____ ;

[X]  WHEREAS, Borrower is indebted to Lender in the principal sum of $ __37,000.00__ , or so much thereof
as may be advanced pursuant to Borrower's Revolving Loan Agreement dated __AUGUST 24, 2000__ and
extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under
the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a
credit limit stated in the principal sum above and an initial advance of $ __38,900.00__ ;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon,
including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage;
and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage,
grant and convey to Lender and Lender's successors and assigns the following described property located in the County of
___WORCESTER___ State of Massachusetts:

THE LAND IN OAKHAM, WORCESTER COUNTY, MASSACHUSETTS LYING ON
THE EASTERLY SIDE OF THE NORTH BROOKFIELD- OAKHAM ROAD BEING
SHOWN ON A PLAN ENTITLED, 'PLAN OF LAND IN OAKHAM, MASS.,
OWNED BY ROSCOE CRAWFOR, JUNE 3, 1965, THEODORE P. DRAZEK,
R.L.S., NORTH BROOKFILED', WHICH PLAN IS RECORDED WITH THE
WORCESTER DISTRICT REGISTRY OF DEEDS IN PLAN BOOK 292, PLAN
70, AND BEING BOUNDED AND DESCRIBED AS FOLLOWS:
BEGINNING AT THE NORTHWESTERLY CORNER OF THE PREMISES TO BE
CONVEYED HEREIN AT AN IRON PIN IN THE EASTERLY LINE OF THE
SAID NORTH BROOKFIELD- OAKHAM ROAD, SAID POINT BEING 200
FEET SOUTHWESTERLY, MEASURED ALONG THE EASTERLY LINE OF SAID
NORTH BROOKFIELD- OAKHAM ROAD FROM A STONE BOUND AT LAND NOW
OR FORMERLY OF METROPOLITAN WATER COMMISSION;
THENCE FROM THE POINT OF BEGINNING AS DEFINED ABOVE S. 80
45' E. BY LAND NOW OR FORMERLY OF RONALD W. WILKINS, 225.45
FEET TO AN IRON PIN AT LAND NOW OR FORMERLY OF ROSCOE
CRAWFORD;
THENCE S. 23 6' W. BY LAND OF SAID ROSCOE CRAWFORD, NOW OR
FORMERLY, 449.33 FEET TO AN IRON PIN AT LAND NOW OR FORMERLY
OF SIMON CRAWFORD;
THENCE S. 88 15' W. BY LAND OF SAID SIMON CRAWFORD NOW OR
FORMERLY, 226.92 FEET TO AN IRON PIN IN THE EASTERLY LINE OF
SAID NORTH BROOKFIELD- OAKHAM ROAD;
THENCE N. 20 15' E. BY THE EASTERLY LINE OF SAID ROAD,
229.70 FEET TO A POINT;
THENCE N. 22 45' E. STILL BY THE EASTERLY LINE OF SAID ROAD
261.20 FEET TO THE POINT OF BEGINNING.
CONTAINING 2.33 ACRES OF LAND, MORE OR LESS.

CONTINUED ON ATTACHED EXHIBIT A

which has the address of ___59 CRAWFORD RD,___ ___OAKHAM___
                              (Street)                    (City)

Massachusetts __01068__ (herein "Property Address");

01-01-00 MTG                                                    MA001241

*S0S0A74BDP9SMTG900MA001241F**STORIE          *          FILE COPY

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

This mortgage is upon the Statutory Condition, for any breach of which the Lender shall have the STATUTORY POWER OF SALE.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note, including any variations resulting from changes in the contract rate.

**2. Funds for Taxes and Insurance.** Subject to applicable law or waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest, and then to the principal.

**4. Prior Mortgages and Deed of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

01-01-00 MTG

MA001242



*S050A74BDP9SMTG9000MA001242F**S10R1E*          *          FILE COPY

Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of the evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 7 hereof or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the Lender shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender shall be liable to account only for those rents actually received.

20. Homestead Waiver. The undersigned release the homestead rights for themselves, their family, and any minor unmarried children, created by their declaration dated _____, recorded in _____County Registry of Deeds, Book _____, Page _____.

21. Release. Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage if Lender is not obligated to refinance the debt or to make future advances.

<div align="center">

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

</div>

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

The Note secured by the Mortgage has:

a Principal Sum of __37,000__     a Period of Loan of _____

a Rate of Interest of __14.00%__     Periodic Due Dates of 11th
which may be subject to change

IN WITNESS WHEREOF, Borrower has executed this Mortgage under Seal.

