COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS       SUPERIOR COURT DEPARTMENT
              THE TRIAL COURT

**FILED**

WILLIAM A. & MARITZA STORIE,  ) NOV 19 2003
  Plaintiffs,         ) ATTEST
              )
VS.             ) No. 2003-2104 C
              )
BENEFICIAL FINANCE/HOUSEHOLD )
RETAIL FINANCE,       )
  Defendants.         )
              )

## MEMORANDUM OF FACTS IN SUPPORT OF PLAINTIFFS COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION

  Plaintiffs, William A. & Maritza Storie ("Plaintiffs"), in the above-entitled matter, respectfully submit this Memorandum of Facts and Argument in Support of court's decision for Preliminary Injunction regarding claim against Defendants, Beneficial Finance Massachusetts, Household Retail Finance, & Household International ("Defendants"). Plaintiffs now seek a permanent injunction until this matter is disposed of through this State Superior Court.

### I. Introduction

  Plaintiff, William A. Storie entered into two loan agreements with Beneficial Finance Massachusetts Subsidiary of Household Retail Finance, Household International, Inc., on behalf of itself, its direct and indirect subsidiaries, affiliates, officers, directors,

employees, agents, related entities, successors, and assigns (collectively, "Household"). These loans were entered into in July 2000 and August 2000.

Plaintiff entered into these agreements during a period of time where their financial situation was desperate. CO-Plaintiff, Maritza Storie had no income at the time the loans were issued. She was unemployed at the time this loan was entered into. Approximately one year ago, Plaintiff learned about a class action which occurred between many State Attorneys General VS. Household. Without knowledge of the specific allegations, Plaintiff signed a release entering into this class action against Household. Plaintiff has since become more aware of the allegations against Household. Around the same time Plaintiffs were preparing to pay the loan off with re-financing. After review of class action allegations and our own particular loan, Plaintiff was astounded at possible violations of State and Federal law. Plaintiff was also troubled by Households unwillingness to admit any culpability in the allegations against them. They have agreed in the class action "Consent Agreement" to change some of their "Lending Practices", which Plaintiff will demonstrate they are still not in full compliance. Plaintiffs feel that enough physical evidence may be produced in this matter, which will allow this claim to move forward. Plaintiffs respectfully request that this Superior Court allow for some latitude with procedure since Plaintiffs are not attorneys and are representing themselves, *pro se*. Plaintiffs are in the process of an "intake" with The Harvard Law School.

## II.    Statement of Facts

On or about July 5, 2000 Plaintiffs received in the mail an unsolicited loan offer through an unsolicited negotiable check for $4001.03 that Plaintiff accepted by endorsing

and depositing or transferring the check ("live check"). A similar type of check was mailed to Plaintiff on November, 10, 2003 from Household and signed by the Worcester Beneficial Finance office Branch Manager, Karyn Ouellette. Although it does not appear to be a violation of the injunction, Plaintiffs feel that, at best, this is inappropriate under the circumstances and further possible evidence of predatory nature of this company. See Ex. A. Plaintiffs will ask the courts for a determination as to whether this action violated any part of the injunction granted. The live check Plaintiffs received in 2000 was structured differently and as a result of the class action "Consent Judgment" ( <u>Jennifer M. Granholm Attorney General of the State of Michigan and Frank M. Fitchgerald, Commissioner of the Office of Financial and Insurance Services V. Household International, Inc.</u> State of Michigan No. 02-1969-CH), Household has been prohibited from mailing these checks unless the following disclosure in;

    A. "12 point bold face type, on the front and back of the check, unless otherwise required by law: "Signing this check will result in a loan that must be repaid with interest and fees." (Household will include "and fees" language on the check only if fees are charged in connection with the loan.)."

    B. Household shall not create or issue any Live Check products that contain a prepayment penalty.

Plaintiff has included the original "Live Check" loan agreement from the July 5, 2000 loan. See Ex. B. Please note; "Prepayment: if you pay off early, you **may** be entitled to a refund of **part** of the finance charge." Also note that when the original live check loan was rolled into the "Debt Consolidation Loan", the amount was $4,713.43. This amount was $712.40 more than the original loan. CO-Plaintiff, William Storie was

informed by Household Loan Officer, Suzanne Rauscher since the loan was being rolled into another Household loan, there would be no extra charge beyond the principal. Other evidence with this unsolicited "live" check loan may be presented as further unfair practices in the future.

