UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 FEB 20 P 12: 10

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| WILLIAM A. & MARITZA STORIE,<br>Plaintiffs, | ) )<br>) ) | 
| VS. | ) )<br>No. 03-40268-NMG |
| HOUSEHOLD INTERNATIONAL, INC.,<br>BENEFICIAL FINANCE CORP.,<br>Defendants. | ) )<br>) )<br>) )<br>) ) |

## MEMORANDUM OF LAW IN RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS, AND MOTION REJECTING ARBITRATION, MOTION TO COMPEL FURTHER LITGATION OF PLAINTIFFS' CLAIM

Plaintiffs, William A. Storie and Maritza Storie, ("Plaintiffs") will respond to and refute Household International, INC., Beneficial Finance Corp., and Beneficial "Massachusetts" ("Defendants"), **Memorandum of Law in Support of Defendants' Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration and Stay Litigation Pending Arbitration**, "Motion to Dismiss". Defendants' Motion, on several instances, cites snippets of irrelevant case law, misstates facts, and continues to play a shell game with Plaintiff's claim. Plaintiffs will not only continue to bolster their case but break down the defendants, with material Defendant themselves have presented this Federal Court. There is much more of a claim stated than Defendants attempt to discount and Defendants' minimizing of allegations of **willful** and **knowing** fraud are disturbing. For the reasons stated below, Plaintiffs William & Maritza Storie, respectful request the court to deny Defendants' motion.

## MEMORANDUM OF LAW

Defendant, Household/Beneficial, is a "creditor" as defined in Section 103(f) of TILA, 15 U.S.C § 1602(f), AND Section 226.2(a) (17) of Regulation Z, 12 C.F.R. § 226.2(a)(17), and therefore is required to comply with applications of Truth in Lending Act (TILA), Home Ownership and Equity Protection Act of 1994 (HOEPA), and Federal Trade Commission Regulation Z. Plaintiff's loan should fall under the guidelines of HOEPA and assert Defendants had only called this a Home Equity Line of Credit to avoid meaningful disclosures and to avoid regulations of the HOEPA. True open-end credit is not subject to HOEPA.

Plaintiffs assert the following claims, which are the basis of this action. Plaintiffs have repeatedly claimed that this loan is by definition a "close-ended" loan disguised as an "open-ended" Home Equity Line of Credit. When Beneficial/Household Willfully and Knowingly deleted or omitted page one of the HUD-Settlement Agreement form page-1, Defendants violated Regulation Z, 12 C.F.R. Truth in Lending, "TILA", Real Estate Settlement Procedures Act, RESPA, as well as M.G.L. Fraud Statutes. See Ex. 1. Failure to comply with RESPA can include treble damages in civil penalties, criminal penalties, and administrative penalties. Defendants went out of there way, not only to withhold information by law they needed to disclose, but also presented Plaintiff with a "monthly savings" comparison regarding "debt consolidation", which after review when not under financial duress, was nothing but false and misleading. See Ex. 2. This was clearly explained in Plaintiffs' "Memorandum of Facts". Any violation of HOEPA carries innate in the law a "Consequence of failure to comply", which states, "Any mortgage that contains provisions prohibited by this section shall be deemed a **failure to**

2

**deliver the material disclosures** required under this subchapter, for the purpose of section 1635 of this title", (emphasis added) pursuant to Section 129 of TILA, 15 U.S.C. § 1639(j). At minimum, under Section 129 of TILA, 15 U.S.C. § 1635, Plaintiffs have a "Right of rescission as to certain transactions". The statue also allows "additional relief" that the courts may deem appropriate. Plaintiffs will argue all points Defendants have used as the basis for their motion to dismiss.

## I. Introduction

Plaintiff, William A Storie entered into two loan agreements with Beneficial Massachusetts, Beneficial Finance Corporation, Household Retail Finance, Household International, Inc. ("Household/Beneficial") between July and August, 2000. Numerous alleged violations, which include alleged Knowing and Willful violations of State and Federal Statutes form the basis of Plaintiffs' complaint.

