UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
WILLIAM A. & MARITZA STORIE,        )
        Plaintiffs,                 )
VS.                                 )        No. 03-40268- FDS
                                    )
HOUSEHOLD INTERNATIONAL, INC.,      )
BENEFICIAL FINANCE CORP.,           )
        Defendants.                 )
                                    )
```

## DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION TO RECONSIDER CONTEMPT OF COURT ORDER AND REQUEST FOR SANCTIONS

Defendants, "Household International, Inc." and "Beneficial Finance Corp.", ("Defendants")[1] hereby object to Plaintiffs' Motion To Reconsider Contempt Of Court Order and Request For Sanctions. As grounds for this Objection, Defendants state that: (1) Plaintiffs' motion is untimely and (2) Plaintiffs have failed to present any new evidence or controlling precedent to suggest that reconsideration is warranted. In addition, Defendants incorporate its previously filed Memorandum of Law in Support of Defendants' Objection to Plaintiffs' Motion and Amended Motion for Contempt and Request for Sanctions attached hereto as Exhibit A.

In further support of this Objection, Defendants rely upon, and incorporate by reference, the attached Memorandum of Law in Support of Defendants' Objections to Plaintiffs' Motion to Reconsider Contempt of Court Order and Request for Sanctions and Exhibits referenced therein.

---

[1] As set forth in Defendants' pending Motion to Dismiss, Plaintiffs have failed to name or serve proper the legal entities. Although this Court lacks jurisdiction over the Defendants due to Plaintiffs' failure to name or serve the proper defendants, the named defendants have no choice but to respond to the Plaintiffs' motions. However, such response(s) are in no way a wavier of any of the defenses set forth in the Answer or pending Motion to Dismiss.

**WHEREFORE**, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion to Reconsider Contempt of Court Order and Request for Sanctions be denied and dissolve the injunction, to the extent that it was ever, or is still, in effect.

Defendants,
Household International, INC. and
Beneficial Finance Corp.,
By their Attorneys,
Shechtman Halperin Savage, LLP,

Gini Spaziano, Esq. BBO #637221
Dean J. Wagner, Esq. BBO #633181
86 Weybosset Street
Providence, RI 02903
(401) 272-1400

## Certificate of Service

I certify that the within Defendants' Objection to Plaintiffs' Motion to Reconsider Contempt of Court Order and Request for Sanctions was served upon the following *pro se* Plaintiffs by first class mail, postage prepaid, on December 7, 2004, 2004:

William A. and Maritza Storie
59 Crawford Road
Oakham, MA 01068

Dean J. Wagner, Esquire

2



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WILLIAM A. & MARITZA STORIE,<br>          Plaintiffs,<br>VS.<br><br>HOUSEHOLD INTERNATIONAL, INC.,<br>BENEFICIAL FINANCE CORP.,<br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 03-40268-NMG |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION AND AMENDED MOTION FOR CONTEMPT AND REQUEST FOR SANCTIONS

Defendants, "Household International, INC." and "Beneficial Finance Corp."

("Defendants")[1] hereby object to Plaintiffs' Motion For Contempt Of Court Order And Request

For Sanctions and Amended Motion For Contempt Of Court Order.

### I.   INTRODUCTION

This matter arises out of a secured loan transaction, Plaintiff, William Storie, entered into

with Beneficial Massachusetts Inc. on August 24, 2000 (the "Loan").  Although it is difficult to

decipher the substance of Plaintiffs' vague and conclusory allegations, it appears that Plaintiffs

are claiming that Defendants acted improperly in relation to said Loan and violated 15 U.S.C. §

1604 et seq., the Truth in Lending Act ("TILA").  As a result of the alleged TILA violations,

Plaintiffs claim they are entitled to relief.  As more specifically set forth in Defendants' pending

Motion to Dismiss, Plaintiffs' Complaint fails to state a claim upon which relief may be granted

---

[1] As set forth in Defendants' pending Motion to Dismiss, Plaintiffs have failed to name or serve proper the legal entities.  Although this Court lacks jurisdiction over the Defendants due to Plaintiffs' failure to name or serve the proper defendants, the defendants Plaintiffs have named have no choice but to respond to the Plaintiffs' motions. However, such response(s) are in no way a wavier of any of the defenses set forth in the Answer or the pending Motion to Dismiss.

