

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 JAN 13  A 9: 25

U.S. DISTRICT COURT
DISTRICT OF MASS.

No. 03-40268-NMG

WILLIAM A. & MARITZA STORIE,         )
    Plaintiffs,                                  )
VS.                                                    )
                                                         )
HOUSEHOLD INTERNATIONAL, INC.,    )
BENEFICIAL FINANCE CORP.,                )
    Defendants.                                 )
                                                         )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION AND STAY LITIGATION PENDING ARBITRATION

Defendants, Household International, INC. and Beneficial Finance Corp., ("Defendants")

hereby submit this Memorandum of Law in support of their Motion to Dismiss. For the reasons

stated herein, Defendants request that the Plaintiffs' Amended Complaint, entitled "Complaint

Modification For Injunction, Restitution and Other Equitable Relief" (hereinafter "Amended

Complaint") be dismissed in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6),

lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), insufficiency of process and

insufficiency of service of process under Fed. R. Civ. P. 12(b)(4) and (5), and failure to join an

indispensable party under Fed. R. Civ. P. 12(b)(7).

## I.   INTRODUCTION

Plaintiff, William Storie, entered into a loan agreement with Beneficial Massachusetts

Inc. ("Beneficial"). The Defendants' conduct regarding the subject loan forms the basis for the

Plaintiffs' Amended Complaint. Although Mr. Storie's wife, Maritza, is also named as a

Plaintiff, she was not a party to the loan agreement with Beneficial. Defendants, Household

International, INC. ("Household") and Beneficial Finance Corp. ("Beneficial Finance") were not parties to the subject loan agreement.

Plaintiffs assert vague claims that Defendants acted improperly with respect to the loan agreement at issue and that Defendants violated 15 U.S.C. § 1604 et seq., the Truth-in-Lending Act ("TILA"). Although not entirely clear from the Amended Complaint, it appears as if Plaintiffs are seeking a preliminary injunction staying any and all activity on the loan at issue pending a resolution of this matter, restitution, attorneys' fees, and an order releasing Plaintiff, William Storie, from the General Release which he executed in favor of Defendants and Beneficial. The Plaintiffs' Amended Complaint must be dismissed because: (1) the Complaint fails to state a claim upon which relief may be granted; (2) the applicable statute of limitations has expired; (3) Plaintiff, William Storie's claims are barred by the terms of a General Release regarding the loan at issue he executed as part of a settlement facilitated by the Massachusetts Attorney General; (4) Plaintiffs have failed to name or serve the appropriate defendant or actual existing legal entity; and (5) even if Plaintiffs have cognizable claims against Defendants, such claims must be submitted to arbitration pursuant to the provisions of the contractual loan agreement at issue.

## II.    PROCEDURAL BACKGROUND

William Storie, the sole initial *pro se* Plaintiff, filed a Complaint and Application for Preliminary Injunction against Defendants on or about October 30, 2003, in the Worcester County Superior Court. The Complaint made various allegations but did not specifically reference any statute or cause of action. At that time he also obtained a Summons and Order of Notice setting this matter down for hearing on his Application for Preliminary Injunction on November 7, 2003. The Summons and Complaint were served upon a branch of Beneficial

Massachusetts Inc. ("Beneficial") on October 31, 2003. The matter was heard by the Honorable Judge Page who issued an order, upon Plaintiff's payment of $90.00, ordering Plaintiff "not to make any payments to the defendant until after the [further] hearing" which the Court originally set down for November 17th.

After the November 7th hearing, the Plaintiff filed an Amended Complaint, entitled "Complaint Modification For Injunction, Restitution and Other Equitable Relief". The Amended Complaint, which added Maritza Storie as a Plaintiff, changed the named Defendants as set forth in the caption of this case, and asserted several federal claims, was served upon a Beneficial branch on November 13, 2003. Upon agreement of the parties and approval of the Court, the further hearing was rescheduled from November 17th to November 21st. At the hearing of November 21st, the Plaintiff indicated that he was seeking counsel from Harvard Law School and requested a continuance to obtain representation. The Court did not hear substantive arguments but rather, continued the prior order in effect and stayed the entire matter until December 29, 2003, for a status conference. The Court ordered that all counsel, including "a representative from Harvard Law School should be present."

On or about December 2, 2003, the Defendants timely filed a Notice of Removal and the Worcester Superior Court issued a Notice of Docket Entry stating that the an entry had been made on the docket on December 23, 2003, indicating that the case had been removed to this Court. The parties subsequently filed a Stipulation extending the time within which Defendants could timely respond to the Amended Complaint up until, and including, January 13, 2004.

