## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | ) |
| **WILLIAM A. STORIE and MARITZA** | ) |
| **STORIE,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | )     **Civil Action No.** |
| **v.** | )     **03-40268-FDS** |
| | ) |
| **HOUSEHOLD INTERNATIONAL, INC.** | ) |
| **and BENEFICIAL FINANCE CORP.,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

**SAYLOR, J.**

Plaintiffs William and Maritza Storie, proceeding *pro se*, bring this lawsuit against

Household International, Inc. and Beneficial Finance Corporation, claiming that the defendant

financial-services companies engaged in various predatory-lending practices in connection with a

home-equity line of credit obtained by the plaintiffs. Specifically, plaintiffs claim that defendants

failed to comply with their disclosure obligations under the Truth in Lending Act ("TILA"), 15

U.S.C. § 1601 *et seq.*, as amended by the Home Owners Equity Protection Act ("HOEPA").

Plaintiffs seek rescission of the home-equity loan, injunctive relief, damages, and attorneys' fees.

This case was originally filed in Worcester Superior Court on October 30, 2003.[1] On

---

[1] There were proceedings in the Superior Court prior to removal. The original complaint was filed by Mr.
Storie alone against "Beneficial Finance owned by Household Retail Finance" and did not specifically refer to any
statute or cause of action. On November 7, 2003, Mr. Storie amended the complaint to add his wife, Maritza, as a
plaintiff; to change the named defendants as set forth in the caption; and to explicitly assert a claim under TILA.
On the same date, a justice of the Superior Court heard the matter on a motion for preliminary injunction. The
court issued an order that plaintiff should not "make any payments to the defendant until after [further] hearing."
The court later continued that order in effect until December 29, 2003. Although the Superior Court injunction
remained in effect in this Court after removal, *see Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local*

December 2, 2003, defendants removed the case to this Court on the basis of federal-question

jurisdiction and supplemental jurisdiction.  Plaintiffs allege that defendants violated TILA,

HOEPA, Regulation Z, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*.

Plaintiffs also allege claims under the Massachusetts Consumer Protection Act, Mass. Gen. Laws

ch. 93A, and the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch.

140D.  Although Mrs. Storie did not sign the Loan Agreement that is the subject of this dispute,

she claims that she has standing to contest the legality of defendants' disclosure practices because

she executed a mortgage in favor of defendants.

　　　After removal, defendants filed a Motion to Dismiss or, in the Alternative, Motion to

Compel Arbitration and Stay Litigation Pending Arbitration.  Although that motion seeks relief on

several grounds, the Court will address only the portion that seeks to dismiss or stay this action

pending arbitration.[2]  Defendants assert that dismissal or a stay is appropriate because the dispute

is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.

　　　Plaintiffs oppose arbitration on the grounds that (1) they were fraudulently induced to

enter into the loan; (2) it would be unconscionable under Mass. Gen. Laws ch. 106, § 2-302 to

hold them to the arbitration agreement; (3) the cost of arbitration may be prohibitive; and (4)

---

*No. 70*, 415 U.S. 423, 436 (1974), it expired by its terms on December 29, 2003.

　　　[2] Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, based on the presence of a release executed by Mr. Storie and the expiration of the relevant statute of limitations.  Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction); 12(b)(4) (insufficiency of process); 12(b)(5) (insufficiency of service of process); and 12(b)(7) (failure to join an indispensable party.  Those motions are all based on plaintiffs' purported failure to name the correct defendant in this case, which defendants assert is Beneficial Massachusetts, Inc., the party from whom plaintiffs obtained the loan.

public policy favors the public resolution of this dispute. For the reasons stated below, the Court

concludes that it must dismiss this case in favor of arbitration.[3]

## I.    <u>Background</u>

### A.    <u>The Loan Transaction and Documents</u>

Plaintiffs own property in Oakham, Massachusetts, for which a home-equity loan (the

"Loan") was obtained on August 24, 2000, from Beneficial Massachusetts, Inc. The initial line of

credit was $37,000. The Loan was secured by a mortgage conveyed to Beneficial Massachusetts,

Inc. by Mr. Storie and his wife, Maritza Storie, "husband and wife." Although Mrs. Storie signed

the mortgage, she did not sign the promissory note for the Loan, the Home Equity Credit Line

Revolving Loan Agreement ("Loan Agreement").[4]

The mortgage signed by the Stories specifically references the Loan Agreement. The

Loan Agreement expressly states, in a section titled "Alternative Dispute Resolution and Other

Riders," that "[t]he terms of the Arbitration Agreement and any other Riders signed as part of this

loan transaction *are incorporated into this Agreement*." (emphasis added).