_William A. Stone_    William A. Stone   -Borrower

x _Maritza Stone_    Maritza Stone   -Borrower

COMMONWEALTH OF MASSACHUSETTS, __Worcester__ _____ County ss:

On this __24th__ day of __August__, 20 __00__, before me personally appeared __William A. Stone and Maritza Stone__ and acknowledge the foregoing to be __their__ free act and deed.

My Commission expires
MY COMMISSION EXPIRES 3/24/2006

_Kesia M. Ford_   Notary Public   Kesia M. Ford

01-01-00 MTG

*S050A74BDP99MTG3000MA001244F*STORIE    *    FILE COPY

MA001244

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the contract rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower and all other parties who are or hereafter become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage, if requested, at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, and sale of the Property. The notice shall further inform

01-01-00 MTG

MA001243

*S050A74BDP9SMTG9000MA001243F**STORIE          *          FILE COPY

EXHIBIT A (PAGE 1)

... THE SAME PREMISES CONVEYED TO JAMARA BROS., INC. BY
... ROSCOE CRAWFORD AND CECILE A. CRAWFORD, DATED
... 1966 AND RECORDED IN THE WORCESTER DISTRICT
... OF DEEDS IN BOOK 4693, PAGE 1.

*5050A748DP95MTG900DMAD01240F**STORIE          *          FILE COPY

# ARBITRATION RIDER
### (Page 1 of 2)

This Arbitration Rider is signed as part of your Agreement with Lender and is made a part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS/Endispute ("JAMS"). The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. The arbitrator shall be independent of and unrelated to you or Lender. The rules and forms of the NAF, AAA and JAMS may be obtained by writing to or calling these organizations at the addresses and/or telephone numbers listed below. Our address for the Service of process under this provision is P.O. Box 1547, Chesapeake, VA 23320.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties.

If Lender files a Claim, Lender shall pay all the filing costs. If you file a Claim, the filing costs shall be paid as follows: (a) Lender agrees to pay for the initial cost of the filing the Claim up to the maximum amount $100.00; (b) for the filing costs over $100.00, such additional cost shall be divided equally between us up to the amount charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all costs over the amount charged by the arbitration administrator for a Claim equal to your loan amount shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally between us. Fees for hearings that exceed one day will be paid by the requesting party. We shall each bear the expense of our respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This Arbitration Rider is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The Arbitrator shall apply applicable substantive law consistent with the FAA, including laws concerning reception, rejection and consideration of evidence, and shall provide written reasoned findings of fact and conclusions of law. The Arbitrators award shall not be subject to appeal except as permitted by the FAA. The parties agree that the award shall be kept confidential. Judgement upon the award may be entered in any court having jurisdiction. All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceeding.

The Arbitrator shall be empowered to impose sanctions and to take such other actions as the Arbitrator deems necessary to the same extent as could be imposed by a judge pursuant to the Federal Rules of Civil Procedure.

This Arbitration Rider shall survive repayment of your loan and/or termination of the Agreement. If any portion of this Arbitration Rider is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Rider of the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Arbitration Rider, this Arbitration Rider shall govern. No class actions or joiner or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

No provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents. The use of the courts shall not constitute a waiver of the right of any party, including the plaintiff, to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration Rider.

06-15-00  ARBIT RIDER

US024651



*S050A74BDP95HAR9000US024651O**STORIE              *                    ORIGINAL

## ARBITRATION RIDER
### (Page 2 of 2)

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| National Arbitration Forum | American Arbitration Association | J.A.M.S./Endispute |
|---|---|---|
| P.O. Box 50191 | 1150 Connecticut Ave, NW, 6th Floor | 700 11th St., NW, Suite 450 |
| Minneapolis, MN 55405 | Washington, DC 20036-4104 | Washington, DC 20001 |
| (800) 474-2371 | (800) 925-0155 | (800) 352-5267 |
| www.arb-forum.org | www.adr.org | www.jamsadr.com |
| Code of Procedure | Arbitration Rules for Consumer | Financial Services |
| | Related Disputes (Claims | Arbitration Rules and |
| | under $10,000). Commercial | Procedures. |
| | Arbitration Rules (all other claims). | |