Plaintiffs allege that this original loan was used as "Bait" by Defendant to make a high-cost mortgage loan. On July 10, 2000 Household requested a copy of Plaintiffs credit report, which would allow Defendant access to see the amount of Plaintiff's unsecured debt. See Ex. C. Household Loan Officer, Suzanne Rauscher telephoned CO-Plaintiff, William Storie and invited him to her office on 72 Madison Street, Worcester, MA. On 7/11/2000 Ms. Rauscher discussed the benefits that would be gained by a "Debt Consolidation Loan" using a "Home Equity Loan Proposal", which included a graph comparison of Plaintiff's "monthly savings". Also discussed was the "E-Z Pay Plus Loan Proposal" option to pay every 2 weeks. Plaintiffs did not choose this option so it had no baring on the loan in question. This, however, has been alleged to be evasive and misleading in its presentation, as it was not disclosed that extra payments and not a reduction in the amount of interest accrued was the reason for a faster payment from principal. See Ex. D.

On or about 8/10/2000 Plaintiff began the actual process of "Application for Real Estate Mortgage Loan". There was a 15-year term discussed in this agreement. Plaintiff discussed not wanting to refinance a 0% car loan in the new loan. Loan Officer, Rauscher stated she needed to speak to her supervisor. After she returned she apologized and stated, "you cannot get the loan if you don't put the car in". Again, Plaintiff was reminded of the monthly savings still that we would benefit from. By all evidence this

account is a "Home Equity Line of Credit" in title only. It was described throughout as a loan with a 15-year term limit and fixed rate of interest. See Ex. E. It is the opinion of the Plaintiff that this loan, by it's structure and the Defendant's coercive "packing" of the loan to an amount over the actual limit, is a "Close-ended" Installment Loan and should be subject to requirements of the Home Ownership and Equity Protection Act 15 U.S.C. 1639 & M.G.L. 93A Sections 2, 11. Plaintiff's loan is a "close-end" "installment" loan by "Beneficial/Household's" own description taken from their Web Site on 11/14/03. See Ex. P. This practice was also a significant allegation of the class action. Further, Household calls this loan a "Real Estate Mortgage" in a copy of an Equifax Credit Report. See Ex. Q.

On 8/24/00 Plaintiff's "HELOC", in name only, was closed. Note two copies and different dates of material on loans. By Defendant's own evidence provided, CO-Plaintiff, Maritza Storie was a "borrower". Household did not require CO-Plaintiff to sign any other documentation but what they would need in order to foreclose on this loan. Plaintiffs can only suggest that this was due to Defendant's expectation that they would be foreclosing on this loan and CO-Plaintiff, Maritza Storie was named on the deed for what was thought by all parties, to be the secured property. Another assumption may be that there was some discriminatory motivation in not having CO-Plaintiff, Maritza Storie sign all documentation necessary. Why would one CO-borrower have a different set of standards than the other? Defendants have already tried to dispute that CO-Plaintiff Maritza Storie is CO-borrower of the mortgage. They have also continued to argue that she should not be able to be part of this action even after they have sent the court and

Plaintiff evidence of the contrary. See Defendant's Ex. B. "Memorandum of Law in Support of Defendants" Objection to Plaintiff's Application for Preliminary Injunction".

This loan was extended to Plaintiffs on terms that would eventually require a balloon payment, without disclosing to Plaintiffs the existence or amount of the balloon payments. See Ex. F (Sample Balloon Payment Disclosure). There was no disclosure of this, no form offered, Household will not be able to provide appropriate documentation of this allegation.