Co-Plaintiff, Maritza Storie, has been named to this action for several reasons:

(1) The Real Estate secured loan was sold to Plaintiffs with little consideration as to whether Plaintiffs could pay the loan off. As a result, Plaintiff, Maritza Storie, had to return to work to pay this loan or lose their home;

(2) The loan in question, secured by a piece of property Plaintiff Maritza Storie has half ownership of, is alleged to be in "Willful and Knowing violation" of U.S.C. 15 § 41, Subchapter I, Part A Sec. 1611, "gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder," U.S.C. 15 § 1639 (h);

(3) By Household/Beneficials' own terms and mistake in securing of the wrong property, Defendant's could foreclose on Plaintiff's stake in her property as she signed as "Co-Borrower" in this loan, See Ex. 3.

(4) It was mandated by Beneficial/Household to insist on Plaintiff Maritza Storie to Co-Sign a loan giving up her stake in the secured property if it were foreclosed upon but she was denied being part of the loan agreement. This is discrimination. (Defendants represented that she was part of the loan as "Co borrower" in signing the note.).

(5) It is alleged Plaintiffs loan was manufactured under fraudulent terms in violation of state and federal laws. Both Plaintiffs were under the understanding that Plaintiff, Maritza Storie was "Co-Borrower" of this loan as she signed. Beneficial has also included Co-Plaintiff, Maritza Storie as a customer, including the account number on the loan in making payment; See Ex. 4.

(6) Plaintiffs can not refinance their first or second mortgage and doing so may be in violation of TILA, 15 U.S.C. § 1639(l)(2)(B), "refinancing of mortgage loans that the board finds to be associated with abusive lending practices, or that are otherwise not in the interest of the borrower".

Plaintiffs' assert the complaint should move forward due to; (1) the amended complaint, does state claims upon which relief may be granted; (2) the applicable statute of limitations has **not** expired and the loan is still currently in violation of "HOEPA" laws as well as TILA; (3) Plaintiff, William Storie's claim should move forward by the terms of a General Release, in the alternative be made null and void due to the

4

Commonwealth's representation may be inadequate, as well as Plaintiffs timely

intervention to request a rescinding of the General Release; (4) Plaintiff served an entity

directly connected to Beneficial "Massachusetts" and also used "Household Finance

Corp." "HFC" on the Initial and Amended Complaint; (5) Plaintiff's claim, and evidence

provided, should make the arbitration agreement voidable, as with any contract made

under fraudulent terms under Massachusetts State Law.

## II.    Procedural Background

Plaintiffs cited state and federal law in their argument on the November 7, 2003

hearing in Worcester Superior Court.  Plaintiffs also laid out the argument regarding the

"close-end" vs. "open-end" nature of the loan.  In the November 21st hearing, the Defense

began their argument by trying to convince Worcester Superior Court Justice, Page, that

Plaintiffs did not pay a fee required to obtain the injunction granted by the courts.

Attorneys for the defense went to the clerk's office to investigate if this fee was paid prior

to the hearing.  The fee was clearly paid and Defendants counsel had misrepresented this

fact to the Judge.  Plaintiffs believe that Defendants are in a desperate attempt to make

Plaintiffs appear incompetent in order to push the case to be dismissed, rather than argue

any merits of the case.  This behavior by defense counsel caused significant confusion in

this hearing.  It was not clear, but appeared that the defense stated that they placed the

amount of the loan in escrow.  Court transcripts should clear up this confusion.  If this is

the case, Plaintiffs have not seen any evidence of this actually occurring.  The **defense**

began this hearing and Judge Page asked the defense to continue at which point they

declined.  The defense did not appear to have any argument at this hearing regarding

Plaintiffs claims, or the merits of the case.  After the issuance of the Preliminary

Injunction by the Worcester Superior Court, Plaintiffs also had to speak to Defendant's counsel after regarding continued invoices being sent to Plaintiffs home as well as other promotions including another unsolicited live check for $5000.00. See Ex. 5. Plaintiffs were in the process of obtaining counsel and had been advised on several occasions by Harvard Law's Hale-Dorre Legal Services. Plaintiffs were told they were going to be represented by Harvard but their had not been an official "intake" or retainer. When Harvard learned that the case was to be tried in Worcester, they declined to take the case. Plaintiffs feel very strongly that they can proceed forward *pro se* based on the facts and merits of this complaint. Plaintiffs still will explore *pro bono* options for representation as this case moves forward.