and is subject to dismissal.[2] Not only are Plaintiffs' claims barred by the applicable statute of limitations, but Plaintiff, William Storie, executed a Release And Agreement To Participate In Household-Beneficial Settlement ("Release and Settlement Agreement") in favor of Defendants relating to the subject Loan. *See* Exhibit D to Defendants' Memorandum of Law in Support of its Motion to Dismiss. Accordingly, the claims are barred by the terms of that Release and Settlement Agreement.

When Plaintiff, William Storie, first filed his Complaint in the Worcester Superior Court, despite his failure to satisfy the elements of obtaining a preliminary injunction, the Superior Court entered an order restraining him from making any payments on the Loan until December 29, 2003. *See* Ex. A. to Motion for Contempt. Plaintiffs claim Defendants have violated the injunction by sending solicitations for additional loans and correspondence regarding amounts due and future payments, and by indicating Plaintiff's past due status to the credit bureaus. Although the injunction was improperly entered, Defendants have not engaged in any conduct which amounts to a violation. By its clear terms, the injunction does not restrain the Defendants in any way. Rather, the only party burdened by the injunction is Plaintiff, William Storie, who was ordered not to make payments until December 29, 2003. Despite the fact that Defendants were not restrained by the injunction, due to the impracticality of the injunction and out of an abundance of caution, Defendants endeavored to make a good faith effort to report the Plaintiff's account as disputed and to refrain from collection efforts. In addition, Defendants ceased the accrual of interest during the period of injunction. Although Defendants successfully noted the

---

[2] Defendants moved for dismissal under: (1) Fed. R. Civ. P. 12(b)(6) due to the execution of the Release and Settlement Agreement; the expiration of the applicable statute of limitations; the terms of a valid and enforceable mandatory arbitration agreement the parties entered into; and the fact that the Complaint, even as amended, fails to comport with the notice pleading requirements of Rule 8(a); Rule 12(b)(2) for lack of personal jurisdiction; Rule 12(b)(4) and (5) for insufficiency of process and insufficient service of process; and Rule 12(b)(7) for failure to join an indispensable party.

account as disputed for a period of time, it appears that at some point, Plaintiffs were properly reported as delinquent on this Loan account. Although Defendants voluntarily undertook these efforts, they were not required to do so pursuant to the terms of the injunction or any court order and thus, may not be held in contempt. Moreover, even if the injunction restrained Defendants in any way, the injunction expired by its terms on December 29, 2003, and many of the alleged violations appear to have been after December of 2003. Accordingly, Plaintiffs' Motion and Amended Motion for Contempt and Request for Sanctions must be denied.

## II.    PROCEDURAL HISTORY

Plaintiff, William Storie, the sole initial *pro se* Plaintiff, filed a Complaint and Application for Preliminary Injunction against Defendants on or about October 30, 2003, in the Worcester County Superior Court. Although the Complaint made various allegations, it did not specifically reference any statute or cause of action. The Summons and Complaint were served upon a branch of Beneficial Massachusetts Inc. ("Beneficial") on October 31, 2003.

The Application for Preliminary Injunction, pursuant to which Plaintiff sought permission to deposit his monthly Loan payments in an escrow account instead of making payments directly to the holder of the note, was initially heard on November 7, 2003, by Justice Page. Instead of granting Plaintiff's request for an escrow agreement, the Court entered an injunction, upon Plaintiff's payment of $90.00, that "plaintiff William A. Storie is ordered not to make any payments to the defendant until after the hearing on November 17, 2003 @ 2:00 P.M. when this Court will hear further testimony." *See* Ex. A to Motion for Contempt. Despite the fact that Plaintiff failed to satisfy the elements necessary to obtain a preliminary injunction and had initially requested the establishment of an escrow account, the order was entered and a

3

further hearing scheduled for November 17th.[3]  With the Court's approval, the parties agreed to continue the further hearing to November 21st due to a scheduling conflict.

At the subsequent hearing, instead of listening to substantive arguments from either party regarding the merits of the case or the continuance of the order, the Justice Page granted Plaintiffs' request for a continuance.  Plaintiffs represented that they were seeking the assistance of counsel from Harvard Law School and expected to retain an attorney before Christmas.  Based upon that representation, an order staying the entire proceedings until December 29, 2003, and setting the matter down for a status hearing was entered.  That order stated, in part, "This matter is cont'd in effect until 12/29/03 at 2:00 PM for status.  Counsel for the plff. or a representative from Harvard Law School should be present.  All matters are stayed until then.".[4]  *See* Ex. E to Motion for Contempt.