## III.  FACTUAL BACKGROUND

William Storie entered into Home Equity Credit Line Revolving Loan Agreement (the "Loan") with Beneficial Massachusetts Inc. ("Beneficial") on August 24, 2000. Pursuant to the

terms of the Loan, Plaintiff was given an initial line of credit in the amount of $37,000.00. <u>See</u> Ex. A. Plaintiff granted Beneficial a security interest in his property located in Oakham, Massachusetts to secure the Loan. <u>See</u> Ex. B. When Plaintiff obtained the Loan from Beneficial, he executed a Loan Agreement as well as an Arbitration Rider.[1] <u>See</u> Ex. C. The Arbitration Rider contains a mutual mandatory arbitration clause and states that it applies to any and all claims "arising from or relating to this [Loan] Agreement or the relationships which result from Agreement, including the validity or enforceability of this arbitration clause." <u>See</u> Ex. C.

On August 23, 2003, Plaintiff executed a General Release in favor of Household International, Inc., Household Finance Corporation, Beneficial Corporation, and their direct and indirect subsidiaries, affiliates, officers, directors, employees, agents, related entities, successors, and assigns. <u>See</u> Ex. D. In exchange for a minimum specified sum, Plaintiff released Beneficial:

> from all civil actions and causes of actions which [Plaintiff] may have as of the date of this release agreement, in contract, in tort . . . whether know or unknown . . . that arise from or are related to the restitution received or the following lending practices by Household in connection with [Plaintiff's Loan]

The lending practices set forth in the release included "Household's conduct with respect to":

> loan points and origination fees, interest rates, monthly payment amounts, single premium credit and other insurance products, prepayment penalties, loans offered through a negotiable check . . . home equity lines of credit, loan billing practices relating to simple interest calculations, balloon payments, payoff information, non English documentation, and net tangible benefit in loan refinancing.

After executing the General Release in August of 2003, Plaintiff requested a payoff figure from Beneficial using an on-line form on or about October 26, 2003. <u>See</u> Ex. E In response to his request, Beneficial forwarded Plaintiff a payoff figure that was good through October 31, 2003, and contained a per diem figure in the event Plaintiff

---

[1] Beneficial Massachusetts Inc. has not been named or served in this matter.

chose to pay off the loan after the expiration of the estimated pay-off date. See Ex. F
Plaintiff was apparently angered by the 5-days that elapsed from the time he requested
the pay off until the time he received it in the mail. Based upon vague allegations that the
Loan had "placed [him] in a very difficult situation" on October 29, 2003, Plaintiff
demanded that Beneficial reduce his principal balance by $2,000.00. See Ex. G. Plaintiff
then commenced this suit the next day and sought injunctive relief pursuant to which it
appears that Plaintiff sought to avoid making any payments or accruing any interest
during the pendency of this matter.

## IV.    STANDARD FOR GRANTING A MOTION TO DISMISS

Defendants have moved to dismiss the Amended Complaint under Fed. R. Civ. P.
12(b)(2) and 12 (b)(4-7).[2] "The purpose of a motion to dismiss is to determine whether the
complaint alleges facts sufficient to state a cause of action." Alternative Energy, Inc. v. St. Paul
Fire & Marine Ins. Co., 267 F.3d 30, 36 (1st Cir. 2001)(upholding order granting motion to
dismiss where defendant was released from liability as a matter of law)(internal quotations and
citations omitted). Although the Court must assume the allegations in the complaint are true and
make all reasonable inferences in favor of the plaintiff, if the complaint fails to state a claim
upon which relief may be granted, the complaint must be dismissed pursuant to Fed. R. Civ. P.
12(b). Id.

---

[2] The Court may consider the exhibits attached to this Memorandum without converting the motion to dismiss into a
motion for summary judgment. See Stein v. Royal Bank of Can., 239 F.3d 389, 392 (1st Cir. 2001)(citing Clorox Co.
v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) ("We may properly consider the relevant entirety
of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint,
without converting the motion into one for summary judgment.") (internal quotations and citations omitted).