The Arbitration Rider, which like the Loan Agreement was signed only by Mr. Storie,

expressly provides for arbitration whenever there is a dispute relating to the Loan Agreement.

---

[3] Also pending before the Court is plaintiffs' Motion for Complaint Modification to Include Plaintiffs' Memorandum of Facts in Support of Plaintiffs' Complaint and Worcester Superior Court Transcripts When Available (Docket #7). As its caption indicates, that motion seeks to further amend the complaint to incorporate (1) the Memorandum of Facts in Support of Plaintiffs' Complaint and Request for Permanent Injunction that was filed in the Superior Court and (2) transcripts of certain proceedings held in the Superior Court. The Court has consulted the Memorandum of Facts – which (despite its caption) is a tangle of factual allegations and legal argument – to more fully understand the nature of plaintiffs' claims. Nevertheless, given the Court's determination that plaintiffs must submit their claims to arbitration, the Court will deny the motion as moot.

[4] There is a question whether the mortgage secures the correct parcel of land, that is, the parcel on which the Stories' home is located or an adjacent parcel. That dispute is not material to the issues presented here.

Indeed, it clearly states that either party has a right to demand that any dispute be submitted to arbitration and further provides, in relevant part:

> By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third party claims, *arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement* ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

(emphasis added).

### B.    The State's Investigation of Defendants and the Resultant Settlement

At some point, the lending practices of Household International, Inc. and its affiliated companies, including Beneficial Massachusetts, Inc. (collectively "Household-Beneficial"), became the subject of an investigation by the Massachusetts Office of the Attorney General ("OAG").  Based upon the results of that investigation, and similar ones in other states, the Commonwealth filed a complaint in Massachusetts state court alleging that Household-Beneficial had violated various consumer-protection statutes and regulations.  The Commonwealth and Household-Beneficial reached a settlement agreement that resulted in entry of a consent judgment effective December 16, 2002.  As part of the settlement, Household-Beneficial was required to pay restitution to a fund administered by the OAG for the benefit of eligible borrowers.

After entry of that consent judgment, the Attorney General notified eligible Household-Beneficial loan customers, including Mr. Storie, that they could receive a cash payment as a result of the settlement between the Commonwealth and Household-Beneficial.  The Attorney General's

letter notice informed recipients that the settlement payment would be for a minimum amount

specified on the Release and Agreement to Participate in Household-Beneficial Settlement that

accompanied the letter.  The Attorney General's letter also stated:

> It is your choice whether to participate in this settlement and receive this payment. You may wish to do so if you do not plan to sue Household or Beneficial for any claims you might have about your loan(s).  If you choose to accept the settlement payment, you must agree not to sue Household or Beneficial on your own, or to join any class action lawsuits against them that involve issues covered by the settlement.  The agreement not to sue is explained on the attached "Release and Agreement to Participate in Household-Beneficial Settlement" form.  **Please read the form carefully before signing it.  Please understand that by signing it, you give up your right to sue Household or Beneficial, but you would still have the right to contest a foreclosure.**  You may wish to consult an attorney of your choosing before making your decision.

(emphasis in original).

The release Mr. Storie received from the OAG was addressed to him individually; it did

not name Mrs. Storie.  It stated that in exchange for "the restitution payment received" (in Mr.

Storie's case, a minimum settlement payment of $285.91) the signatory would release Household-

Beneficial:

> from all civil actions and causes of action which [he] may have as of the date of this release agreement, in contract, in tort . . ., in statute, regulation or common law . . . whether known or unknown, threatened or unasserted, that arise from or are related to the restitution received or the following lending practices by [Household-Beneficial] in connection with [the loan]: . . . loan points and origination fees, interest rate and other insurance products, prepayment penalties, loans offered through a negotiable check (i.e. "live checks") home equity lines of credit, loan billing practices relating to simple interest calculations, balloon payments, payoff information, non English language documentation, and net tangible benefit in loan refinancing.

On August 23, 2003, Mr. Storie alone executed the release.

As noted above, Mr. Storie filed the original complaint in this case on October 30, 2003.