Borrower: _William C. Fox_ 

Borrower: _____

Print Name: _William Storie_

Print Name: _____

**LENDER**

By: _Luis M. Ford_

Date: _8.21.00_



*S050A74BDP95HAR9000US024652O**STORIE      *                ORIGINAL

Date:              **10/26/2003 12:00 AM**

Web Site:          **WEBBEN**

Account #:         **521721-17-506554**

Payoff Date: **10/31/2003**

Cust Name1: **WILLIAM STORIE**

SSN1:              **20-44-5742**

Cust Name2:

Phone Num: **5088823810**

Customer Address:

   Address:  **59 CRAWFORD RD**

      City:  **OAKHAM**              State  **MA**   Zip:  **01068**

Return By:  **Mail**

   Fax Num:

  Attention:  **William Storie**

   Address:  **59 Crawford Rd.**

      City:  **Oakham**              State  **MA**   Zip:  **01068**

October 29, 2003

Karen
Beneficial
72 Madison Street
Worcester, MA 01608

Dear Karen,

Our conversation bothered me on many levels yesterday, so much, so that I felt it necessary to respond in writing to my concerns. During the conversation, you voiced your feeling that the message I left was "inappropriate" and that "one of your employees heard the message". I asked you why you thought this since it was stated in very factual and calm manner. I also added that under the circumstances all of you employees should have been able to hear this message. You again continued to repeat how inappropriate the message/request was. I then stated, "It's inappropriate for me to voice my concerns when I've been screwed by Beneficial". This is where the conversation became quite weird.

You became much louder making statements over and over, "Mr. Storie, please don't swear at me, calm down, Mr. Storie, I could be your sister, your brother, your parents. You would not speak to them like that." This rant went on until I finally stated, "this conversation is over." and hung up the telephone. A couple times I stated, "what are you talking about", as you continued to Demonize me on the telephone.

I would guess this was a trained response in regards to legitimate complaints and it was clear you wanted those around you to hear you. My supervisor heard my side of the conversation as well as two fellow employees in the next office. No swearing, no yelling, and no threatening occurred, as you know. I will also remind you that during your attempt to demonize me I asked, "is this being recorded?" and after you stated, "no", I stated, "I wish it were." Why would I have said this?

Your attempt to demonize the victim in this case was, in my opinion, appalling. As I stated to you, my loan of predatory nature has placed me in a very difficult situation. I tried to discuss a reasonable solution other than going to court for this situation. Unfortunately, that appears to be the only course I can take. As you stated, "I was not here at that time" but you are a representative from the office where I obtained this loan. For you to behave the way in which you did makes me believe that not much has changed since the predatory lending was occurring on a regular basis.

My request of $2000 dollars taken off my principal of this loan as I prepare to pay the entire balance still stands. I can be reached by mail. I feel after the facts of this situation are clear, this is an extremely fair request.

Sincerely,

William Storie

Date:                   10/27/2003


From:                   Payoff Department


Attn:                   WILLIAM STORIE
                        59 CRAWFORD RD.
                        OAKHAM, MA 01068

Ref:                    WILLIAM STORIE
Acct:                   52172117506554

The amount to payoff the above-referenced account in full, is as follows:

| | |
|---|---|
| Payoff Balance (Principal + Interest): | $36,824.96 |
| PrePayment Penalty: | $0.00 |
| Reconveyance/Releasing Fee: | $75.00 |
| Other Fees: | $0.00 |
| Total Amount Due: | $36,899.96    * |
| Good Until: | 10/31/2003 |
| Per Diem: | $13.79 |


The above payoff quote is subject to a final audit.  The payoff quote does not waive our rights to receive any funds, which are due and owing on this account as a result of any subsequent adjustments, which may include but are not limited to recent advances, returned items and additional fees.  Additionally, we will not release any security interest until the account is paid in full.

Please reference our account number and issue a check for: $36,899.96 to Household Finance for the payoff. Please forward the payoff to the address indicated below.


For Regular Mail:                       For Overnight Mail:
Household Finance/Household Bank         Household Finance/Household Bank
Attn: Payoff Department                  Attn: Payoff Department
P.O. Box 88000                           1352-A Charwood Road
Baltimore, MD 21288                      Hanover, MD 21076


If the credit line is to be cancelled, please sign below and include this letter with your payment.  We will forward the necessary documents to the Trustee/County Recorder's office to release our lien within thirty days after the account is paid in full.

Please cancel my credit line. Unless signed authorization to cancel the credit line is received, the line will remain open and we will not release the lien.

Signature: _____ Date:_____

Signature: _____ Date:_____

* Note: If your loan contains one or more credit insurance products for which refunds are entitled, the net payoff amount includes all related refunds due.