This loan was also made in gross disregard of any net tangible benefit to the consumer in loan refinancing. Plaintiffs have paid thousands of dollars of interest that would not otherwise have been paid if coercive and deceptive practices were not implemented, as well as willful and knowing lack of disclosure. Not only did Defendants insist that the car loan be part of this loan but they overpaid Ford Motor Credit by $ 1268.86. Further evidence that it appeared Defendants wanted to begin this Loan well over the limit amount of the loan, See Ex. G. This was also more money that went from 0% to 14% needlessly

As further evidence of Household's current misleading and fraudulent practices Plaintiffs respectfully ask the court to compare Defendant's "Payoff" information against Plaintiffs copy of the "Payoff" information. See Defendant's Ex. E and See Plaintiff's Ex. H, From: "Payoff Department". The two forms are clearly different and the copy sent to Plaintiff leaves out important disclosure regarding signatures needed to "cancel the credit line". Further, if this is not signed, Household will not close the credit line nor release the lien on secured property. None of this information was on the Plaintiff's copy. Nowhere in the agreement sent to Plaintiffs was there anywhere to sign nor was this

disclosed. This may be in violation of M.G.L. UCC Chapter 106: Section 2-515, U.S.C. 15 chap. 41 Sub I Part A, and M.G.L. 93A. The document was clearly changed from what was sent to Plaintiff. This would also appear to be a "willful" and "knowing" violation of TILA, and other consumer protection laws. This process and the lack of this disclosure makes refinancing extremely problematic.

Plaintiffs feel the following may be the most significant indication that Household acted in "willful" and "knowing" violations of State and Federal Consumer Protection Laws. Plaintiffs received copies of all documents upon entering into this loan, we believed. One of the documents was the "HUD – Settlement Agreement". This form, upon further inspection on November 15, 2003, did not appear complete, as "page 1 of 1" was nearly empty. CO-plaintiff William Storie located this document on the Internet to find Key Disclosures were either omitted from the document, or from the copies given to Plaintiffs. See Ex. I. "HUD Settlement Agreement". Sections J, "Summary of Borrower's Transaction" and K "Amounts paid by or in Behalf of Borrower" were not included on two separate forms given to Plaintiffs. U.S.C. 15 chap. 41, Subchapter I, Part A Sec. 1604 (a,b). The form should look similar to the following, See Ex. J. This material misrepresentation also appears to be "willful" and "knowing" violations of the law.

It should be noted this loan has been an ongoing concern for Plaintiffs. CO-Plaintiff William Storie has attempted on several occasions both in writing and verbally at both Leominster, Worcester Beneficial Offices as well as in writing, to have the terms reviewed and have also requested, a reduction of the percentage rate of interest. I cannot locate my initial letter/s at this time but can provide evidence of a response from

Household. See Ex. K. It should also be noted that CO-Plaintiff William Storie has become a member of Massachusetts Association of Community Organizations for Reform Now, ACORN since June 2003. ACORN is a community action group, which has been leading the fight against predatory lending practices such as Household's throughout the country. CO-Plaintiff, Storie has also called his Local State Representative and State Senator, Stephen Brewer advocating for their votes in support of Senate Bill 24, "An Act Establishing Protections Against Predatory Lending in the Home Lending Market" See Ex. K.

On August 23, 2003, Plaintiff executed a general release which states in it, "If you choose to accept the **settlement payment**, you must agree not to sue Household or Beneficial on your own, or to join any class action lawsuits against them that involves issues covered by settlement." See Ex. L.

Plaintiff has not taken "payment or received any consideration from this class action. CO-Plaintiff Storie has sent letters and made phone calls requesting that he be terminated from involvement in the class action settlement against Defendants. See Ex. M. Also included in Exhibit M is a copy of a letter received from the State Attorney General's Office. It appears that it is the decision of the "Settlement Administrator" as to whether CO-Plaintiff William Storie can rescind his name from the class action. CO-Plaintiff Storie contends that by case law and by settlement letters, the word **payment** is a crucial point. Further, since this release was the result of allegations of Fraud on the part of Defendants **Shuster v. Baskin** would support rescinding of the release.

Defendant's attempt to absolve CO-Plaintiff Maritza Storie from being part of this action and claims that she has no part of the mortgage are absurd, especially since evidence the Defendants sent support Plaintiff's argument. <u>See</u> Defendant's Ex. B.