### III.    Factual Background

Plaintiffs assert that Defendant's used unsolicited live checks as bait to lure consumers into high cost secured loans. See Ex. 7. This practice was clearly laid out in Plaintiff's Memorandum of Facts including Defendants looking at Plaintiffs unsecured debt near the time of the initial loan. Plaintiff was then contacted by the Beneficial Office at 72 Madison Street, Worcester MA and asked to come in to discuss other loan options. Plaintiff filled out a "APPLICATION FOR REAL ESTATE MORTGAGE LOAN" on 8/10/2000. See Ex. 8.

Defendant's Motion to Dismiss asserts two blatant inaccuracies as fact in the first two sentences of their section III. (1) The defense does not inform the courts that the property secured appears not to be that of the address on the agreement, but a piece of land owned by the Plaintiffs, which abuts Plaintiffs lot with dwelling. Defendants were informed of this the first hearing and in consequent Memorandums. See Defendants'

Motion to Dismiss Ex. B. (2) This loan is **not** a Home Equity Revolving Line of Credit. When Beneficial mandated that Plaintiffs to include a nearly $17,000 dollar car loan, which went from 0% interest to a 14% interest rate, this loan became a Secured Installment Loan with a 15-year term and **Close-ended** subject to HOEPA, TILA and Regulation Z, 12 C.F.R. 226. This was sold as an Installment Loan with a 180-month term limit by Beneficials' own description from their web site. See Ex. 6. Further evidence of this is provided in Plaintiffs' "Memorandum of Facts" offered to Defense and filed in Worcester Superior Court on 11/19/03. Further, alleged violations include Plaintiffs' debt to income ratios at the time of the loan should show the loan was made in total disregard of whether the loan could be paid back by Plaintiffs. The closing fees exceeded those mandated by HOEPA Regulations exceeding $2000 dollars. The terms of the loan changed continuously in that the loan was presented to Plaintiff as being a "Debt Consolidation loan" with a 15-year term. The loan was packed over the initial limit amount by $1900 and the creditor could not reasonably contemplate repeated transactions and in fact took that option away from Plaintiffs with the mandate of including the car loan. The loan was also made with gross disregard to the Net Tangible Benefit to the consumer also in violation of HOEPA. Plaintiffs did not want to place a 0% car loan in the Beneficial Loan with a rate of 14%. These are all violations of HOEPA. Based on Defendants representation of "monthly savings" and Plaintiffs' critical financial situation at the time of the loan, Plaintiffs entered into the installment loan. See Ex. 9.

Plaintiffs' loan with Beneficial appears in clear Violations **of FTC Act (Spurious Open-End Credit)**. Pursuant to Sections 103(aa)(1) and 129(a) of TILA, 15 U.S.C. §§ 1602(aa)(1) and 1639(a), and Section 226.32(a)(2)(iii) of Regulation Z, 12 C.F.R. §

226.32(a)(2)(iii). Plaintiffs, under extreme financial duress, were mandated to place a

$17,000, 0% car loan with Ford Motor Credit into the "Beneficial" loan, or would not be

given the loan. Beneficial Loan Officer, Suzanne Rauscher, as well as the Branch

Manager were aware of Plaintiffs very difficult financial situation at the time the loan

was obtained. This may be in violation of State and Federal Laws regarding Conspiracy

to commit fraud and may be added to the complaint in the future.