On or about December 2, 2003, the Defendants timely filed a Notice of Removal and the Worcester Superior Court issued a Notice of Docket Entry stating that the an entry had been made on the docket on December 23, 2003, indicating that the case had been removed to this

---

[3] Before the November 21st hearing, Plaintiff filed an amended Complaint as a matter of right, entitled "Complaint Modification For Injunction, Restitution and Other Equitable Relief".  The amended Complaint, which added Maritza Storie as a Plaintiff, changed the named Defendants as set forth in the caption of this case, and asserted several federal claims, was served upon a Beneficial branch on November 13, 2003.

[4] The Order also indicated that the Plaintiff had previously paid the $90.00 required by the initial Order.  Plaintiffs have repeatedly claimed that defense counsel misrepresented to the Court that said fee had not been paid.  In light of such serious and repeated allegations, Defendants have no choice but to respond and set the record straight.  Just prior to the further hearing, counsel for Defendant inquired at the clerk's office as to whether the Plaintiff had paid the $90.00 since the initial Order indicated it would not enter until such payment was made.  The counter clerk indicated that no payment had been made.  At the hearing, defense counsel informed the Court that although the Plaintiff had not paid the required fee and therefore, it was questionable as to whether the injunction had actually issued, that Defendants were presuming that it had been issued for the period between the initial and subsequent hearings.  For an unknown reason, the hearing justice appeared to be angered by defense counsel's inquiry and demanded to know why counsel cared if the fee had been paid.  Counsel explained that by the terms of the initial Order, it appeared that the injunction would not issue until the payment had been made and that she was advising the Court to clarify the record and to advise both the Court and Plaintiff of that fact.  During the hearing, the session clerk confirmed that the fee had not been paid.  However, after the hearing, it appears that the clerk's office confirmed that Plaintiff had in fact paid the $90.00.  Defense counsel relied upon the information provided to her by the clerk's office.  Reliance upon the clerk's honest mistake cannot be construed as a misrepresentation to the Court and Defendants and their counsel deny that any fact has been misrepresented to this, or any other Court.

4

Court. The parties subsequently filed a Stipulation extending the time within which Defendants could timely respond to the Amended Complaint up until, and including, January 13, 2004. On January 13, 2004, Defendants filed a Motion to Dismiss or, in the Alternative, Motion to Compel Arbitration and Stay Litigation Pending Arbitration and a supporting Memorandum. Based in part upon Plaintiffs' representation that they were still actively seeking the assistance of counsel, the parties entered into a Stipulation allowing Plaintiffs up until and including February 19, 2004, to respond to Defendants' Motion to Dismiss.

On February 9, 2004, Plaintiffs filed what was essentially a motion to amend their Complaint. Plaintiffs seek to avoid dismissal by including the substance of the transcripts from the two hearings in the Superior Court and other pleadings Plaintiffs filed in the Superior Court. Defendants objected to the motion to amend on February 13th on several grounds, including futility, failure to comply with well-pleaded complaint rule, and the fact that it would be impossible for Defendants to respond to a complaint which incorporated, as its allegations, hearing transcripts.

On February 20, 2004, Plaintiffs filed an opposition to the Motion to Dismiss. On March 11th, Plaintiffs filed another motion which appeared to be an effort to supplement their opposition to the Motion to Dismiss.[5] On March 19th, Plaintiffs' filed the subject Motion for Contempt of Court Order and Request for Sanctions. On March 25th, Plaintiffs filed an Amended Motion for Contempt of Court Order and Request for Sanctions to Include New Evidence. This Memorandum of Law is in support of Defendants' Objection to the Motion and Amended Motion for Contempt and Sanctions.

---

[5]In that motion, entitled Motion to File Response of Reply Due to Defendants Presenting Materially False and Misleading Evidence to this Federal Court, Plaintiffs again asserted that Defendants made several misrepresentations to the Court. Although these are serious allegations, Defendants do not wish to belabor the Court with a point-by-point rebuttal as those arguments were addressed in Defendants' Objection to that motion.