V.    ARGUMENT

    A.    **The Amended Complaint Fails to State a Claim upon which Relief may be Granted and must be dismissed under Fed. R. Civ. P. 12(b)(6).**

        1.    Plaintiffs' claims are barred by the terms of the General Release executed by Plaintiff, William Storie.

Plaintiffs admit that William Storie, executed a General Release in favor of the Defendants. See Amended Complaint at ¶ F of "Relief Requested".[3] The scope of the General Release is extremely broad and releases the Defendants any claims arising from their conduct in connection with "home equity lines of credit". The Loan at issue is a home equity line of credit and thus, Plaintiff's decision to participate in the settlement facilitated by the Massachusetts Attorney General bars him from pursuing his claims against the Defendants. See Schuster v. Baskin, 354 Mass. 137, 140 (1968)(holding that the "release is broad and general" and barred plaintiff's claims). This Commonwealth has clearly stated its position that a release must "be given effect, even if the parties did not have in mind all the wrongs which existed at the time of the release. Naukeag Inn, Inc. v. Rideout, 351 Mass. 353, 356 (1966). Thus, any and all claims Plaintiff may have regarding the Loan are barred by the terms of the General Release.

        2.    Plaintiffs' claims are barred by res judicata.

"[A]n agreement for judgment is a contract which might require a party to release future claims in addition to those actually brought, or alternatively might preserve claims so they could be raised again in subsequent litigation. Davignon v. Clemmey, 176 F. Supp. 2d 77, 85 (D. Mass., 2001) (citing Kelton Corp. v. County of Worcester, 426 Mass. 355, 359-60 (1997)). Here, the Plaintiff participated in the settlement procured by the Attorney General pursuant to the

---

[3] Plaintiffs admit "William A. Storie . . . entered into a class action consent agreement with "HFC". . . Mr. Storie signed a release entering into the class action settlement. Mrs. Storie did not. Plaintiffs ask the court to make null and void the release since both parties not sign . . ." See Amended Complaint at ¶ F.  The fact that Mrs. Storie did not sign the release is irrelevant since she was not a party to the Loan contract. Multiple signatures on the release were only required in circumstances where more than one borrower signed the Loan documents.

6

"Final Judgment By Consent" filed in a case entitled *Commonwealth of Massachusetts v. Household International, Inc., a Delaware Corporation, C.A. No.02-5604-C* (attached as Ex. H). According to ¶33 of that consent decree, borrowers who elected to participate in the settlement were first required to execute a general release in favor of Household. "[T]he great weight of authority supports the principle that [a consent] decree is as binding and conclusive upon the parties as if it had been entered after a trial and a determination of all the issues." Davignon, supra at 85 (quoting Fishman v. Alberts, 321 Mass. 280, 281 (1947)).

"Three elements are essential for invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Davignon, 176 F. Supp. 2d at 86 (quoting DaLuz v. Dep't of Corr., 434 Mass. 40, 45 (2001)). Here, the named defendant in the Attorney General action was Household International and "Beneficial Finance" and Beneficial were incorporated by reference in ¶ 33 of the consent decree. For purposes of the release " 'Household' means Household International, Inc., Household Finance Corporation, Beneficial Corporation, and their direct and indirect subsidiaries, affiliates, officers, directors, employees, agents, related entities, successors, and assigns." See Ex. H at ¶33. The Plaintiff, by participating in the settlement, was considered a party and/or in privity with the Attorney General who was ostensibly acting on his behalf as well as on behalf of the other borrowers who elected to take part in the settlement. The cause of action set forth in the Amended Complaint is similar, if not identical, to sections of the consent decree. In fact, it appears that the *pro se* Plaintiffs based their Amended Complaint on the language of the consent decree and thus, it is clear that there exists an identity of cause between the two actions. Finally, the "Final Judgment By Consent" entered on December 16, 2002, represents a full and final judgment on the merits which was entered prior to the Plaintiffs'

7

commencement of this action in October of 2003. See Davignon, supra at 85. Accordingly, the Amended Complaint is barred by res judicata and the Defendants' Motion to Dismiss must be granted.

          3.     Plaintiffs' claims are time-barred.

Although it is unclear as to what specific claims Plaintiffs have attempted to assert against Defendants, Plaintiffs have intimated that they are seeking to rescind the Loan and such a claim must arise under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Under TILA, when a consumer loan is secured by the borrower's principal dwelling, that borrower may rescind the loan if the lender does not accurately disclose certain important terms. See Beach v. Ocwen Federal Bank, 523 U.S. 410, 118 S. Ct. 1408, 1412-13, 140 L. Ed. 2d 566 (1998). "Under § 1635(f) of the statute, this right of rescission 'shall expire' in the usual case three years after the loan closes or upon the sale of the secured property, whichever date is earlier." Id. In Beach, the Supreme Court unequivocally stated that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period." Id.