By letter dated November 9, 2003, Mr. Storie informed the OAG that he wished to rescind his

release.  Among other things, Mr. Storie stated that he had "learned much more" about the case

since he signed the release, and, he rued, "If I knew then what I know now, I would never have

signed the release."  Mr. Storie asserted that he had not received and did not want any

consideration from the class action—in other words, apparently, that he had not cashed the

settlement check.  He further stated, "My wife is CO-borrower on HELOC I have with

Household Int./Beneficial Finance.  She did not sign the release in August.  This should make the

release null and void."  The OAG responded by letter dated November 17, 2003, that it did not

have the power to rescind the release and that the release, if valid, was effective upon receipt by

the settlement administrator.  But the OAG also advised Mr. Storie that his release may not have

been valid if his wife was co-borrower on the loan but did not sign the release, as he had stated.

## II.    <u>Legal Analysis</u>

Defendants move to dismiss or stay this action in favor of arbitration pursuant to § 3 of

the FAA.[5]  That provision reads:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending, upon being satisfied that the
> issue involved in such suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial of the action until
> such arbitration has been had in accordance with the terms of the agreement,
> providing the applicant for the stay is not in default in proceeding with such
> arbitration.

9 U.S.C. § 3.  Section 3 is a remedy intended for a defendant desiring to compel a plaintiff to

arbitrate: it provides for a stay of the trial of an action brought in a federal court on an issue

---

[5] The FAA applies to arbitration agreements involving "contracts evidencing a transaction involving commerce."  9 U.S.C. § 2.  Plaintiffs do not dispute that the Loan Agreement evidences a transaction involving commerce and that the FAA therefore applies.  Indeed the Arbitration Rider itself states that it "is made pursuant to a transaction involving interstate commerce, and shall be governed by the [FAA]."

referable to arbitration pursuant to a written arbitration agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The FAA's stay-of-litigation provision is mandatory, and, if issues in the case are within the reach of the arbitration agreement, the district court has no discretion to deny the stay. *Gutierrez v. Academy Corp.*, 967 F. Supp. 945, 947 (S.D. Tex. 1997).

To determine whether the claims at issue are subject to arbitration, this Court must first consider whether the parties agreed to submit their claims to arbitration. That threshold question, "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy," raises a question of arbitrability for the court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

There is a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

With those principles in mind, the Court will proceed to consider the arbitrability of the Stories' claims and the Stories' specific objections to arbitration.

### A.     <u>Arbitrability of Issues</u>

The Court has no trouble concluding that all the issues presented here are arbitrable. The language of the Arbitration Rider is very broad. Thus, it applies to "any claim, dispute or controversy . . . arising from or relating to" the Loan Agreement. The Stories' claims all involve

allegations of inadequate disclosures in connection with the Loan Agreement; accordingly, they are covered by the Arbitration Rider and are arbitrable.

### B.    Arbitrability of Mrs. Storie's Claims

There is no question that Mr. Storie signed both the Loan Agreement and the Arbitrator Rider and that, therefore, he is potentially bound by the arbitration agreement, subject to certain defenses. But because Mrs. Storie did not sign the Loan Agreement or the Arbitration Rider—although she did sign the mortgage—there is a question whether the arbitration agreement is enforceable against her.

In *Fluehmann v. Associates Financial Services*, Judge Gorton of this District faced a nearly identical set of facts. *See* 2002 WL 500564 (D. Mass. 2002). Like Mrs. Storie here, plaintiff Catherine Fluehmann was the wife of a man who obtained a consumer mortgage loan. *Id.* at *1. As in this case, Fluehmann executed a mortgage in favor of the lender but did not sign the loan agreement or arbitration agreement. *Id.* Claiming that the lender failed to comply with its disclosure obligations under TILA, Fluehmann brought suit in federal court to rescind the loan. *Id.* In response, the defendant lender moved to stay the action pending arbitration. *Id.* Fluehamnn opposed arbitration in part on the grounds that she had not entered into the arbitration agreement with the lender. *Id.*

The court in *Fluehmann* ruled that Fluehmann, as a "co-signor" of the mortgage deed, was bound by the arbitration agreement, even though she did not sign it. *Id.* at *7. The court based its decision on contract principles, including the broad scope of the arbitration agreement, and on a related estoppel theory stemming from the interdependence of the loan agreement and the mortgage deed. *Id.* at *6-*7.