Further factual inaccuracies continue in Defendant's Memorandum in Section "III. Facts". Plaintiff did request an on line Payoff amount on Sunday October 26, 2003. Payoff information can only be requested through signed Fax and through the Internet. CO-Plaintiff Storie was informed of this in Beneficial Office in Leominster, MA on October 24, 2003. There was also no form available to mail in a request from a branch office. It is the understanding of Plaintiffs that this is another change that was ordered from the "Consent Agreement". After continuing to learn more about the class action, Plaintiff called the Worcester Beneficial Retail Office at 72 Madison Street leaving a general message requesting a call back at my office the following day. The message was cordial leaving my Name, Acct #, and information that I had requested a payoff amount. CO-Plaintiff requested consideration that $2000 be taken off the principal amount of the loan, not knowing at this time, the total pay off amount. Ms. Karyn Ouellette, Office Manager called back Plaintiff on October 29, 2003 at my office, left a message, which CO-Plaintiff, William Storie returned. The content of the conversation is described in Plaintiff's letter. <u>See</u> Defendant's exhibit F. As noted in the letter Plaintiff "requested" this amount taken off the principal. This should not be construed in any way shape or form as a "demand" nor was it presented as a "demand". Plaintiff's will note that due to the further evidence found and obtained supporting this complaint this "request" is no longer an option. Plaintiff received in the mail the on line request on the evening of October 29, 2003, more than a day after the phone conversation with Ms. Ouellette. CO-

Plaintiff was very aware this request would not be given a grain of consideration. CO-Plaintiff's was called "inappropriate" and was accused of "swearing" at Ms. Ouellette. CO-Plaintiff would view this as a false statement knowing the content of the conversation. Due to this concern CO-Plaintiff Storie immediately responded through certified mail. Plaintiff has been nothing but cordial and polite in all interactions with Household employees.

### III. ARGUMENT IN FAVOR OF CURRENT NJUNCTION

A. **Plaintiffs Have Demonstrated A Likelihood Of Prevailing On The Merits.**

Plaintiff has shown evidence that this loan was obtained under alleged violations of several State and Federal Laws. Plaintiffs have been able to provide a substantial amount of documentation to support these allegations. Although CO-Plaintiff William Storie agrees that he initially signed into a release Plaintiffs have not received, nor want any consideration from this class action.

    1. Plaintiffs rescinding general release prior to any Consideration.

Evidence offered by Plaintiffs shows that only by receiving "payment" from this class action to those affected, waive their right to sue Household. CO-Plaintiffs also maintain that Mrs. Maritza Storie is a party to the "Mortgage" with Household. Defendant's legal arguments using case law regarding "release" being "broad and general" Schuster v. Baskin, 354 Mass. 137, 140 (1968), is clearly not relevant in this case. "Consideration" had already been given Shuster in that he was lifted from any direct foreclosure possibilities and further loss of

money in a real estate development gone bad. Further, in the Shuster case, "There was no evidence of fraud or other illegal acts operating to produce its execution or contributing to it as a cause." If there were the courts appear to indicate they would have reversed their decision.

It appears that Defendant's argument is that Plaintiff has learned new information since signing into the class action. Plaintiffs have made clear their desire for no compensation from the class action settlement and have written letters to both the settlement administrator and Massachusetts State Attorney General's Office rescinding the release effective immediately. Only if new information arouse against Defendant after consideration should the execution of this release be binding.

2. <u>Alleged Negligence, Willful or Knowing Fraud, and Material Misrepresentations should extend TILA statute of limitations.</u>

Due to the allegations outlined in this statement, Plaintiff's request that extending the TILA Statute of Limitations would be appropriate. In Jones, **Jones v. TransOhio Savings Ass'n, 747 F.2d 1037 (6th Cir. 1984).** "the court noted that several factors supported its conclusion. First, the court argued that TILA, as a remedial statute, should be construed liberally in favor of the consumer. See Jones, 747 F.2d at 1040. Second, the court noted that the remedial scheme of the Act was to create a system of private attorneys general and that, therefore, a technical reading would be "particularly inappropriate." Id. (citations omitted). Third, the court observed that S 1640(e) is not the sole provision granting jurisdiction to the district courts, but that it must be read together with 28 U.S.C. S 1337. Id. at 1040-41. The Jones court concluded that "[o]nly if Congress clearly manifests its intent to limit the federal court's jurisdiction will [the court] be precluded from addressing allegations of fraudulent concealment which by their very nature, and if true, serve to make compliance with the limitations period imposed by Congress an impossibility." Id. at 1041.