In the course and conduct of offering and making this HOEPA mortgage loan,

defendants represented, and continue to represent, that the credit offered and extended by

defendants is open-end credit. In truth and in fact the credit extended by defendants is

not open-end credit. On the contrary, the transaction involves the extension of closed-

end credit subject to HOEPA. By falsely representing to Plaintiffs, and the courts, that

the credit offered and extended by defendants is open-end credit, as set forth above,

defendants engaged, and continue to engage, in deceptive acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Plaintiffs have suffered greatly, and will

continue to suffer, substantial injury as a result of defendants' violations of HOEPA,

TILA, and Section 5(a) of the FTC Act, as well as Massachusetts Consumer Protection

Act, M.G.L. c.93A, Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c140D

as well as M.G.L. 140 sects. §§§(96)(100)(103), as set forth above.

IV.     **Argument**

> A.     **The Amended Complaint, Plaintiffs' Memorandum of Facts, and
> Worcester Superior Court Hearing transcripts, State Claims upon
> which Relief may be Granted and must proceed forward under Fed.
> R. Civ. P. 12.**
>
> > 1.     Plaintiffs' claims should **not** be barred by the terms of the General
> > Release, Res Judicata should not apply, and Arbitration Agreement
> > should be voidable.

8

As the court in <u>Shanahan v. Schindler (1978), 63 Ill. App. 3d 82, 94, 379 N.E.2d 1307,</u> clearly stated:

"It is true that one may waive a defense of fraud by entering a new contract; however, knowledge of the fraud at the time of the signing the [second contract] is a prerequisite [***11] to such waiver. [Citations.] The representation in this case was of a continuing character, and [the injured **party**] was entitled to rely upon it until informed otherwise. See <u>37 Am. Jur. 2d Fraud & Deceit § 242</u> (1968). [**822] To hold otherwise in this case would establish a precedent whereby a **party**, who fraudulently induces one to enter a contract, could eliminate the defense of fraud merely managing to execute a [second] contract, with some modified terms, without disclosing the original fraud. Such a result would clearly be contrary to the established principle that a **party** committing fraud should be precluded from benefiting there from." (Emphasis Added.)

Plaintiffs were not aware, nor informed by Household, the extent of the fraud and deceit in their loan at the signing of the General Release. Further:

A determination of whether or not fraud has been waived is generally a question of **fact**, and the significance of silence or **inaction** after discovery of fraud is also to be determined by the trier of facts in the light of all the circumstances. (see <u>37 Am. Jur. 2d Fraud & Deceit sec. 386</u> (1968). (Emphasis added)

Not only has Household/Beneficial **inacted,** they [Household] "denies these allegations and has indicated that it would vigorously defend any attempt by the Commonwealth to assert any claim based on the Commonwealth's investigation." <u>See</u> Defendant's Ex. H, Pg.5 "<u>Stipulated Recitals</u>", ¶ 5. This proclamation by Household, the facts involved in Plaintiffs loan exceeding those in the settlement, and assertions of willful and knowing fraud, should make null and void the General Release, as well as the Arbitration Rider and propel this case forward for litigation through the Federal Courts.

In order to constitute "fraud invalidating a contract" a representation; (1) must be one of material fact which has been made for the purpose on inducing the other party to act, (2) must be known to be false by the maker, but reasonably believed to be true by the other party, and (3) must be relied upon by such other party and acted upon to his damage. <u>Shanihan v. Schindler,</u> (1978) 63 Ill. App 3d 82, 379 N.E.2d 1307.