Accordingly, pending before the Court at this time are the following opposed motions: (1) Defendants' Motion to Dismiss; (2) Plaintiffs' motion to amend; (3) Plaintiffs' Motion to File Response of Reply Due to Defendants Presenting Materially False and Misleading Evidence to this Federal Court; (4) Plaintiffs' Motion for Contempt and Request for Sanctions; and (5) Plaintiffs' Amended Motion for Contempt. Given the strength of Defendants' arguments in the pending Motion to Dismiss, this matter may be entirely disposed of by granting Defendants' Motion. Nonetheless, Defendants respond to Plaintiffs' pending contempt motions as set forth herein.

## III.   CIVIL CONTEMPT STANDARD

Civil contempt is a means of ensuring that a party bound by a court order, including an injunction, abides by that court order. Since "judicial contempt power is a potent weapon" precedent has cautioned that it should be used sparingly and only when there has been a clear violation of the four corners of an unambiguous order. *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S. Ct. 201, 208, 19 L. Ed. 2d 236, 245 (1967); *see also*, *Project B.A.S.I.C. v. Kemp*, 947 F. 2d 11, 17 (1st Cir. 1991)(noting the four corners of the order must identify the forbidden acts); *In re Clamp-All Corp.*, 233 B.R. 198, 210 (Bankr. D. Mass., 1999)("Civil contempt is a remedy which should be used sparingly."). In recognition of the fact that contempt "founded upon a decree too vague to understand . . . can be deadly", Fed. R. Civ. P. 65(d)[6] requires that orders be framed carefully. *Id.* Subsection (d) of Rule 65 "has been interpreted as a bar to the enforcement of decrees too vague to inform the

---

[6] Rule 65(d) of the Massachusetts Rules of Civil Procedure, which governs injunctions in the state courts of the Commonwealth, is identical to its federal counterpart and provides that "every order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail . . . the act or acts sought to be restrained." *See* Fed. R. Civ. P. 65(d). However, now that this matter has been removed, "federal rather than state procedural requirements govern the future course of the proceedings in a removed case." *Granny Goose Foods, Inc., v. Brotherhood of Teamsters et al.* 415 U.S. 423, 427, 94 S.Ct. 1113, 1123, 39 L. Ed. 2d 435, 449 (1974).

burdened party 'what the court intends to require and what it means to forbid'." *Id.* (quoting *International Longshoremen's Ass'n*, 389 U.S. at 76. If an injunction is not carefully framed, "it cannot stand" and a finding of contempt cannot be made. *Kemp, supra.*

The party seeking contempt bears the burden of proving, by clear and convincing evidence, that the party bound by the injunction has violated the terms thereof. *See e.g., Vance v. Universal Amusement Co.*, 445 U.S. 308, 322-323, 100 S.Ct. 1156, 1165, 63 L. Ed. 2d 413, 424 - 425 (1980)(noting moving party bears the burden of showing of noncompliance with the injunction); *Accusoft Corp. v. Palo*, 237 F.3d 31, 50 (1st Cir. 2001)(referencing "the heavy burden of proof our precedent places on a party alleging contempt"); *Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991). Unless the moving party can demonstrate that the injunction clearly specifies the restrained conduct, the injunction cannot support a finding of contempt. *Kemp*, 947 F.2d at 16. Moreover, any "ambiguities and uncertainties about the scope of a court order are read in favor of the person charged with contempt." *Id.* (internal quotations and citations omitted); *Northern Light Tech., Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 121 (D. Mass. 2000)("Civil contempt must be established by clear and convincing evidence and the underlying order must be clear and unambiguous in its terms.").

> This requirement of clarity derives from concepts of fairness and due process. And, because an order commanding a person to act or refrain from acting is inherently coercive, the requirement of clarity mirrors the requirement of the Civil Rules that every order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . .and not by reference to the complaint or other document, the act or acts sought to be restrained . . .

*Kemp*, 947 F.2d at 17 (quoting Fed. R. Civ. P. 65(d)).

Thus, in order to hold a party in contempt, that party "must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was

expected to behave in the indicated fashion." *Kemp*, 947 F.2d at 17. The party enjoined must be able to ascertain, from the four corners of the order, exactly what acts are forbidden. *Accusoft Corp.*, 237 F.3d at 47.