Here, the subject Loan closed on August 24, 2000. Thus, any right Plaintiffs may have had to rescind was completely extinguished on August 24, 2003. Accordingly, the filing of the initial complaint in October of 2003, was untimely and Plaintiffs' claims for rescission are barred by the statute of limitations. In addition, any claim for damages under TILA expired on August 24, 2001. 15 U.S.C. § 1640(e); see McIntosh v. Irwin Union Bank & Trust, Co., 215 F.R.D. 26, 30 (D. Mass., 2003)(The statute of limitations for actions alleging statutory damages under Section 1640(e) is normally one year . . ."). The only way the limitations period for seeking damages would be extended is if the Plaintiffs still had the right to rescind. Id. (noting "if the [plaintiffs] do have the right to rescind, the statute of limitations for the damages they seek is

8

three years, not one . . ."). However, since the period within which the Plaintiffs could seek to rescind their loan expired on August 24, 2003, the period within which they could seek damages also expired. Since the only statute specifically pled in Plaintiffs' Amended Complaint was TILA and those claims are time-barred, the Amended Complaint should be dismissed in its entirety.

4.   The valid and enforceable Arbitration Rider mandates the dismissal of the Amended Complaint, or in the alternative, an order compelling arbitration and staying the matter until the conclusion of arbitration.

Even if Plaintiffs' claims were not barred by the General Release, they are required to submit any and all claims to arbitration pursuant to the terms of the Loan agreement and the incorporated Arbitration Rider. The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") governs the enforcement of the Arbitration Rider.[4] See 9 U.C.C. § 2 (noting that the FAA applies to any "contract evidencing a transaction involving commerce to settle by arbitration . . "); DeLuca v. Stearns & Co., Inc., et al., 175 F.Supp. 2d 102, 106 (D.Mass. 2001)(noting the FAA governs the enforcement of most arbitration agreements). The United States Supreme Court has announced that public policy strongly favors arbitration and the enforcement of arbitration agreements "*notwithstanding any state substantive or procedural policies to the contrary*." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 74 L.Ed. 2d 765, 103 S.Ct. 927 (1983)(emphasis added); see also Perry v. Thomas, 482 U.S. 483, 493, 107 S.Ct. 2520, 96 L. Ed. 2d 426 (1987)(holding FAA preempted California state statute regarding enforceability of arbitration agreement); Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed. 2d 1270, 1277 (1967)(noting courts must honor "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract,

---

[4] The Arbitration Rider provides that it is "made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 – 16 (the "FAA")."

be speedy and not subject to delay and obstruction in the courts."); see also, McGrew v. Kraft Patriots, Inc., 3 Mass. L. Rep. 316, 1995 Mass. Super. LEXIS 854, *6-9 (1995) (J.Connolly) (granting defendant's motion to enforce arbitration and stay proceedings in light of broad language which required the parties submit "any dispute, claim, cause of action" to arbitration.). Thus, even if Plaintiffs' unarticulated claims arise under state law, it would not impact the applicability of the FAA or the federal courts' and Congress's general policy of enforcement.

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." Title 9 U.S.C. § 2. Thus, when presented with a valid arbitration agreement, the court must direct the parties to proceed to arbitration in accordance with the terms of their agreement. See Title 9 U.S.C. § 4. Given the "strong federal policy favoring arbitration . . . any doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of arbitration." Williams v. HealthAlliance Hosps., Inc., 158 F.Supp.2d 156, 159 (D.Mass.2001) (citing Moses, supra and AT&T Tech., Inc. v. Communications Workers, 106 S.Ct. 1415, 89 L.Ed.2d 648, (1986)); see PacifiCare Health Sys. v. Book, 123 S. Ct. 1531, 1536, 155 L. Ed. 2d 578, 584 (2003); Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001). Here, Plaintiffs must submit to arbitration pursuant to the clear terms of the Arbitration Rider.

>    5.    Plaintiffs' Amended Complaint fails to meet even the liberal requirements
>           of notice pleading.

Based upon the assertions contained in the Amended Complaint, Plaintiffs have failed to state a cognizable claim against either Defendant. Although Massachusetts and the Federal Rules of Civil Procedure require only notice pleading, Plaintiffs must still plead their case sufficiently so as to put the Defendants on notice as to the nature of the claims. Fed. R. Civ. P. 8(a); Conley v. Gibson, 355 U.S. 41, 47 (1957) (noting the Federal Rules of Procedure require "a

short and plain statement of the claim that will give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests.")(internal quotations omitted);

CCBN.com, Inc. v. Thomson Fin., Inc., 270 F. Supp. 2d 146, 154 (D. Mass., 2003) (noting that

even under liberal notice pleading, "plaintiffs must do more than assert conclusory allegations"

to survive a motion to dismiss); Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), 263

F. Supp. 2d 140, 148 (D. Mass., 2003)("while the allegations of the complaint are construed

favorably to the plaintiff, the court will not read causes of action into the complaint which are not

alleged. Even under this Court's liberal notice pleading requirements, the allegations . . . are

insufficient to state a claim for negligent misrepresentation."); see also, Berish v. Bornstein, 437

Mass. 252, 269 (2002)("A complaint must, however, contain 'a short and plain statement of the

claim,' which affords fair notice to the defendant of the basis and nature of the action against

him.")(quoting Mass. R. Civ. P. 8(a)(1)).