8

In terms of contract principles, the court in *Fluehmann* began by analyzing the scope of the arbitration agreement. *See id.* at *6. The court found the arbitration agreement to be broad in that it covered "any dispute that may 'arise under' or 'relate to' the Loan Agreement." *Id.* The court noted that "similarly broad arbitration clauses governing 'all disputes' arising under the agreement apply even to a nonsignatory." *Id.* Furthermore, the fact that Fluehmann did not sign the arbitration agreement did not necessarily indicate her lack of assent to arbitration. *Id.* Rather, focusing on "the relationship established under the agreement and the duties and obligations set out therein," the court concluded that the mortgage deed, which Fluehmann signed, and the loan agreement and arbitration agreement, which Fluehmann did not sign, were so intertwined that it was appropriate under contract principles to hold Fluehmann to the arbitration agreement for claims arising out of the loan agreement. *Id.* at *7.

The court's conclusion was bolstered by application of an estoppel theory. *See id.* As the court noted, Fluehmann derived her standing under TILA to rescind the transaction and sue for damages from her role as the cosigner of the mortgage. *Id.* It would be unfair, the court concluded, for Fluehmann to have it both ways, that is, to "elect to secure only the benefits of the agreements at issue without likewise assuming their burdens." *Id.* Thus, the court concluded, "If the Loan Agreement and mortgage deed are sufficiently interdependent so as to give Fluehmann a cause of action under TILA, [the lender] can likewise invoke the Arbitration Agreement against her." *Id.*

As in *Fluehmann*, the arbitration clause here is also broad. By its terms, it applies to any dispute "arising from or relating to" the Loan Agreement. Also as in *Fluehmann*, Mrs. Storie is a cosigner of the mortgage, which was executed as part of the same transaction as the Arbitration

Rider and is intertwined with both the Loan Agreement and the Arbitration Rider.  The claims Mrs. Storie seeks to bring arise under the Loan Agreement.  Finally, Mrs. Storie, like Fluehmann, seeks to establish her standing to assert the claims here, including those under TILA, by invoking her role as a cosigner of the mortgage.  As the court in *Fluehmann* recognized, it is appropriate in such circumstances to require Mrs. Storie to arbitrate those claims.

### C.    The Stories' Specific Objections to Arbitration

Having determined that all of the claims in this case are arbitrable, the Court will now consider the Stories' objections to arbitration.  As previously noted, the Stories interpose four specific arguments against arbitration: (1) they were fraudulently induced to enter the loan; (2) it would be unconscionable under Mass. Gen. Laws ch. 106, § 2-302 to hold them to the Arbitration Rider; (3) the cost of arbitration may be prohibitive; and (4) public policy favors the public resolution of this dispute.  The Court will address each in turn.

### 1.    Fraudulent Inducement

Plaintiffs assert that the Arbitration Rider is unenforceable because they were fraudulently induced to enter into the Loan Agreement.  Specifically, the Stories state:

> Plaintiff entered into this Arbitration "Contract" with the understanding that Defendant was acting in the best interest of Plaintiff and that the information stated and documents offered to Plaintiff were accurate.  Since evidence has been offered which may show "willful" and "knowing" deception, this "agreement" should not be enforceable as per any contractual agreement entered into under fraudulent terms.

Memorandum of Facts in Support of Plaintiffs Complaint and Request for Permanent Injunction § III(A)(3).  In perhaps their clearest articulation of the fraudulent-inducement claim, plaintiffs aver that they "would never had [*sic*] entered into a loan agreement or any Arbitration Agreement if

they were aware the terms of the loan were in violation of M.G.L. Chapter 93A, TILA, HOEPA, and RESPA." Memorandum of Law at 10.

This Court, in passing upon an application under the FAA for a stay while the parties arbitrate, may consider only issues relating to the making and performance of the arbitration agreement, not the entire contract. 9 U.S.C. § 3. As the Supreme Court has explained:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to arbitrate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . . [I]n passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Prima Paint Corp.*, 388 U.S. at 403-04.

Here, plaintiffs do not claim that defendants fraudulently induced them to enter into the Arbitration Rider itself, as opposed to the Loan Agreement generally. Contrast *MCI Telecommunications Corp. v. Matrix Communications Corp.*, where the plaintiff claimed that it was duped into accepting the arbitration provision by representations from defendant officials that the arbitration clause applied only to certain billing disputes and by defendant's concealment of a secret agreement between defendant and the arbitrator. 135 F.3d 27, 30, 32 (1st Cir. 1998). Unlike that situation, here the only allegations of fraud go to plaintiffs' decision to enter into the Loan Agreement generally. Under *Prima Paint*, such claims are for the arbitrator to decide; they do not prevent enforcement of the arbitration agreement. *See* 388 U.S. at 403-04.