Further, Plaintiffs were charged $310.00 for an "Appraisal Fee". Plaintiffs do not recall any appraisal being done. Defendants may not be able to produce any appraisal for this loan as charged to the Plaintiffs because none was completed. See Ex. N.

Plaintiffs plan on consulting with an accountant or loan specialist to review practices regarding interest calculations and amortization regarding this mortgage. See Ex. O, Q. Please note comparison between the Equifax report and the payment history of Plaintiffs. It is unclear why there are (4) 30-Day Late Payments on this "Real Estate Mortgage" given the payment history. This many 30-day late payments on a credit history are near devastating to credit rating. Around this time, 8/20/01, there was a "Restructure" of the loan. There was not information offered to Plaintiffs regarding any changes in the loan. There appears to be an addition of more that $1497.36 dollars that is included in the loan. The payment history, although not perfect, clearly should not reflect this many late payments. Invoices did not reflect such an issue either.

3. <u>Arbitration Rider should not be enforceable.</u>

Plaintiff entered into this Arbitration "Contract" with the understanding that Defendant was acting in the best interest of Plaintiff and that the information stated and documents offered to Plaintiff were accurate. Since evidence has been offered which may show "willful" and "knowing" deception, this "agreement" should not be enforceable as per any contractual agreement entered into under fraudulent terms. Further, Plaintiffs are representing themselves *pro se* due to the inability to pay for an attorney. Plaintiffs are exploring options of being represented *pro bono* or will continue representing the case

*pro se*. Arbitration is very expensive and Plaintiffs, more than likely, would not be able to pursue this action, "prohibitive costs", <u>Sanderson Farms Inc. v Gatlin.</u>

Further, It appears there were terms in this loan that were clearly not disclosed and may have been "willful" and "knowing" misrepresentations involved in this original signing of the contract, i.e., "Substantive unconscionability". There were individualized circumstances surrounding both parties to a contract such that no voluntary meeting of the minds was possible, i.e., procedural unconscionability." **<u>Neubauer v. Household Finance Corporation, NO. 81451 Court of Appeals of Ohio, 8th Appellate District Cuyahoga County. Miller v. Household Realty Corp. NO. 81968 Court of Appeals of Ohio, 8th Appellate District Cuyahoga County.</u>**

Further, Plaintiffs feel that they will be best served in the courts as opposed to a choice of one of three Arbitration agencies who obtain a large amount of business from Household as a result of thousands of disputes throughout the country. The conditions of the arbitration agreement call for mutual "confidentiality" in regards to any/all claims. This is not in the best interest of the thousands of other potential victims of loans that have been manufactured in a similar manner. Violations of the law are issues that render an arbitration agreement non-binding.

Further, if Defendant has the right to file suit without notice to borrower Plaintiff should have the same right

4. <u>Due to Lender's "mistake", Household could foreclose on Plaintiff's Secured Property.</u>

Defendant, Household secured the wrong piece of property in this loan. The secured piece of property with the lien is a 2.33 acre wooded piece of property, which

abuts Plaintiff's home lot. This information was not discovered until after the initial request for injunctive relief as Plaintiff poured through paperwork. Although this appears to be a "mistake", Defendants, by their own contract, could foreclose on this property since there is no insurance on the property and Plaintiff is behind in taxes by approximately $500.

> Property Insurance: A. YOUR OBLIGATION TO INSURE. You shall keep the structures located on the real property securing this loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is cancelled or expires while the loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.
>
> DEFAULT. If you don't pay on time or fail to keep any required insurance in force, or if permitted in the event of default under the mortgage, (1) All your payments may become due at once and, (2) Without notifying you before bringing suit, we may sue for the entire unpaid Balance of Principal and accrued interest and (3) Any judgement in our favor may include our reasonable attorney's fee and court costs as determined by the court. You agree that, should we obtain judgement against you, a portion of your disposable earnings may be attached and garnished (paid to us by your employer), as provided by Federal law. You agree to pay interest on any judgment at the Contract Rate. See Defendant's Ex. B.