Plaintiffs can demonstrate that all three criteria for fraud had occurred in their dealings with Defendants in regards to this loan. Such fraud in the inducement **vitiates all contracts** (Shanle v. Moll (1974), 25 Ill. App. 3d 113, 323 N.E. 2d 148) and renders it voidable at the option of the injured party. Bresler Ice Cream Co. v. Millionaires Club, Inc. (1966), 71 Ill. App. 2d 342, 218 N.E.2d 891. Defendant's representation of "Monthly Savings" in the selling of this loan as well as the HUD Settlement Agreement, Page1, being omitted should make the Arbitration Rider null and void due to **unconscionability** both "procedural" and "substantive" pursuant, M.G.L. ch. 106, § 2-302, every contract imposes an obligation of good faith in its performance and enforcement. Plaintiffs also would never had entered into a loan agreement or any Arbitration Agreement if they were aware the terms of the loan were in violation of M.G.L. Chapter 93A, TILA, HOEPA, and RESPA.

Plaintiffs are not attorneys but are mental health workers with emotionally disturbed children. Defendants continue to try and attack Plaintiffs case at the level of procedure, loopholes, manipulations, as well as citing snippets of inaccurate case law with very different circumstances than this case. Despite Plaintiffs *pro se* Status, much of Defendants' case law cited has been able to be clearly challenged as irrelevant to this case. This occurred in Plaintiff's Memorandum of Facts, but the same cases continue to be cited. In Shuster v Baskin, 354 Mass. 137, 140 (1968) the "release is broad and general" and barred plaintiff's claims for two reasons; (1) Substantial consideration had already been offered and **accepted** by Schuster, and (2) there were no indications of any Fraud involved in the case or the actions leading up to, or involving the release. Similar with Naukeag Inn, Inc. v. Rideout, 351 Mass 355, 356, (1966) substantial consideration

10

was granted and accepted, including property and cash. **Fraudulent Concealment is alleged** in Plaintiffs claim as well as **no consideration** being **accepted**.

In Defendants' citing, "In exchange for a minimum specified sum, Plaintiff released Beneficial", Defendants again try to distort the facts and the truth of this issue. See Defendants' Motion to Dismiss, Ex. D. The sentence prior to the information cited by Defendants actually states:

> **"In consideration for the restitution payment received, I/we hereby release Household from all civil claims."**

**NOT, "In exchange for a minimum specified sum,"** as Defendants represent.

Plaintiff William Storie entered into a General release not knowing the law at the time and how many violations above and beyond the Household Settlement existed in Plaintiff's loan, which includes allegations of **willful and knowing Fraudulent Concealment**, which was discovered after the signing of the General Release.

Plaintiffs further did not know the details of the manner in which the Commonwealth of Massachusetts would misrepresent the class members in this settlement. Plaintiffs understand that the Commonwealth of Massachusetts obtained 80% of all secured loans within the Settlement Period. This would be a little over $30,000 the state received from Plaintiffs loan. This Plaintiff was to receive a minimum of $285.91 from the settlement agreement. Many Settlements of this nature appear to have a restructuring of the loans to become in compliance of State and Federal Law. Not only did the Household Settlement not include any restructuring of current loans, but also it allowed loans to continue in force, knowing they were **still in violation of State and Federal Law.**

11

Plaintiff William Storie attempted diligently to **intervene** and opt out of the Settlement once the fraudulent concealment was discovered in their loan. More was learned regarding the actions of Beneficial/Household with Plaintiffs particular loan and the Commonwealth of Massachusetts' representation as neither adequate nor fair to those consumers harmed by Defendant's alleged actions. The Settlement also included no admittance of any guilt on the part of "Household". Upon learning this information, Plaintiffs tried to intervene to opt out of the Settlement **prior to knowing the eventual amount of payment**.

Plaintiffs contend that the General Release Contract is only completely executed when the Settlement check is cashed and "**accepted**" by the language used in their own contract. See Ex.

> 2. Plaintiffs argue that under Fed. R. Civ. P. 23 "Representation Must Be Adequate", and Fed. R. Civ. P. 24 "Intervention" should make General Release voidable.