Even if a burdened party technically violates an injunction, "our precedent permits a finding of contempt to be averted where diligent efforts result in substantial compliance with the underlying order." *Accusoft*, 237 F.3d at 47. Whether or not a party has substantially complied with the terms of an order is dependent upon "the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest." *Accusoft*, 237 F.3d at 47 (quoting *Fortin v. Comm'r Mass. Dept. Pub. Welfare*, 692 F.2d 790, 795 (1ˢᵗ Cir. 1982). As such, "a court may decline to find a party in contempt despite the failure to achieve 'letter perfect compliance' with the order at issue." *Accusoft, supra* at 47 (quoting *Langton*, 928 F. 2d at 1222). In addition, even when a sanction is warranted, "the court must exercise the least possible power suitable to achieve the end proposed." *Kemp*, 947 F.2d at 16. However, where, as here, the order does not clearly place any restriction upon the party opposing the motion for contempt, that order may not support civil contempt and the motion must be denied.

### IV.    ARGUMENT

#### A.    The Order Was Improper

The order at issue was improperly entered because Plaintiffs failed to meet the burden for obtaining an injunction, most notably success on the merits and immediate irreparable harm. The order was also improper because the Superior Court failed to allow Defendants to present substantive arguments prior to extending the initial injunction and failed to set forth the reasons for the issuance of the injunction. To hold Defendants in contempt of an order which was not

properly entered and which, by its language, imposed no obligation upon the Defendants, would be inherently unfair.

Before the further hearing on November 21, 2004, Defendants submitted a comprehensive Objection and Memorandum of Law in opposition to Plaintiffs' application for a preliminary injunction. *See* Defendants' Objection to Plaintiffs' Application For Preliminary Injunction and Supporting Memorandum attached to the Notice of Removal. Plaintiffs, on the other hand, did not cite any legal authority as the basis for entering a preliminary injunction in their favor and even failed to set forth the elements which must be proven before an injunction may be obtained. At no time did the Superior Court hear Defendants' substantive argument or consider the written memorandum Defendants submitted in support of their opposition.

It is well settled that a party seeking to obtain a preliminary injunction bears the burden of proving:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981)(internal citations and quotations omitted). Although an order granting a preliminary injunction may only be reversed using the abuse of discretion standard, "the application of an improper legal standard in determining the likelihood of success on the merits is never within the district court's discretion . . . [and] misapplication of the law to particular facts is an abuse of discretion." *Id.* "In either of these circumstances, the denial of the preliminary injunction should be reversed and the injunction entered if necessary to protect the rights of the parties." *Id.* (quoting *Charles v. Carey*,

9

627 F.2d 772, 776 (7th Cir. 1980). If an order has been improperly entered in the state court

prior to removal, it may be dissolved or modified by the federal court in accordance with federal

procedural rules. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters et al.*, 415 U.S. 423,

94 S.Ct. 1113, 39 L. Ed. 2d 435 (1974)(stating "federal rather than state law governs the future

course of proceedings, notwithstanding state court orders issued prior to removal" and noting

"the district court's authority to dissolve or modify injunctions . . . had in state court prior to

removal."); *Hyde Park Partners, L.P. v. Connolly et al.*, 839 F. 2d 837, 842 (1st Cir. 1988)("28

U.S.C. § 1450 establishes the authority of the federal district court to dissolve or modify all

injunctions and orders issued prior to removal.").

    As stated in by the United States Supreme Court:

> The judicial contempt power is a potent weapon. When it is
> founded upon a decree too vague to be understood, it can be a
> deadly one. Congress responded to that danger by requiring that a
> federal court frame its orders so that those who must obey them
> will know what the court intends to require and what it means to
> forbid. Because the decree of this District Court was not so framed,
> it cannot stand. And with it must fall the District Court's decision
> holding the union in contempt.

*International Longshoremen's Ass'n*, 389 U.S. at 76, 88 S. Ct. 208, 19 L. Ed. 2d. 245. Here, the

injunction was improper and cannot stand or form the basis for contempt because the hearing

justice did not apply the standards required to obtain an injunction and failed to accord the

parties a fair hearing on the merits prior to continuing the effect of the injunction until December

29, 2003.