    Plaintiffs' claims that the Loan was "predatory" is insufficient because they fail to

describe the manner in which the Loan was "predatory" and further fail to specify the damages,

if any, they claim to have suffered as a result of Defendants' conduct. In addition, other than a

passing cite to TILA, Plaintiffs fails to cite any other statutory or common law theory as a basis

for their claims. Defendants are left to guess as to the claims that Plaintiffs are asserting. In fact,

it is unclear as to whether Plaintiffs themselves can articulate the claims they believe they have

against Defendants since they have represented to the court and defense counsel that they are *in*

*the process* of consulting with an attorney to determine whether they can, among other things,

negate the effect of the General Release that Plaintiff signed. "Even by the generous standards of

notice pleading, the plaintiff's complaint is 'grievously murky'." Epstein v. Liberty Bank & Trust

Co., 12 Mass. App. Ct. 1000 (1981); see also, Moore v. Eli Lilly & Co., 626 F. Supp. 365, 368

(D. Mass., 1986)(noting "even under liberal 'notice pleading,' it is not enough merely to state a legal conclusion unsupported by factual allegations in the complaint").

Plaintiffs make conclusory allegations that Defendants "failed to provide Plaintiff material disclosures of information required by State or Federal law in connection with the loan transactions as set forth in this compliant." See ¶13 of Amended Complaint. However, Plaintiffs fail to set forth the disclosures to which they claim they were entitled but did not receive and fail to indicate how they were damaged as a result.[5]

Plaintiffs have alleged that "the amount in question may exceed 100,000.00 dollars" but fail to offer any facts to support that bare assertion. See Amended Complaint at ¶ 4. Thus, it is unclear as to whether Plaintiffs actually suffered any damage as a result of Defendants' conduct and if so, whether there are any facts to support the amount claimed. Plaintiffs also allege that "there **may** be deceptive and inappropriate practices in regards to billing and calculations of interest." See Amended Complaint at ¶ 7 (emphasis added). This bare allegation fails to meet the even the liberal notice-pleading standard. Moreover, Plaintiff's failure to cite any statute or common law theory of recovery, other than 15 U.S.C. § 1601 et seq., the Truth-in-Lending Act ("TILA") has made it impossible for Defendants to adequately respond to the Amended Complaint. Defendants are left to guess as to the nature of Plaintiff's claims and the amount, or even existence, of damages.

---

[5] Plaintiffs claim that the Loan documents contained a 5-year prepayment penalty but do not allege that the inclusion of such a provision is a violation of any statute or regulation. In addition, Plaintiffs have failed to note that the pre-payment penalty provision was reduced to 2 years prior to the commencement of this action. See Ex. I. Since the Loan has been in existence for more than two years, no pre-payment penalty would be assessed and the Plaintiffs' claim in this regard, is moot. In addition, Plaintiff has not alleged nor offered any evidence that he attempted to pay off the Loan within the initial 2-year period and was prevented from doing so due to the pre-payment penalty. Thus, Plaintiffs have failed to set forth sufficient facts to demonstrate that they were harmed by the inclusion of the pre-payment penalty into the Loan agreement.

12

**B.    The Amended Complaint Fails to Join an Indispensable Party and Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(7).**

The Amended Complaint names Household International and "Beneficial Finance Corp." as Defendants.  However, Household International is a Delaware corporation that had no involvement with the Loan at issue.  "Beneficial Finance Corp." is not a proper legal entity.  The only potential proper party is Beneficial Massachusetts Inc. ("Beneficial") since that is the corporation with whom Plaintiff, William Storie, contracted regarding the Loan at issue.  However, Plaintiffs failed to name or serve Beneficial.  This failure to properly name and serve the proper defendant mandates that the Amended Complaint be dismissed.  United States v. A. H. Fischer Lumber Co., 162 F.2d 872, 873 (4th Cir. 1947)(noting "The corporation had the right to be accurately named in the process and pleadings of the court; and misnomer was properly raised by motion to dismiss . . .").