### 2.    Unconscionability

Plaintiffs also purport to raise an unconscionability defense to enforcement of the arbitration agreement, citing Mass Gen. Laws ch. 106, § 2-302. Plaintiffs state, "Defendant's

representation of 'Monthly Savings' in the selling of this loan as well as the HUD Settlement

Agreement, Page1, being omitted should make the Arbitration Rider null and void due to

**unconscionability** both 'procedural' and 'substantive' pursuant, M.G.L. ch. 106, § 2-302," every

contract imposes an obligation of good faith in its performance and enforcement.  Memorandum

of Law at 10 (emphasis in original).

      As an initial matter, the cited provision is part of the Massachusetts version of the Uniform

Commercial Code regarding sales of goods; it does not apply to mortgage lending.  Furthermore,

plaintiffs' unconscionability defense suffers from the same defect as their fraudulent-inducement

defense: it goes to the Loan Agreement generally, not to the arbitration agreement specifically.

Any such claim of unconscionability is for the arbitrator to decide.

      **3.**     **Public Policy Favors Public Resolution**

      Plaintiffs also raise a vague public-policy defense to arbitration, suggesting that the public

interest favors the public resolution of this dispute.  Plaintiffs maintain that the mutual

confidentiality requirement of the Arbitration "is not in the best interest of the thousands of other

potential victims of loans that have manufactured in a similar manner."  Memorandum of Facts in

Support of Plaintiffs Complaint and Request for Preliminary Injunction at 13.  Even if the Court

were to assume that there are public-policy reasons favoring the public resolution of this dispute,

those reasons could not outweigh the "liberal federal policy favoring arbitration agreements"

expressed by Congress through the FAA.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Moreover, it is clear that a borrower can be compelled to arbitrate a claimed violation of the

Truth in Lending Act.  *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 90.  Indeed, even an assertion

of the right of rescission under TILA does not undo the obligation to take the rescission claim to

arbitration. *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 50 (1st Cir. 2002). Accordingly, the Court finds that there is not public-policy reason preventing the arbitration of plaintiffs' claims.

### 4.    Prohibitive Costs

Finally, plaintiffs observe that "[a]rbitration is very expensive," and they assert that if the Court dismisses or stays the action pending arbitration, they "more than likely . . . would not be able to pursue this action, 'prohibitive costs.'"  Memorandum of Facts in Support of Plaintiffs Complaint and Request for Preliminary Injunction at 13.

The Supreme Court has stated that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 90.  Nevertheless, "[w]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.  The party resisting arbitration because of prohibitive costs cannot rest on mere speculation. *Id.* at 91.

Here, plaintiffs have presented no evidence showing that the cost of arbitration would be so great as to preclude them from effectively vindicating their statutory rights in the arbitral forum.  Moreover, the Arbitration Rider provides for fee sharing, and it further provides for an award of costs and attorneys' fees where statutorily available.  Such costs and attorneys' fees are available to prevailing plaintiffs under TILA. *See* 15 U.S.C. § 1640(a)(3).  Given the absence of evidence demonstrating that arbitration would present truly prohibitive costs and the availability of fee sharing and awards of costs and attorneys' fees, the Court concludes that arbitration is not inappropriate here.

**D.**    **Dismissal or Stay**

Having determined that under the FAA these claims must proceed in front of an arbitrator, the Court must decide whether dismissal or a stay is appropriate. Where all of the issues before the court are arbitrable, the court may order dismissal rather than a stay. *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998). As one court has put it:

> Given our ruling that all issues in this action are arbitrable, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. . . . *Since there are no live controversies before this court, the appropriate procedure is dismissal of the action without prejudice*. (citations omitted).

*Unlimited Servs. Corp. v. Swift-Eckrich, Inc.*, 727 F. Supp. 75, 78 (D.P.R. 1989) (quoting *Sea-Land Servs., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757-58 (D.P.R. 1986) (emphasis added) (internal citations omitted)).

Here, as the Court has previously determined, all of the issues are arbitrable. Accordingly, dismissal rather than a stay is appropriate.

III.    <u>**Conclusion**</u>

For the reasons stated above, defendants' motion to dismiss is GRANTED in order for the

plaintiffs to pursue arbitration.

**So Ordered.**


                                              /s/ F. Dennis Saylor
                                              F. Dennis Saylor IV
                                              United States District Judge

Dated: January 25, 2005