6. <u>Plaintiffs can also demonstrate substantial risk of irreparable harm outweighs that of Defendants</u>. If Defendants Prevail in their objection. Plaintiffs are at risk of losing their property, 2.33 acres valued at approximately $50,000, or 100 % of this worth of the property. If Defendants prevail, Plaintiffs have lost thousands of dollars in interest paid in what may be determined to be a fraudulent deceptive loan. Plaintiffs have paid interest on a car loan they should not have had to. Whereas the Plaintiff's stand to lose 100 % of their interest in a piece of property and thousands of dollars lost. Further, refinancing options have been obstructed by Defendant's not disclosing proper information regarding a payoff amount. Defendants, if determined by the courts to be

guilty of these practices may have to restructure loans constructed in a similar manner as Plaintiff's as they would be in "Willful" and "knowing" violation of lending laws if they allowed these loans to remain the same. This loss to Defendant's would not come close to a 100% loss as the Plaintiffs could experience. The potential gain to thousands of consumers may be at stake in this claim.

### IV. Conclusion

Plaintiffs have offered significant indisputable evidentiary information. Plaintiffs also allege that Household has violated Provisions in the Home Mortgage Disclosure Act Regulation C, Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedure Act (Regulation X), Truth in Lending Act (Regulation Z), MGL 93A, MGL 106 Uniform Commercial Code. **PERFORMANCE**: Section 2-515, Preserving Evidence of Goods in Dispute, U.S.C. 15 Chapter 41, subchapter I Part A Sec. 1611, **Criminal liability for willful and knowing violation.**

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that the Application for Preliminary Injunction be extended to be Permanent until this matter is resolved through this Massachusetts State Superior Court.

Respectfully Submitted,

Plaintiffs, *Pro Se*

_William A. Storie_ 11/18/03
William A. Storie

_Maritza Storie_ 11/18/03
Maritza Storie

59 Crawford Rd.
Oakham, MA 01068
(508) 882-3810

    I certify that the within Memorandum of Facts in support of Plaintiff's Complaint and Request for Permanent Injunction was served upon the following Attorneys for Beneficial Finance/Household Retail Finance, Shechtman Halperin Savage, LLP by hand on November 19, 2003:

Shechtman Halperin Savage, LLP
Attorneys for Household Retail Finance
Christine L. DeRosa
86 Weybosset Street
Providence, RI 02903

A true copy by photostatic process
Attest:
Asst. Clerk

# Commonwealth of Massachusetts
## County of Worcester
## The Superior Court

CIVIL DOCKET# **WOCV2003-02104**

RE:   **Storie v Beneficial Finance/Household Retail Finance**

## PRELIMINARY INJUNCTION

This action came on to be heard before the Court upon the return of an Order of Notice to show cause why the application for a preliminary injunction should not be granted, and was argued by counsel; and upon consideration thereof,

It is **ORDERED and ADJUDGED** that upon payment to the clerk of the sum of $90.00, and until further order of the Court, the application under the prayers of the complaint is hereby granted; and the plaintiff William A. Storie is ordered not to make any payments to the defendant until after the hearing on November 17, 2003 @ 2:00 P.M. when this Court will hear further testimony.

Dated at Worcester, Massachusetts this 10th day of November, 2003.

Tina S. Page, Justice

BY: *[signature]*
Assistant Clerk

Telephone: 508-770-1899, Ext. 125 or Ext. 105 (Session Clerk)

---

11/21/03 The plaintiff is to pay the $90 fee for the P.I. This matter is cont'd in effect until 12/29/03 @ 2pm for status. Counsel for the plaintiff, or a representative from Harvard Law School, should be present. All matters are stayed until then. Page, J.

attest: Alexander Rodriguez, III
Asst. Clerk

A true copy by photostatic process
Attest: *[signature]*
Asst. Clerk

cvdpinj.wpd 979638 pinj williams