On or about November 12, 2003 The Household Settlement Administrator, as well as Asst. Massachusetts State Attorney General, Janice Whiting, received certified letters from Plaintiff requesting a rescinding of the general release stating, "if I knew then what I know now, I would never have signed the release". See Ex. 10. This letter also stated concern Plaintiff, William Storie had with the Settlement Agreement;

> "It is my understanding that the terms in the consent agreement do not call for any immediate or future **restructuring** of loans ongoing obtained during this class action. Household International continues to hold secured loans obtained in alleged predatory means. As you are aware, there is significant evidence of possible violations of both State and Federal Laws. Household International did not have to admit any wrong doing on their part thereby not admitting there are thousands of loans made under possibly illegal conditions that are **still in effect**." (Emphasis Added).

12

This letter was sent prior to knowing any eventual "payoff" amount from the Settlement. Plaintiff has also sent back the check that was received in Decemeber, 2003 regarding the Settlement. The Settlement Administrator accepted the Settlement Check back "Void" on February 2, 2004. See Ex.11. Not only was evidence of Willful and Knowing Fraud uncovered by Plaintiff after the general release was signed, the General Release Contract was signed without clear disclosure, on the part of the Settlement Administrator, or State Attorney General, that loans would continue in force under alleged violations of the law. Plaintiff's loan still exists in violation of HOEPA, as well as current alleged TILA violations regarding payoff information. Current gross disregard for proper disclosure is evidenced regarding the process of paying off the loan. Defendants have provided a payoff form clearly different than the one received by Plaintiffs, which omits important disclosure information regarding the lien on the secured property. See Ex. 11. Compared to See Defendants' Ex. F. Looking closely at Defendant's copy, which includes a signature section to release the lien on the property, upon close inspection, it appears an alteration took place when copied. This omission in Plaintiffs' copy makes refinancing very difficult and is clearly not disclosed in Plaintiff's copy.

Given the facts regarding the General Release, the discovery of fraudulent concealment beyond the class action allegations, and the Commonwealth's representation of the Settlement may be inadequate, **res judicata should not apply.** Further, the Commonwealth of Massachusetts settled this action long before the signing of any release by this Plaintiff. The consent agreement was signed on December 12, 2002 and General Releases were sent out August 2003. At that point, the Commonwealth was not

13

acting on Plaintiff's behalf and therefore there is no cause of action. If Plaintiff, William

Storie knew then what is known currently about the Commonwealth's managing of this

Settlement and details of plaintiffs particular loan, Plaintiff William Storie would have

never signed the release. Plaintiffs became aware of the particular evidence of fraud and

deceit in their loan after the General Release was signed but prior to any accepting

payment. It was in this time that Plaintiffs became aware that page one of the HUD

Settlement Agreement Page-1 was omitted on two separate copies offered to Plaintiffs.

Further a "monthly savings" report that was represented, and believed to be accurate, has

since been found to be completely false and misleading, which coincides with why the

HUD-Settlement Agreement form, Page 1 would be eliminated. The information on the

HUD form would have clearly shown the representation by Defendants was false.

> 3. Plaintiffs Amended Complaint meets requirements of notice
> pleadings, as well as Complaint "to include "Memorandum of
> facts", and "court transcripts".

Plaintiffs were granted an injunction from the Worcester Superior Court.

The Defendants have also been clearly informed that this action is the result of two loans

obtained in 2001. Defendants have had time to look at these loans and have offered them

as evidence in Worcester Superior Court and now this Federal Court. They have been

offered Federal and State Statutes alleging various violations. Plaintiffs have offered

Defendants a tremendous amount of information in court hearings, an amended

complaint, and a Statement of Facts, filed in Worcester Superior court and offered to

Defendants counsel on the same day.

In Plaintiffs' work with children and adults who have offended against other

children, there are several cognitive errors in thinking that are utilized regularly. Denial,

14

Minimization, and Deflection are three of the most often utilized Cognitive thinking

errors by offenders. For Defendants to continue to assert that they are unsure what claims

exist and that Plaintiffs have been "vague" is nothing more than an error in thinking.