    1.    Plaintiffs Cannot Demonstrate Irreparable Harm Outweighing
          Harm To Defendants

    The hearing justice failed to properly consider the elements required to obtain a

preliminary injunction. First, Plaintiffs have made no showing that they will suffer irreparable

injury if the injunction was not granted or is dissolved. To "demonstrate a risk of irreparable harm, a plaintiff must show that it has experienced a substantial injury that is not accurately measurable or adequately compensable by money damages." *Leisure Time Cruise Corp. v. Town of Barnstable*, 62 F. Supp. 2d 202, 210 (D. Mass. 1999)(internal citations and quotations omitted). This is not a case where Plaintiffs have proven an inability to make their monthly payments or are facing foreclosure. Rather, Plaintiffs simply do not want to have to pay the holder of the note directly during the course of this litigation. Initially, they only sought an injunction to deposit the payments into an escrow account during the pendency of this litigation. Implied in that request is their ability to continue making such payments. If the injunction is dissolved, Plaintiffs will not suffer irreparable harm. Rather, the status quo will be reinstated and Plaintiffs will be entitled to damages, if they are successful. *Holmes Prods. Corp. v. Catalina Lighting, Inc.*, 67 F. Supp. 2d 10, 14 (D. Mass. 1999)(concluding plaintiff had "not met its burden of proving irreparable harm" because it could not show the harm it claimed to have suffered was not compensable by money damages). Since Plaintiffs did not demonstrate that they will suffer irreparable harm if they are required to make payments to Beneficial as they have for several years, the initial injunction was entered in error and must be dissolved.

Not only have Plaintiffs failed to prove they would suffer irreparable harm, but they also cannot show that the harm they claim they will suffer if they are required to make payments to Beneficial will outweigh the harm to Defendants. Injunctions generally are entered to maintain the status quo. Plaintiffs are not likely to succeed on the merits of their claims and preventing Beneficial from obtaining monies owed to it is far more detrimental than any claimed, but unarticulated, harm to Plaintiffs.

11

2.    Plaintiffs Are Not Likely To Succeed On The Merits

As more specifically set forth in Defendants' Objection (and supporting Memorandum) to Plaintiffs' Application for Preliminary Injunction as well as Defendants' pending Motion to Dismiss, Plaintiffs are unlikely to succeed on the merits of this case. First, the only claim which can be ascertained from the Complaint is a claim under TILA which carries, at most, a three-year statute of limitations. *See* Defendants' Memorandum in Support of Motion to Dismiss at p.8 and Memorandum in opposition to Motion for Preliminary Injunction at p. 7. The subject Loan closed in August of 2000 and thus, the commencement of this action in October of 2003 was untimely.

Second, Plaintiff, William Storie, entered into a Release and Settlement Agreement prior to the commencement of suit. *See* Memorandum in Support of Defendants' Motion to Dismiss at p.6 and Memorandum in opposition to Motion for Preliminary Injunction at p. 7. That Release and Settlement Agreement was sent to Mr. Storie by the Massachusetts Attorney General in accordance with the Final Judgment By Consent filed in an action entitled *Commonwealth of Massachusetts v. Household International, Inc.*, C.A. No. 02-5604-C. If Mr. Storie had any questions about the scope and purpose of the Release and Settlement Agreement, he was free to contact the Attorney General or an attorney of his choosing. Plaintiffs' proclaimed ignorance regarding the nature of the claims released and the scope of the Release and Settlement Agreement do not constitute grounds for invalidating the agreement. Mr. Storie has admitted that he signed the Release and Settlement Agreement but claims he is not bound because he did not cash the settlement check which he received pursuant to the terms of that agreement. This argument lacks merit at the Release and Settlement Agreement is just that, an agreement to

12

participate in a settlement and release claims. Plaintiff was bound the moment he affixed his signature and returned it to the Attorney General.

Third, Plaintiffs failed to properly name or serve the appropriate defendant. *See* Memorandum in Support of Defendants' Motion to Dismiss at p. 13 and Memorandum in opposition to Motion for Preliminary Injunction at p. 6. As set forth several times, the only entity which may be named in this action is Beneficial Massachusetts Inc. Plaintiffs have yet to name or serve that entity.[7] Fourth, Plaintiffs are barred from pursuing this matter due to the existence of a valid and enforceable mandatory arbitration agreement. *See* Memorandum in Support of Defendants' Motion to Dismiss at p.9 and Memorandum in opposition to Motion for Preliminary Injunction at p. 8. Finally, Plaintiffs' Complaint fails to meet the notice-pleading requirements of Fed.R.Civ.P. 8(a). *See* Memorandum in Support of Defendants' Motion to Dismiss at p.10 and Memorandum in opposition to Motion for Preliminary Injunction at p. 5. Given the current, and proposed, state of the Complaint, Defendants are left to guess as to the nature of the claims.[8]

For all of these reasons, and as more specifically set forth in Defendants' Memorandum of Law in Support of its Motion to Dismiss, which is incorporated by reference, it is clear that Plaintiffs are not likely to succeed on the merits. As such, the injunction was improperly entered

---

[7] At one point, Plaintiffs claimed that defense counsel instructed them to serve their amended Complaint in the same manner as the initial Complaint. Counsel denies that she in any way instructed or advised the *pro se* Plaintiffs. In fact, counsel took great pains to remind Plaintiffs that she represents an opposing party and that she was not advising Plaintiffs how to proceed at all. When Plaintiff informed defense counsel that he intended on filing an amended Complaint he asked if he could give defense counsel a copy. In response, defense counsel stated that she would appreciate a courtesy copy but that she was not advising Plaintiffs how to file or serve an amended Complaint and that Plaintiffs were required to follow the rules of procedure as they were required to do initially. Apparently, Plaintiffs misinterpreted this statement to mean that they had served the initial Complaint correctly when no such representation had been made.