Although difficult to confirm from the vague allegations of the Amended Complaint, it appears that Plaintiffs may be seeking to rescind the Loan.  However, since the parties to the Loan transaction were William Storie and Beneficial,  any claim Plaintiffs may have regarding the Loan must be asserted against Beneficial.  Thus, Plaintiffs' failure to name Beneficial as a defendant in this action warrants dismissal under Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party.  Acton Co. of Massachusetts v. Bachman Foods, Inc., 668 F.2d 76, 81-82 (1st Cir. 1982)(noting "an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined.").

**C.    The Amended Complaint Must be Dismissed for Lack of Personal Jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 12(b)(2).**

The Plaintiffs bear the burden of demonstrating that the Defendants' conduct satisfies the Massachusetts Long-Arm statute and that the exercise of personal jurisdiction over Household

13

International and "Beneficial Finance" "comports with the strictures of the Constitution." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144-145 (1st Cir. 1995)(internal citations and quotations omitted). Constitutional due process requires that the subject defendant have "certain minimum contacts" with the forum state before personal jurisdiction may be recognized so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). The Plaintiffs must satisfy all three prongs of the "minimum contacts" test: (1) relatedness; (2) purposeful availment; and (3) reasonableness, to meet the due process requirements. In order to meet their burden in this respect, the Plaintiffs "cannot rest upon the pleadings, but [are] obliged to adduce evidence of specific facts." Foster-Miller, Inc., 46 F.3d at 145. Here, Plaintiffs have not alleged, much less can they prove, that Household International or "Beneficial Finance" have sufficient minimum contacts with the Commonwealth of Massachusetts in order to be subject to personal jurisdiction.

First, Plaintiffs' Amended Complaint fails to allege that their claims arise out of, or relate to the activities of Household or "Beneficial Finance" in Massachusetts. Even if Plaintiffs had made such an allegation, they could not support it with specific facts since neither Household nor "Beneficial Finance" are Massachusetts corporations, are authorized to do business in Massachusetts, have an agent for service of process in Massachusetts, or conduct any business in Massachusetts. Second, Plaintiffs have failed to sufficiently allege that the Defendants purposefully availed themselves of the laws and privileges of the Commonwealth. In fact, Plaintiffs have failed to set forth **any** contact the Defendants have with Massachusetts. Plaintiffs have "proffered no evidence that [Defendants] has any Massachusetts customers or that [they] regularly solicit[ ] business in Massachusetts." Wildfire Communications, Inc. v. Grapevine,

14

Inc., 2001 U.S. Dist. LEXIS 18238 (O'Toole, D.J.) at *9-10 (attached as Ex. J)(granting

defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction because

plaintiff failed to allege defendant "purposefully availed itself of the laws and privileges of the

Commonwealth such that it could reasonably foresee being haled into a Massachusetts

courtroom."). As such, the Defendants' Motion to Dismiss should be granted for, among other

insufficiencies, lack of personal jurisdiction.

### D.    The Amended Complaint Must be Dismissed for Insufficient Process and Insufficient Service of Process pursuant to Fed. R. Civ. P. 12(b)(4), (5).

Plaintiffs filed their initial complaint in the Superior Court and thus, attempted to serve

the initial and Amended Complaints in accordance with Mass. R. Civ. P. 4, which proscribes the

method for proper service upon a defendant. As stated earlier, "Beneficial Finance" is not a

proper legal entity and thus, any attempt to serve it at the Worcester Beneficial branch is

defective. See Ex. K. Likewise, Household is a foreign corporation, not subject to personal

jurisdiction and thus, not amenable to service under Mass. R. Civ. P. 4(d)(2). Service upon a

foreign corporation may be effectuated by "delivering a copy of the summons and of the

complaint to an officer, to a managing or general agent, or to the person in charge of the business

*at the principal place of business thereof within the Commonwealth, if any; or by delivering*

*such copies to any other agent authorized by appointment or by law to receive service of*

*process*, provided that any further notice required by law be given." Mass. R. Civ. P.

4(d)(2)(emphasis added). Here, Plaintiffs served both Defendants at a Beneficial branch in

Worcester. Neither Household nor "Beneficial Finance" maintain a principal place of business

in Massachusetts, nor do they have an agent for service of process in Massachusetts.