Plaintiffs' strategy is to offer Defendants all the information available, as soon as

possible, and have them answer to the charges. This is why the "Statement of Facts"

was given to Defendants shortly after the second court hearing in Worcester Superior

Court. They were in possession of this information and presented to the courts they were

still "unclear" what Plaintiffs claims are.

> **4.** TILA Statute of Limitations should be extended due to "Unusual" Circumstances, alleged Willful and Knowing Fraud, Continued Evasion and Violations of HOEPA statutes, recent TILA violations in requesting payoff amount, as well as pursuant M.G.L. c. 260 §§(2)(12)

This action clearly shows evidence of **Fraudulent Concealment** in regards to its

construction. "If a person liable to a personal action fraudulently conceals the cause of such

action from the knowledge of the person entitled to bring it, the period prior to the discovery of

his cause of action by the person so entitled shall be excluded in determining the time limited for

the commencement of the action." M.G.L. c. 260 § 12, and the loan, General Release, and

Arbitration Agreement are contracts. "Actions of contract, other than those to recover for

personal injuries, founded upon contracts or liabilities, express or implied, except actions limited

by section one or actions upon judgments or decrees of courts of record of the United States or of

this or of any other state of the United States, shall, except as otherwise provided, be commenced

only within six years next after the cause of action accrues. M.G.L. c. 260 § 2.

In regards to TILA Statutes the conditions of this loan do not appear to be "usual"

circumstances in that the loan may not actually be secured by Plaintiffs' principal dwelling,

fraudulent concealment is evident, TILA violations may be at issue regarding the request for

payoff amount.  Further, due to the allegations outlined in this statement and amended complaint,

Plaintiff's request that tolling the TILA Statute of Limitations would be appropriate.  In Jones,

Jones v. TransOhio Savings Ass'n, 747 F.2d 1037 (6th Cir. 1984),

> "the court noted that several factors supported its conclusion. First, the court
> argued that TILA, as a remedial statute, should be construed liberally in favor of the
> consumer. See Jones, 747 F.2d at 1040. Second, the court noted that the remedial
> scheme of the Act was to create a system of private attorneys general and that,
> therefore, a technical reading would be "particularly inappropriate." Id. (citations
> omitted). Third, the court observed that S 1640(e) is not the sole provision granting
> jurisdiction to the district courts, but that it must be read together with 28 U.S.C. S
> 1337. Id. at 1040-41. The Jones court concluded that "[o]nly if Congress clearly
> manifests its intent to limit the federal court's jurisdiction will [the court] be precluded
> from addressing allegations of fraudulent concealment which by their very nature, and
> if true, serve to make compliance with the limitations period imposed by Congress an
> impossibility." Id. at 1041.

> **B.**    **The Amended Complaint Clearly Joins an Indisputable Party, shows**
> **Personal Jurisdiction over the Defendants, shows Sufficient Process**
> **and Service in Accordance with Mass. R. Civ. P. 4(d)(2)(5).**

On **every invoice** received by Plaintiff from Beneficial there is nowhere that the

invoice states, Beneficial "Massachusetts".  The payment is to be mailed to Beneficial

"Finance".  The following is the most startling fact regarding defendant's argument that

the wrong entity was served.  Every invoice states the following information mailed

monthly to customers of Beneficial;

> **"Address written inquiries about billing errors or questions and all**
> **nonpayment correspondence to Beneficial Customer Service, 72**
> **MADISON STREET, WORCESTER MA 01608.  Please include your**
> **name address, and account number on all correspondence.  Mail**
> **payment to: BENEFICIAL FINANCE, P.O. Box 17574, Baltimore**
> **MD 21297." <u>See</u> Ex. 12**

Again, nowhere on the invoice does it say Beneficial "Massachusetts".  Any

16

Reasonable person can only conclude by the directions offered by Beneficial regarding

**"correspondence"** that a proper entity was served. Massachusetts Branch employees

appear to accept Beneficial "Finance" to be a common and accepted **Alias.** It should also

be noted that Plaintiff did nothing but follow the directions offered in the serving of the

Amended Complaint by Defense Counsel. During a phone conversation with Attorney

Christine DeRosa, she instructed Plaintiff to mail the amended complaint to the Branch

Office at 72 Madison Street, Worcester, MA. Dates of that conversation can be offered if

need be.