[8] The only claim which Defendants can possibly ascertain from the first amended Complaint is a claim under TILA. Although Plaintiffs have moved to amend the Complaint yet again, such an amendment would be futile. The proposed amendment would further confuse the issues and render a response by Defendants impossible as Plaintiffs wish to incorporate transcripts and pleadings filed in the Superior Court.

in the Superior Court and should be dissolved to the extent that is in effect.[9]  Since the injunction was not properly entered in the first instance, it may not form the basis for contempt.

**B.**     <u>The Order Did Not Clearly Require Or Forbid Defendants To Act.</u>

Defendants may not be held in contempt because the injunction at issue, by its terms, did not restrain the Defendants' conduct in any way.  Rather, it obligated only one party, Plaintiff, William Storie, to refrain from making payments on the Loan.  If Plaintiffs were dissatisfied with the injunction because it did not provide them with the relief requested, namely the right to deposit monthly Loan payments into an escrow account or to cease all account activity, than it was incumbent upon the Plaintiffs to seek clarification or to seek a further injunction.  To hold Defendants in contempt of an order that does not clearly impose any duty or restriction upon them would violate the well-settled principle that contempt may only be supported by clear and unambiguous orders which plainly set forth the prohibited conduct and clearly identify the party to be bound.  *See Kemp*, 947 F. 2d at 17 (noting "a party cannot be held in contempt unless its contumacity clearly and convincingly appears.").  As the First Circuit Court of Appeals noted in *Kemp* when it found that the underlying order was too ambiguous to support a finding of contempt, "no one may be punished, under our justice system, for failing to conform his conduct to rules he could not ascertain."  947 F.2d at 21.  Since it does not appear, from the four corners of the order at issue, that the Defendants were forbidden from corresponding with the Plaintiffs or keeping track of and reporting past due payments, Defendants may not be held in contempt. *See Accusoft Corp.*, 237 F.3d at 47.

---

[9] The injunction expired by its own terms on December 29, 2003.

14

C.    Substantial Compliance Vitiates Contempt

"[W]hile good-faith efforts alone do not insulate a defendant in a contempt action . . . , our precedent permits a finding of contempt to be averted where diligent efforts result in substantial compliance with the underlying order. *Accusoft Corp.* at 47(internal citations and quotations omitted). Whether substantial compliance has been achieved "depend[s] on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest." *Fortin* 692 F.2d at 795. "For this reason, a court may decline to find a party in contempt despite the failure to achieve 'letter perfect compliance' with the order at issue." *Accusoft Corp.*, 237 F.3d at 47.

Although Defendants were not ordered or prevented from engaging in any particular conduct by the language of the order, they acted in good faith in attempting to conduct business in a way which would not disrupt even the surmised intention of the injunction. For example, it appears that the Loan has not posted any interest since the date of the injunction. *See* Ex. B to Motion to Contempt at p. 2. Moreover, Defendants attempted to curtail collection efforts by noting internally that the account was in dispute. Unfortunately, this process has proved onerous because internal automatic procedures require the "dispute status" to be manually and constantly updated and documents were automatically generated regarding collection efforts.[10] It is important to note that the injunction did not prevent Defendants from communicating with the Plaintiffs or properly reporting Plaintiff past due on the Loan, particularly with respect to those

---

[10] One communication Plaintiffs claim violated the injunction was a "Notice of Hardship Eligibility," a recent offer to assist the Plaintiff with payment terms, in conjunction with ACORN, a consumer advocacy group, in accordance with the terms of an agreement approved by the United States District Court, Northern District of California, in an action entitled *In re:Household Lending Litigation. See* Ex. A to Amended Motion for Contempt. Not only was this communication (or any other communication) not forbidden by the injunction, but it was dated well after the expiration of the injunction and issued pursuant to the terms of a court-approved agreement.