Accordingly, Plaintiffs' attempt to serve the named Defendants at the Beneficial branch is

insufficient under Mass. R. Civ. P. 4(d)(2). In addition, Plaintiffs failed to even attempt service

outside of the Commonwealth in accordance with Mass. R. Civ. P. 4(e) which allows service by:

> delivering a copy of the summons and of the complaint: (1) in any
> appropriate manner prescribed in subdivision (d) of this Rule; or
> (2) in the manner prescribed by the law of the place in which the
> service is made for service in that place in an action in any of its
> courts of general jurisdiction; or (3) by any form of mail addressed
> to the person to be served and requiring a signed receipt; or (4) as
> directed by the appropriate foreign authority in response to a letter
> rogatory; or (5) as directed by order of the court.

Here, Plaintiffs failed to name the proper parties and improperly attempted to serve

Household, a foreign corporation, and "Beneficial Finance" a non-existent corporation, at a

Beneficial branch in Worcester. This service is insufficient. Accordingly, Plaintiffs' Amended

Complaint should be dismissed in accordance with Mass. R. Civ. P. 12(b)(4) and (5).

## VI.    CONCLUSION

For the reasons stated above, Defendants respectfully request that this Honorable Court

grant their Motion and dismiss Plaintiffs' Amended Complaint in its entirety, or, in the

alternative, compel arbitration and stay this matter pending the arbitration.

> Defendants,
> Household International, INC. and
> Beneficial Finance Corp.,
> By their Attorneys,
> Shechtman Halperin Savage, LLP,
>
>
> Preston W. Halperin BBO# 218170
> Christine L. DeRosa BBO# 641171
> 86 Weybosset Street
> Providence, RI 02903
> (401) 272-1400 phone
> (401) 272-1403 fax

16

## CERTIFICATE OF SERVICE

I certify that the within Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Litigation Pending Arbitration was served upon the following *pro se* Plaintiffs by overnight mail, postage prepaid, on January 12, 2004:

William A. and Maritza Storie
59 Crawford Road
Oakham, MA 01068

Christine L. DeRosa

17



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM A. STORIE and MARITZA STORIE, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| HOUSEHOLD INTERNATIONAL, INC. and BENEFICIAL FINANCE CORP., | ) ) ) ) |
| Defendants. | ) ) |

Civil Action No.
03-40268-FDS

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR CONTEMPT OF COURT ORDER AND REQUEST FOR SANCTIONS

This is an action alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq.

Plaintiffs William and Maritza Storie, proceeding *pro se*, allege generally that defendants acted

improperly in making disclosures and representations regarding a consumer loan transaction

secured by a mortgage on their home. Plaintiffs have moved for contempt based on certain

actions by defendants that plaintiffs claim violate a prior court order.

### Background

This case was removed by defendants to federal court. Prior to removal, the Superior

Court heard this matter on a motion for preliminary injunction and issued the following order

dated November 10, 2003:

> It is **ORDERED** and **ADJUDGED** that upon payment to the clerk
> of the sum of $90.00, and until further order of the Court, the
> application under the prayers of the complaint is hereby granted;
> and the plaintiff William A. Storie is ordered not to make any
> payments to the defendant until after the hearing on November 17,
> 2003 @ 2:00 P.M. when this Court will hear further testimony.





NOV 2 3 2004

BY: -------------------

The court postponed the November 17 hearing to November 21, 2003, and, after that hearing, the court continued the order in effect to December 29, 2003. Defendants removed the case to this Court on November 25, 2003. The order has not been renewed or extended, nor have plaintiffs moved to do so.

Plaintiffs contend that defendants have violated the injunction by sending solicitations for additional loans, sending correspondence regarding amounts due and future payments, and by providing information to credit bureaus that Mr. Storie's loan was delinquent. Specifically, plaintiffs assert that the following conduct violates the order:

- On or about November 20, 2003, defendants mailed an invoice to Mr. Storie showing $516 past due.

- On November 21, 2003, defendants represented to the state court that plaintiffs had not paid a $90 fee for a preliminary injunction, when, in fact, they had already paid it.

- On December 4, 2003, defendants mailed a notice to Mr. Storie demanding payment of $1034.12.

- On an unspecified date, apparently prior to December 4, 2003, defendants sent an unsolicited live check for $6,000 to plaintiffs.[1]

- On an unspecified date prior to March 13, 2004, defendants reported Mr. Storie's account to a credit bureau as delinquent and past due by $1,036.

- On various occasions from April 2003 through January 2004, defendants reviewed Mr. Storie's credit report.

- On March 22, 2004, plaintiffs received a "Notice of Hardship Eligibility" from defendants that related to the collection of their debt.[2]

---

[1] A live check is an unsolicited check sent by a lender to a potential borrower that, if cashed, becomes a loan, often at a high rate of interest. Kathleen C. Engel & Patricia A. McCoy, *A Tale of Three Markets: The Law and Economics of Predatory Lending*, 80 Tex. L. Rev. 1255, 1282 n.199 (2002).