Although Beneficial "Massachusetts" was not formally named, Beneficial

"Finance" can clearly be shown to be a common **Alias** used in its regular course of

business and accepted as such by the Beneficial Office where amended complaint was

served. Plaintiff, William Storie has often paid their monthly installment at Beneficial

offices in Worcester and Leominster, Massachusetts. See Ex. 13. On all checks located

by Plaintiff with matching receipts, the name on the check was "Beneficial Finance". All

of these checks were accepted gladly and at no time did any employee at these offices ask

for the checks to be endorsed, Beneficial "Massachusetts". The top line of Plaintiffs'

Payoff request states in capital letters, **"BENEFICIAL FINANCE CORPORATION"**

at the top. See Defendants' Motion to Dismiss Ex. E. Is this not Procedural Estoppel?

On one hand Defendants attempt to deny a direct connection between Beneficial

"Finance" and the Beneficial Office on 72 Madison Street in Worcester, but then they

present evidence which clearly shows a direct connection. Plaintiffs believe that

Defendants cannot have it both ways. It appears to these Plaintiffs that information

provided in their motion is inaccurate and misleading to a degree, which could be

negligence and further attempt to misrepresent facts and fly in the face of truth. See Page 13, "Memorandum of Law in Support of Defendants' Motion to Dismiss" Section C. ¶¶ 1,2 D. ¶ 1.

Further disturbing evidence contrary to Defendant's claim exists in the "Copyright 2004 infoUSA.com, Inc. US Business Directory" in their listing of the 72 Madison Street address. "Beneficial Finance" is the listed company name as well as "ABI-NO: 840398606" and also lists "Karyn Ouellette, Manager". See Ex. The Leominster, MA office is listed as "Beneficial Massachusetts INC". This should make moot the argument that the wrong entity was served. The following argument should never have been made if, United States v. A.H. Fischer Co., 162 F.2d 872, 873 (4th Cir. 1947), had been represented appropriately by Defendant's Counsel. This case came to the Federal appellate court due to the lower courts dismissing the case due to the addition of "Lumber" in its notice of service and on a second occasion, the addition of "Inc." In the appellate courts opinion by Justice Parker it is states:

> "We think that the court committed error in both cases. The defendant was engaged in some branch of the lumber or woodworking business."

Further the opinion reads,

> "Without amendment the process in both cases adequately named the defendant and was sufficient to bring into court. **A suit at law is not a children's [\*\*3] game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and the courts should not put themselves in the position of failing to recognize what is apparent to everyone else."** (Emphasis Added).

Plaintiffs have clearly demonstrated all three criteria of the "minimum

contact" test: (1) relatedness; (2) purposeful availment; and (3) reasonableness, to meet due process requirements. Plaintiffs contend that Household was aware of this, or should have been, and this should not have even been an issue. Plaintiffs would rather focus on the true merits of their case.

## V.    Conclusion

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court Deny Defendants' Motion to Dismiss in its entirety and compel this action forward through this Federal Court.

Plaintiffs,
William A. and Maritza Storie,

*Pro Se*

59 Crawford Road
Oakham, MA 01068

## CERTIFICATE OF SERVICE

I certify that the within Memorandum of Law in Response and Objection to Defendants'
Motion to Dismiss, and Motion Rejecting Arbitration, Motion to Compel Further
Litigation of Plaintiffs' Claim was served upon the following Counsel for Defendants' by
overnight mail, postage prepaid, on February 20, 2004.


Household International, INC. and
Beneficial Finance Corp.,
By their Attorneys,
Shechtmen Halperin Savage, LLP
Attorney Christine L. DeRosa
86 Weybosset Street
Providence, RI 02903

William A. Storie, *pro se*