payments which came due after the expiration of the improper injunction at issue.[11] Despite this fact, Defendants have taken corrective measures to cease solicitations and delete any negative reports made during the period of the injunction and to report Plaintiff as current on the Loan.[12] These actions were not required but undertaken voluntarily by Defendants in good faith. Defendants should not be punished for their inability to guess as to whether the Superior Court intended to restrain their conduct in some manner and the scope and nature of any such restraint. Since Defendants have acted in good faith, have taken steps to report Plaintiff as current on the Loan during the pendency of the injunction, and Plaintiff has not suffered any damage, there exists no basis for holding Defendants in contempt.

## V.    CONCLUSION

WHEREFORE, Defendants respectfully request that Plaintiffs' Motion For Contempt Of Court Order And Request For Sanctions and Amended Motion for Contempt of Court Order And Request For Sanctions To Include New Evidence be denied.

---

[11] Plaintiffs have not shown that the Defendants reported them delinquent prior to the expiration of the injunction in December of 2003. In fact, the Equifax report, dated March of 2004, at p. 15 of Ex. C to the Motion for Contempt shows that the delinquency was reported in February of 2004 and noted payments were 31-60 days past due. Even if the injunction were effectively read to preclude a past due report prior to December of 2003, the February of 2004 report, indicating that one to two payments had been missed since December of 2003 was accurate and permissible. Like the Equifax report, the Experian report submitted by the Plaintiffs is dated March of 2004, well past the expiration of the injunction. Although the Experian report indicates that five payments have been missed, it does not indicate when the payments were missed or when the report was made. The issues associated with determining when and how Beneficial may properly report the Plaintiff as delinquent on an account on which he has not been paying, even after the expiration of the injunction, highlights one of the practical problems and the inequity of the injunction if interpreted as urged by Plaintiffs.

[12] In Paragraph 3 of the Motion For Contempt, Plaintiff admitted that once he spoke with defense counsel to request that solicitations and correspondence cease, that "No more mail has been received after this discussion." The only communication Plaintiffs received after that discussion was the Notice of hardship. *See* note 10, *infra.*

Defendants,
Household International, INC. and
Beneficial Finance Corp.,
By their Attorneys,
Shechtman Halperin Savage, LLP,

Preston W. Halperin BBO# 218170
Christine L. DeRosa BBO# 641171
86 Weybosset Street
Providence, RI 02903
(401) 272-1400

## Certificate of Service

I certify that the within Memorandum of Law in Support of Defendants' Objection to Plaintiffs' Motion And Amended Motion For Contempt And Request For Sanctions was served upon the following *pro se* Plaintiffs by first class mail, postage prepaid, on April 2, 2004:

William A. and Maritza Storie
59 Crawford Road
Oakham, MA 01068

Christine L. DeRosa, Esquire

## Responses and Replies
4:03-cv-40268-NMG Storie et al v. Household International, Inc. et al

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from DeRosa, Christine entered on 4/2/2004 at 3:08 PM EST and filed on 4/2/2004

**Case Name:**  Storie et al v. Household International, Inc. et al
**Case Number:**  4:03-cv-40268
**Filer:**  Household International, Inc.
  Beneficial Finance Corporation
**Document Number:** 18

**Docket Text:**
MEMORANDUM in Opposition re [15] MOTION for Contempt, [16] MOTION to Amend [15] MOTION for Contempt filed by Beneficial Finance Corporation, Household International, Inc.. (DeRosa, Christine)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=4/2/2004] [FileNumber=465112-0]

[3f6c073cd1db462631eac04cc161e1251db4a5c7436f7d8deb46f1f08f6f6d55f059a
8222ba962f0038023e9df13cc321a8221120cc864e8eb8900aae366a518]]

**4:03-cv-40268 Notice will be electronically mailed to:**

Christine L. DeRosa    cld@shlawri.com

Preston W. Halperin    pwh@shlawri.com

**4:03-cv-40268 Notice will not be electronically mailed to:**

Maritza Storie
59 Crawford Road
Oakham, MA 01068

William Storie
59 Crawford Road
Oakham, MA 01068