[2] According to plaintiffs, on or about December 4, 2003, Mr. Storie spoke with defense counsel and requested that correspondence from defendants cease. Plaintiffs confirm that they received no more mail from

Defendants maintain that they are not in contempt because the order did not expressly restrain them. The only party restrained by the injunction, they argue, was Mr. Storie, who was ordered not to make payments until December 29, 2003. Defendants also claim that they attempted in good faith to report Mr. Storie's account as disputed, rather than delinquent, and to refrain from collection efforts. They also halted the accrual of interest during the period of the injunction. In any event, defendants note, the injunction expired on December 29, 2003, and many of the alleged violations appear to have occurred after that date. Defendants also challenge the underlying validity of the order based on plaintiffs' alleged failure to satisfy the substantive criteria for obtaining an injunction.

## Analysis

Before reaching the merits, the Court must address two preliminary matters.

First, it is clear that under 28 U.S.C. § 1450 the order of the Superior Court remained in force in this Court following removal. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local No. 70*, 415 U.S. 423, 436 (1974) ("[T]he statute ensures that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal. Thus . . . injunctions . . . obtained in state court . . . remain effective after the case is removed to federal court.").

Second, the Court may decide plaintiffs' motion solely on the memoranda submitted. Neither party has requested an evidentiary hearing, and, because the Court is able to evaluate the sufficiency of plaintiffs' contempt allegations as a matter of law, "an evidentiary hearing would [be] a waste of time." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77 (1st Cir. 2002);

---

defendants after that discussion except for the Notice of Hardship Eligibility, which they received March 22, 2004.

3

*accord Morales-Feliciano v. Parole Bd. of P.R.*, 887 F.2d 1, 6-7 (1st Cir. 1989) (concluding that an evidentiary hearing was not required where the alleged contemnor had adequate notice and opportunity to present evidence and arguments in writing, pointed to no disputed factual matters that required an oral proceeding, and did not request a hearing).

A complainant for civil contempt must prove by clear and convincing evidence that the alleged contemnor violated a clear and unambiguous court order. *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991). "The test is whether the putative contemnor is able to ascertain from the four corners of the order precisely what acts are forbidden," a test which is limited to an examination of the document's text. *Goya Foods*, 290 F.3d at 76 (quotation omitted). Any ambiguities or uncertainties in the order must be resolved in favor of the party charged with contempt. *Project B.A.S.I.C.*, 947 F.2d at 16.

The order states that "plaintiff William A. Storie is ordered not to make any payments to the defendant until after [further] hearing." The injunction subsequently was ordered to continue in effect until December 29, 2003.

By its terms, the injunction expired on December 29, 2003, and restrained only Mr. Storie's conduct. It did not compel or forbid *any* action by defendants. This is not a case where a party tried to accomplish indirectly what a court order made clear it could not accomplish directly. *Compare Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of Dep't of Mental Retardation*, 424 Mass. 430, 449 (1997). Rather, it is a case where the court order itself does not explicitly restrain defendants. To hold otherwise and infer that it imposed restrictions on defendants would be to ignore the rule that the putative contemnor must be able to ascertain from the text of the court's order itself what acts are forbidden. *See Goya Foods*, 290 F.3d at 76. Even if the Court

4

were to assume (which it does not) that the Superior Court intended by its order to restrain

defendants in some unspecified way, "a court's intentions and its orders are two different things."

*Project B.A.S.I.C.*, 947 F.2d at 18.  The Court declines to read additional terms into the

injunction.  As defendants did not violate the terms of the order, there is no contempt.

<u>**Conclusion**</u>

For the reasons stated above, plaintiffs' Motion for Contempt of Court Order and Request

for Sanctions is hereby DENIED.

**So Ordered.**

/s/ F. Dennis Saylor

F. Dennis Saylor IV

United States District Judge

Dated: November 18, 2004

5



BENEFICIAL
72 MADISON STREET
WORCESTER, MA  01608

November 08, 2004

(508) 756-6253

WILLIAM A  STORIE
59 CRAWFORD RD
OAKHAM, MA  01068

III......IIII....II..II..I..I.I.I

### Notice of Negative Credit Reporting Disclosure

We may report information about your account to credit bureaus.  Late payments,
missed payments, or other defaults on your account may be reflected in your credit
report.

PFL 113 (06/04)

N NNNNNNNNNNNN-PAGE-01-OF-01

00000717

CLA