

1 of 100 DOCUMENTS

JOSEPH LUNA, et al., Plaintiffs, v. HOUSEHOLD FINANCE CORPORATION III, et al., Defendants.

Case No. C02-1635L

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, SEATTLE DIVISION

236 F. Supp. 2d 1166; 2002 U.S. Dist. LEXIS 21761

November 4, 2002, Decided
November 4, 2002, Filed, Entered

**DISPOSITION:** [**1] Household's motion to compel arbitration and to stay proceedings pending arbitration was denied. Household's motion to strike Plaintiffs' exhibit and Plaintiffs' motion to stay arbitration were granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For JOSEPH LUNA, JEANIE LUNA, CARL BENNETT, BRENDA BENNETT, DAVID J MURPHY, GENEVEVE L MURPHY, NEIL NELSON, ELSIE L NELSON, BRYAN THOMSOM, JEANNETTE THOMSON, DANIEL JAMES, MAZIE JAMES, plaintiffs: Anthony L Rafel, RIDDELL & WILLIAMS, SEATTLE, WA.

For JOSEPH LUNA, JEANIE LUNA, CARL BENNETT, BRENDA BENNETT, DAVID J MURPHY, GENEVEVE L MURPHY, NEIL NELSON, ELSIE L NELSON, BRYAN THOMSOM, JEANNETTE THOMSON, DANIEL JAMES, MAZIE JAMES, plaintiffs: Robert L Parlette, WENATCHEE, WA.

For HOUSEHOLD FINANCE CORPORATION III, HOUSEHOLD REALTY CORPORATION, BENEFICIAL MORTGAGE CO, defendants: Daniel J Dunne, Jr., Kenneth E Payson, HELLER EHRMAN WHITE & MCAULIFFE, SEATTLE, WA.

**JUDGES:** Robert S. Lasnik, United States District Judge.

**OPINIONBY:** Robert S. Lasnik

**OPINION:**

[*1170] ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS, GRANTING DEFENDANTS' MOTION TO STRIKE, AND GRANTING PLAINTIFFS' MOTION TO STAY ARBITRATION

**I. INTRODUCTION**

This matter comes [**2] before the Court on several motions filed by Plaintiffs Joseph Luna, *et al.* ("Plaintiffs") and Defendants Household Finance Corporation III, Household Realty Corporation, and Beneficial Mortgage Corporation (collectively "Household"), all of which relate to whether this Court should stay proceedings pending resolution of certain Plaintiffs' claims in arbitration. Plaintiffs filed a motion to stay arbitration on September 5, 2002. On the same day Household filed a motion to compel arbitration and stay proceedings pending arbitration. The parties have filed responses, replies, and numerous declarations, producing a voluminous record. n1 After review of this extensive [*1171] record and oral argument, the Court grants Plaintiffs' motion to stay arbitration and Household's motion to strike and denies Household's motion to stay proceedings for the reasons set forth in this Order.

n1 On September 16, 2002, Household filed a motion to strike Plaintiffs' exhibit (Dkt. # 99). Household sought to strike a report drafted by the Washington Department of Financial Institutions

Case 4:03-cv-40268-FDS    Document 33-4    Filed 02/14/2005    Page 3 of 12

Page 2

236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

concerning Household's lending activities on irrelevance, hearsay, and improper authentication grounds. The Court finds that the report is irrelevant given the subject of the present motions, namely, whether to compel or stay arbitration, and grants Household's motion to strike on that basis. Because the report is irrelevant to the present matter, the Court does not reach the other bases for Household's objections to the report. This finding of irrelevance is limited to the matter presently at issue and does not preclude subsequent submission of the report, subject to any objections Household may raise.

[**3]

## II. BACKGROUND

The Plaintiffs, Joseph and Jeanie Luna, Carl and Brenda Bennett, David and Geneveve Murphy, Neil and Elsie Nelson, Bryan and Jeannette Thomson, and Daniel and Mazie James, are all Washington residents who consolidated their debt into loans with Household. Plaintiffs claim that Household mislead them into entering home loan agreements at interest rates higher than those promised. (Third Amended Complaint PP 2.5, 2.8, 3.4, 4.4). Plaintiffs allege that Household's lending practices violate various state and federal statutes, including the Washington Consumer Protection Act ("CPA"), the Real Estate Settlement Practices Act ("RESPA"), the Truth In Lending Act ("TILA"), and the Homeowners Equity Protection Act ("HOEPA"). Id. PP 12.1-12.5. Plaintiffs also assert various common law claims, including fraud in the inducement, negligent misrepresentation, reformation or rescission of the loan agreements, and emotional distress. Id. PP 8.1-11.2. Plaintiffs seek class-wide damages and equitable relief.

All Plaintiffs except the Murphys signed identical arbitration riders (the "Arbitration Rider") when they completed the paperwork required for their loans. Household [**4] seeks to stay these proceedings pending arbitration for all of the Plaintiffs except the Murphys.

The Arbitration Rider provides in relevant part:

> This Arbitration Rider is signed as part of your Agreement with Lender and is made a part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including all initial claims, counter-claims, and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National [**5] Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS/Endispute ("JAMS").
> 
> ...
> 
> Any participatory arbitration hearing that you attend will take place in the city nearest your residence where a federal district court is located or at such other location as agreed by the parties.
> 
> If Lender files a Claim, Lender shall pay all the filing costs. If you file a Claim, the filing costs shall be paid as follows: (a) Lender agrees to pay for the initial cost of the filing the [sic] Claim up to the maximum amount $ 100.00; (b) for the filing costs over $ 100.00, such additional cost shall be divided equally between us up to the [*1172] amount charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all costs over the amount charged by the arbitration administrator for a Claim equal to your loan amount shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally between us. Fees for hearings that exceed one day will be paid by the requesting party.
> 
> ...
> 
> This Arbitration Rider is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ... The [**6] parties agree that the award shall be kept confidential.
> 
> ...
> 
> In the event of a conflict or inconsistency between the rules and procedures of the

Case 4:03-cv-40268-FDS    Document 33-4    Filed 02/14/2005    Page 4 of 12

Page 3
236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

arbitration administrator and this Arbitration Rider, this Arbitration Rider shall govern. No class actions or joiner [sic] or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

No provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents.

(Roberts Decl. Ex. A (Luna Arbitration Rider) at 1). Approximately three inches above the borrower signature line, the Arbitration Rider contains the following acknowledgment in bold, capital letters:

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND [**7] VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR A JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

Id. at 2 (emphasis omitted). The Arbitration Rider lists contact information regarding the arbitration organizations on this signature page. Id. Household urges that these provisions require the Court to stay these proceedings pending arbitration for all Plaintiffs except the Murphys. Plaintiffs argue that the Arbitration Rider is unenforceable due to procedural and/ or substantive unconscionability.

### III. ANALYSIS

**A. Federal Policy Regarding Arbitration.**

Federal law provides that arbitration agreements are to be enforced by the courts. Section 2 of the Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of ... a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized that the FAA clearly enunciates a congressional intention to favor arbitration: n2

[**8] [*1173] Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements ... The courts of appeals have ... consistently concluded that the questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Mem'l Hosp. v. Mercury Constr., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983). The FAA provides for a stay of judicial proceedings pending arbitration when the judicial proceedings involve issues subject to an arbitration agreement. 9 U.S.C. § 3.

n2 Similarly, Washington courts have recognized that "there is a strong public policy in Washington State favoring arbitration of disputes." Mendez v. Palm Harbor Homes, Inc., 111 Wn. App. 446, 454, 45 P.3d 594 (2002) (quoting Perez v. Mid-Century Ins. Co., 85 Wn. App. 760, 765, 934 P.2d 731 (1997)).

[**9]

The existence of a signed arbitration agreement does not mean that a court immediately must stay proceedings relating to controversies covered by the arbitration agreement. Rather, a party may challenge the validity of an arbitration agreement. When the validity of an arbitration agreement is challenged, a court should "apply ordinary state-law principles that govern the formation of contracts." Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2001) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995)). State laws applicable only to arbitration agreements that would invalidate such agreements are preempted by the FAA;

Case 4:03-cv-40268-FDS  Document 33-4  Filed 02/14/2005  Page 5 of 12

Page 4

236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

however, "general contract defenses, such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." Id. (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 134 L. Ed. 2d 902, 116 S. Ct. 1652 (1996)).

Household urges the Court not to reach the question of whether the Arbitration Rider is invalid on state law contract grounds because the Rider provides that "the validity [**10] or enforceability of this arbitration clause, any part thereof ... shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision." (Households' Motion to Compel Arbitration at 11-12). In support of this position Household cites First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-44, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995).

In First Options the Supreme Court held that parties may agree to submit the question of whether a particular issue is arbitrable to an arbitrator when the parties have expressed their desire to do so in "clear and unmistakable" language. First Options, 514 U.S. at 944 (citing AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)). However, that parties may agree to submit the arbitrability of a certain issue to arbitration does not mean that the question whether an arbitration agreement is *valid* may be submitted to arbitration. An agreement to arbitrate may be invalidated under "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 134 L. Ed. 2d 902, 116 S. Ct. 1652 (1996). [**11] That parties to a valid arbitration agreement may submit a question regarding the scope of that agreement to arbitration does not limit a court's power to invalidate an arbitration agreement because, for reasons such as fraud, duress, or unconscionability, the parties never validly entered into the agreement. Allowing the question of the underlying validity of an arbitration agreement to be submitted to arbitration without the consent of all parties is contrary to governing [*1174] law. See id.; see also 9 U.S.C. § 4 (a court may order arbitration only "upon being satisfied that the making of the agreement for arbitration ... is not in issue"). It is also contrary to fundamental notions of fairness and basic principles of contract formation.

When determining whether to stay proceedings pending arbitration, a court must consider whether the arbitration agreement validly was formed in accordance with state law principles of contract formation. Circuit City Stores, 279 F.3d at 889. Plaintiffs contend that the Arbitration Rider is unconscionable and therefore unenforceable. The Court therefore must examine whether the Arbitration Rider is unconscionable [**12] under Washington law.

**B. Unconscionability.**

Judge Wilken of the Northern District of California recently held that the Arbitration Rider at issue in this action is unconscionable under California law. See ACORN v. Household Int'l, Inc., 211 F. Supp. 2d 1160 (N.D. Cal. 2002). As noted in Section III.A, supra, generally applicable state law principles of contract formation determine the validity of arbitration agreements. In this action the Court applies the law of the State of Washington. Washington law regarding unconscionability differs in important respects from California law regarding unconscionability. For example, under Washington law a contract may be invalidated on procedural unconscionability or substantive unconscionability grounds. See Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 898, 28 P.3d 823 (2001) (plaintiff limited unconscionability argument to procedural grounds). In contrast, under California law a party seeking to invalidate a contract on unconscionability grounds must prove both procedural and substantive unconscionability. ACORN, 211 F. Supp. 2d at 1168 (recognizing that California law requires both procedural [**13] and substantive unconscionability before invalidating a contract on unconscionability grounds) (citing Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 6 P.3d 669, 99 Cal. Rptr. 2d 745 (Cal. 2000)).

Although the ACORN Court's analysis of the Arbitration Rider is well-reasoned and persuasive, this Court applies Washington law to this matter and, when appropriate, notes differences and similarities between the Washington law of unconscionability and the California law applied in ACORN.

Under Washington law, whether a contract is unconscionable is a question of law. Nelson v. McGoldrick, 127 Wn. 2d 124, 131, 896 P.2d 1258 (1995). Washington courts recognize two forms of unconscionability: "(1) substantive unconscionability, involving those cases where a clause or term in the contract is alleged to be one-sided or overly harsh and (2) procedural unconscionability, relating to impropriety during the process of forming a contract." Id. (quoting Schroeder v. Fageol Motors, Inc., 86 Wn. 2d 256, 260, 544 P.2d 20 (1975)) (internal quotations omitted). The burden of proving that a contract is unconscionable rests with the party attacking [**14] the contract. Tjart, 107 Wn. App. at 898 (2001).

Plaintiffs allege that the Arbitration Rider is both substantively and procedurally unconscionable. (Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration ("Plaintiffs' Opposition") at 10, 18).

**1. Procedural Unconscionability.**

Case 4:03-cv-40268-FDS    Document 33-4    Filed 02/14/2005    Page 6 of 12

Page 5
236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

Procedural unconscionability may arise when a party lacks a meaningful choice. McGoldrick, 127 Wn. 2d at 131. Determination of whether a contract is procedurally unconscionable includes an inquiry into "the manner in which the contract was entered, whether each party had a reasonable opportunity to [*1175] understand the terms of the contract, and whether the important terms were hidden in a maze of fine print." Id. (quoting Schroeder, 86 Wn. 2d at 260) (internal quotations omitted).

### a. Contract of Adhesion.

Plaintiffs urge that determination that an agreement is a contract of adhesion weighs in favor of finding that the agreement is procedurally unconscionable. (Plaintiffs' Opposition at 18-19). "An adhesion contract is usually (1) a standard form, (2) prepared by one party and submitted to another party on a 'take it or leave it' basis, [**15] (3) when the bargaining power between the parties was not truly equal." Stein v. Geonerco, Inc., 105 Wn. App. 41, 47, 17 P.3d 1266 (citing Eelbode v. Chec Med. Ctrs., Inc., 97 Wn. App. 462, 472 n.6, 984 P.2d 436 (1999)). The Arbitration Rider at issue is a standard form that was prepared by Household and presented to Plaintiffs on a 'take it or leave it' basis. The bargaining power between a major financial institution and an individual consumer is unequal. Therefore the Arbitration Rider constitutes an adhesion contract.

That an agreement constitutes a contract of adhesion is insufficient alone to support a finding that the agreement is procedurally unconscionable in Washington. Mendez v. Palm Harbor Homes, Inc., 111 Wn. App. 446, 459, 45 P.3d 594 (2002); see also Yakima County Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn. 2d 371, 393, 858 P.2d 245 (1993) (noting that elements of adhesion contract are considered in the "circumstances" element of the procedural unconscionability inquiry). Plaintiffs must demonstrate more than that the Arbitration Rider is an adhesion contract to support a finding that it is procedurally unconscionable.

### b. Length [**16] and Complexity of Loan Agreement Documents.

Plaintiffs urge that the Arbitration Rider is procedurally unconscionable because the loan agreement (all documents involved in the loan transactions, not merely the Arbitration Rider) is long and complex. (Plaintiffs' Opposition at 20-21). Although a court should consider "all the circumstances surrounding the transaction" when determining whether a contract is procedurally unconscionable, McGoldrick, 127 Wn. 2d at 131, Plaintiffs' complaints regarding the length and complexity of the loan agreement documents go more to the enforceability of the loan agreement as a whole, rather than the more limited purpose of determining whether the Arbitration Rider is procedurally unconscionable.

When determining whether an arbitration agreement is enforceable, "federal courts may not address the validity or enforceability of the contract as a whole." Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 937 (9th Cir. 2001). Rather, courts should consider "only issues relating to the making and performance of the agreement to arbitrate." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967). [**17] The loan agreement documents are lengthy and complex. See September 13, 2002 Parlette Decl. Ex. L (loan documents exceed 100 pages, often in dense, small-font type). Although under McGoldrick a court may consider the length and complexity of these documents as "circumstances surrounding" the execution of the Arbitration Rider, the length and complexity of the Arbitration Rider itself is more determinative of whether it is procedurally unconscionable. The Arbitration Rider is just over one page in length. See Roberts Decl. Ex. A. The Arbitration Rider provisions are more [*1176] complex than what an average consumer is likely to encounter in her day-to-day reading. However, given the involved nature of the Rider's subject matter, it appears to be written plainly and unlikely to confuse a reasonably attentive lay reader. Furthermore, concerns raised by the length and complexity of the Arbitration Rider are mitigated by the three-day TILA rescission period. n3

> n3 At oral argument Plaintiffs' counsel argued that the "hurried process" of signing the loan documents contributes to a finding of procedural unconscionability. The evidence before the Court does not support a finding of procedural unconscionability due to hurried signing. Additionally, concerns regarding the speed with which the documents are signed are mitigated by the three-day TILA rescission period.

[**18]

### c. Fine Print and Emphasis of Important Terms.

Plaintiffs contend that important terms of the Arbitration Rider are hidden in fine print and are not properly emphasized. (Plaintiffs' Opposition at 22-24). Plaintiffs allege that Defendants improperly hid the following six terms in the Arbitration Rider:

> (1) a provision that plaintiffs must bear the costs of arbitration; (2) a provision prohibiting joiner [sic] of claims; (3) a provision prohibiting class actions; (4) a

Case 4:03-cv-40268-FDS   Document 33-4   Filed 02/14/2005   Page 7 of 12

Page 6
236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

legal remedies provision preserving [Household's] access to courts while entirely eliminating plaintiffs' access to courts; (4) [sic] a provision requiring confidentiality of arbitration awards; and (5) a provision requiring plaintiffs to arbitrate only in Tacoma, Seattle, Yakima or Spokane, unless otherwise agreed by [Household].

Id. at 22-23.

"Small printing alone does not render a standard agreement unconscionable." Planet Insur. Co. v. Wong, 74 Wn. App. 905, 915, 877 P.2d 198 (citing PEMCO v. Hertz Corp., 59 Wn. App. 641, 648, 800 P.2d 831 (1990)). However, if important terms are hidden in a "maze of fine print," that factor weighs in favor of a finding of procedural [**19] unconscionability. McGoldrick, 127 Wn. 2d at 131.

The Arbitration Rider terms are not hidden in a "maze of fine print." All terms are in the same sized typeface. That typeface, although smaller than that used in this Order, appears to be approximately the size used in most newspapers. For these reasons the font size does not weigh in favor of a finding of procedural unconscionability. See PEMCO, 59 Wn. App. at 650 (upholding agreement when essential terms were in small, though not "fine," print).

Plaintiffs also complain that the above-listed terms were not printed in capital letters. Placement of essential terms in capital letters weighs against a finding of procedural unconscionability. Id. Arguably the Arbitration Rider's most essential term--waiver of the right to litigate claims--is in all capital letters. See Roberts Decl. Ex. A at 2. Given that Household printed that term in all capital letters and that other terms were not hidden in a maze of fine print, the Court finds that the printing of the Arbitration Rider does not weigh in favor of a finding of procedural unconscionability.

### d. Fraud and Misrepresentation.

Household [**20] defends against Plaintiffs' claim of procedural unconscionability in part by relying upon the presumption that "one who accepts a written contract is conclusively presumed to know its contents and assent to them." Tjart, 107 Wn. App. at 897. Plaintiffs respond by noting that the presumption does not apply when "fraud, misrepresentation, [*1177] or other wrongful act by another contracting party" are present. Id. Plaintiffs note that "the very essence of plaintiffs' complaint is common law fraud and misrepresentation." (Plaintiffs' Opposition at 23). For the limited purpose of determining the enforceability of the Arbitration Rider, this Court should consider "only issues relating to the making and performance of the agreement to arbitrate." Prima Paint, 388 U.S. at 404. Although fraud and misrepresentation are important claims asserted by Plaintiffs, Plaintiffs have failed to demonstrate "fraud, misrepresentation or other wrongful act" with respect to execution of the Arbitration Rider. Therefore Plaintiffs have failed to rebut the Washington common law presumption that one who accepts a written contract knows and assents to its contents.

### e. Conclusions [**21] Regarding Procedural Unconscionability.

The Arbitration Rider is a contract of adhesion. However, having considered all the circumstances surrounding the execution of the Arbitration Rider, including the manner in which it was entered, whether Plaintiffs had a reasonable opportunity to understand the terms of the Rider, and whether the Rider's important terms were hidden in a maze of fine print, the Court finds that the Arbitration Rider is not unenforceable on the basis of procedural unconscionability. n4

---

n4 Regarding procedural unconscionability, Plaintiffs argue that Household owed Plaintiffs a quasi-fiduciary duty to explain the Arbitration Rider and that the Court should not consider the availability of alternate sources of credit. (Plaintiffs' Opposition at 19, 21-22). Because the Court's finding regarding procedural unconscionability does not rest upon the availability of other sources of credit, that argument is not addressed in this Order. The heightened duty expressed in Hutson v. Wenatchee Fed. Sav. and Loan, 22 Wn. App. 91, 588 P.2d 1192 (1978) does not apply here because the Hutson defendant acted not as a lender, but a broker.

[**22]

### 2. Substantive Unconscionability.

"Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." McGoldrick, 127 Wn. 2d at 131 (quoting Schroeder, 86 Wn. 2d at 260). "'Shocking to the conscience,' 'monstrously harsh' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." n5 Id. (quoting Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wn. App. 439, 444, 556 P.2d 552 (1976)).

---

n5 At oral argument Household's counsel attempted to distinguish the California standard

Case 4:03-cv-40268-FDS    Document 33-4    Filed 02/14/2005    Page 8 of 12

Page 7
236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

for substantive unconscionability from the standard employed in Washington by noting that the ACORN Court described substantively unconscionable provisions as merely "excessively one-sided." ACORN, 211 F. Supp. 2d at 1170. However, an opinion brought to the Court's attention by Defendants shows that the "shock[s] the conscience" terminology is also employed in California. Lozano v. AT&T Wireless, 216 F. Supp. 2d 1071, 1075 (C.D. Cal. 2002) (citing 24 Hour Fitness, Inc. v. Superior Court, 66 Cal. App. 4th 1199, 78 Cal. Rptr. 2d 533 (1998)). This demonstrates that both Washington and California courts have described substantively unconscionable provisions as those that "shock the conscience" and, perhaps less dramatically, those that are "excessively one-sided" or "overly harsh."

[**23]

Plaintiffs contend that the Arbitration Rider is substantively unconscionable because (1) arbitrations may be heard only in cities in which a federal district court is located, unless Household agrees otherwise, (2) it prohibits class actions, (3) the legal remedies provision is not mutual, (4) arbitration awards must remain confidential, and (5) consumer claimants must pay unreasonable costs. (Plaintiffs' Opposition at 10).

[*1178] a. Location of Arbitrations.

The Arbitration Rider provides that any participatory arbitration hearing must occur in the city nearest the borrower's residence "where a federal district court is located or at such other location as agreed by the parties." (Roberts Decl. Ex. A at 1). Plaintiffs insist that this provision unfairly requires borrowers who live outside of the five Washington cities in which a federal district court is located to travel, that this requirement hinders borrowers seeking to "vindicate their legal rights," and that it "is designed to favor Household." (Plaintiffs' Opposition at 17.) Most areas in Washington State are within a few hours' drive of one of the five Washington cities containing a federal district court. n6 This restriction [**24] on locations for arbitration hearings is not "overly harsh," and therefore is not substantively unconscionable.

---

n6 The Arbitration Rider does not limit the location of the arbitrations to Washington cities in which a federal district court is located. Borrowers in Southwest Washington could participate in an arbitration hearing held in Portland, Oregon.

---

b. Prohibition of Class Actions.

The Arbitration Rider provides that "no class actions or joiner [sic] or consolidation of any claim of any other person are permitted in arbitration without the written consent of you and us." (Roberts Decl. Ex. A at 1). Plaintiffs argue that this provision is substantively unconscionable because it is "clearly designed to make it difficult for [Household] borrowers to vindicate their legal rights." (Plaintiffs' Opposition at 14). Household argues that the "clear weight" of authority on this point supports the position that arbitration provisions that prohibit class actions are not unconscionable. (Defendants' Reply [**25] at 4).

The importance of class actions, particularly in the consumer protection context, is well known:

> The use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise ... [It has played a role] in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost ... Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338-39, 63 L. Ed. 2d 427, 100 S. Ct. 1166 (1980). Washington courts similarly have recognized the importance of class actions. See Darling v. Champion Home Builders Co., 96 Wn. 2d 701, 706, 638 P.2d 1249 (1982) (recognizing that the class action procedure is an effective method to redress "injuries for those [**26] whose economic position would not allow individual lawsuits" and that the class action procedure "improve[s] access to the courts"). Where, as here, an arbitration agreement prohibits class actions, judicial recognition of the value of the class action procedure is counterbalanced by the strong public policy favoring enforcement of arbitration agreements. See Section III.A, supra.

The Arbitration Rider's prohibition of class actions would prevent borrowers from effectively vindicating their rights for certain categories of claims. Even if

Case 4:03-cv-40268-FDS   Document 33-4   Filed 02/14/2005   Page 9 of 12

Page 8
236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

Household were correct in asserting that a borrower's arbitration costs are minimal, see Section III.B.2.e, infra, some borrowers [*1179] effectively may be prevented from vindicating their rights. This is a particular concern when, as alleged here, the plaintiffs are financially strapped. The Arbitration Rider's prohibition of class actions is likely to bar actions involving practices applicable to all potential class members, but for which an individual consumer has so little at stake that she is unlikely to pursue her claim. The unfairness of the class action prohibition is magnified by other Arbitration Rider provisions, such as the [**27] confidentiality provision. See Section III.B.2.d, infra.

Although the Arbitration Rider's class action provision is nominally mutual, because there is no reasonable possibility that Household would institute a class action against its borrowers, the provision is effectively one-sided. See Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862, 867-68 (2002) (holding that nominally mutual prohibition on class actions is substantively unconscionable because defendant would not have occasion to utilize class action against plaintiffs and class action bar is meant to prevent customers from seeking redress for wrongs involving small amounts of money, serves as a disincentive for the defendant to avoid conduct that might lead to class action litigation, and jeopardizes consumer rights by prohibiting any effective means of litigating challenged business practices).

A Washington Court of Appeals panel recently found that an arbitration provision under which the plaintiff presented *prima facie* proof that he would have to spend over $ 2,000 to vindicate his rights in a potential $ 1,500 dispute was unconscionable and therefore unenforceable. Mendez v. Palm Harbor Homes, Inc., 111 Wn. App. 446, 465, 45 P.3d 594 (2002). [**28] In holding that the arbitration agreement was unconscionable, the court observed:

> Avoiding the public court system to save time and money is a laudable societal goal. But avoiding the public court system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable. Goals favoring arbitration of civil disputes must not be used to work oppression. When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of as a shield against prohibitive costs, we must defer to the overriding principle of access to justice.

Id. The logic of Mendez applies here. Although arbitration agreements are favored by both federal and state law, they may not be used to "work oppression." Here, the prohibition on class actions allows the Arbitration Rider to be "used as a sword to strike down access to justice instead of a shield against prohibitive costs." Id. This finding weighs heavily in favor of a finding of substantive unconscionability. See ACORN, 211 F. Supp. 2d at 1170-71 (finding Arbitration Rider unconscionable under California law due to class action [**29] prohibition); see also Ting v. AT&T, 182 F. Supp. 2d 902, 931 (N.D. Cal. 2002) (discussed with approval in Mendez, 111 Wn. App. at 464) (class action prohibition rendered arbitration provision unconscionable); Lozada v. Dale Baker Oldsmobile, Inc., 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000) (same); State ex rel. Dunlap v. Berger, 567 S.E.2d 265, 279-80 (W. Va. 2002) (same); Szetela, 118 Cal. Rptr. 2d at 867-68 (same); but see, e.g., Randolph v. Green Tree Fin. Corp. -- Alabama, 244 F.3d 814, 819 (11th Cir. 2001) (holding that "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA").

[*1180] c. Non-Mutuality of Legal Remedies.

The Arbitration Rider provides that at the election of either party, any "claim, dispute or controversy" must be resolved by binding arbitration. (Roberts Decl. Ex. A at 1). However, application of the binding arbitration provision is expressly limited by the following clause:

> No provision of, nor the exercise of any rights under [**30] this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents.

Id. Plaintiffs argue that this provision is substantively unconscionable because Household "has retained the right to access the courts in every conceivable situation where they would want to secure judicial relief" while prohibiting borrower access to a judicial forum. (Plaintiffs' Opposition at 12). Household contends that the provision is bilateral and actually "tends to benefit borrowers more than Household." (Defendants' Reply at 3).

Case 4:03-cv-40268-FDS   Document 33-4   Filed 02/14/2005   Page 10 of 12

Page 9
236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

Household contends and has submitted evidence that demonstrates that it utilizes nonjudicial foreclosure in Washington whenever possible. See id.; Little Decl. P 2; Bishop Decl. PP 2-7. Because borrowers may access courts to enjoin such nonjudicial foreclosures, Household argues that the "ancillary or preliminary remedies" exception to the Arbitration Rider's general requirement of arbitration is not unfair to borrowers. [**31]

Although Household may be correct in asserting that the ancillary or preliminary remedies exception is not unfair to borrowers in the foreclosure context, Household's argument fails to address the unfairness of this provision when considered in the larger context of disputes between Household and borrowers. The Arbitration Rider preserves access to the courts for ancillary or preliminary remedies for the only context in which Household is likely to bring a claim against borrowers--foreclosure. At times this provision may benefit borrowers; at times it may benefit Household. However, for any claim that a borrower may assert against Household--such as the claims asserted in this action--the Arbitration Rider bars access to the courts unless both parties agree otherwise. This provision is one-sided in Household's favor and overly harsh to borrowers. As such, it weighs in favor of finding the Arbitration Rider substantively unconscionable. See ACORN, 211 F. Supp. 2d at 1173 (same).

### d. Confidentiality Requirement.

The Arbitration Rider provides that any arbitration "award shall be kept confidential." (Roberts Decl. Ex. A at 1). Plaintiffs argue that this provision [**32] unfairly favors Household as a repeat participant in the arbitration process. (Plaintiffs' Opposition at 16). Defendants contend that because the Federal Rules of Evidence and other authority provide that offers of settlement and settlement communications constitute inadmissible evidence, this provision should not be considered to be overly one-sided. (Defendants' Reply at 7).

As with the class action and the ancillary or preliminary remedies provisions, the confidentiality clause is facially neutral. However, its application disproportionately favors Household. The advantages repeat participants possess over "one time" participants in arbitration proceedings are widely recognized in legal literature and by federal courts. See, e.g., Cole v. Burns Int'l Sec. Servs., 323 U.S. App. D.C. 133, 105 F.3d 1465, 1476 (D.C. Cir. 1997); ACORN, 211 F. Supp. 2d at 1172; Ting, 182 F. Supp. 2d at 931-33. The Cole Court recognized that repeat arbitration participants gain advantages due to [*1181] superior knowledge regarding arbitrators, that "a lack of public disclosure may systematically favor companies over individuals," and that "the unavailability [**33] of arbitral decisions also may prevent potential plaintiffs from locating the information necessary to build a case of intentional misconduct or to establish a pattern or practice of discrimination by particular companies." Cole, 105 F.3d at 1476-77. As noted by the ACORN Court, "by keeping all awards confidential, any advantages that inure to Defendants as repeat participants are effectively concealed, thereby preventing the scrutiny critical to mitigating those advantages." ACORN, 211 F. Supp. 2d at 1172.

At oral argument Plaintiffs' counsel suggested that corporations utilizing the arbitration process might enjoy an unfair advantage over consumers because arbitrators may be wary of "biting the hand that feeds them." The Court expressly rejects this argument. The panels of the National Arbitration Forum, the American Arbitration Association, JAMS/Endispute, and other arbitration administrators in Washington and throughout the United States are comprised of distinguished attorneys, including many former judges. The parties have presented no evidence and the Court knows of no evidence that impugns the impartiality of the women and men who resolve [**34] disputes outside of traditional judicial forums.

Despite express rejection of the allegation of arbitrator prejudice, the Court recognizes that repeat arbitration participants enjoy advantages over one-time participants. Absent the confidentiality provision, those advantages would not contribute to a finding of substantive unconscionability. However, the Arbitration Rider's confidentiality provision magnifies the effect of those advantages. Therefore, although facially neutral, the Arbitration Rider's confidentiality provision unduly favors Household and therefore contributes to a finding of substantive unconscionability.

### e. Arbitration Costs.

The Arbitration Rider contains the following provision regarding the allocation of fees for a claim initiated by a borrower:

> (a) Lender agrees to pay for the initial cost of the filing the Claim up to the maximum amount $ 100.00; (b) for the filing costs over $ 100.00, such additional cost shall be divided equally between us up to the amount charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all costs over the amount charged by the arbitration administrator for a Claim equal to your loan amount [**35] shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally

Case 4:03-cv-40268-FDS   Document 33-4   Filed 02/14/2005   Page 11 of 12

Page 10
236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

between us. Fees for hearings that exceed one day will be paid by the requesting party.

(Roberts Decl. Ex. A at 1). The parties have engaged in extensive argument and submission of evidence regarding the costs a borrower likely would incur in an arbitration proceeding. Household insists that if a borrower elected JAMS as the arbitration agency, $ 125 is the maximum amount the borrower would incur in arbitration fees and costs. (Defendants' Reply at 5; Welsh Decl. PP 2-3). Plaintiffs insist that pursuant to the Arbitration Rider and the fee provisions of the three eligible arbitration agencies (National Arbitration Forum, American Arbitration Association, and JAMS), the cost of a two to three day hearing would range from $ 4,100 to $ 6,200. (Plaintiffs' Opposition at 15; Parlette Decl. PP 34, 47, 56).

The evidence submitted by the parties is insufficient to enable the Court to define a precise arbitration cost for a particular Plaintiff or hypothetical borrower. However, based upon the evidence submitted, [*1182] the Court finds that a borrower's cost for arbitration likely would exceed [**36] the cost of a court proceeding by at least a factor of ten. See, e.g., Parlette Decl. PP 34, 47, 56 (calculating likely fees); Parlette Decl. Ex. A at 39 (for claim between $ 50,000 and $ 75,000, National Arbitration Forum costs include $ 240 filing fee, $ 240 commencement fee, $ 1,250 administrative fee, and $ 1,000 participatory hearing fee).

Household urges that if a borrower prefers not to pay the costs of the more expensive arbitration administrators, "she can elect to proceed before JAMS for $ 125." (Defendants' Reply at 5). In support of this contention Household submits the JAMS "Minimum Standards Of Procedural Fairness." See Welsh Decl. Ex. A. JAMS will administer arbitrations involving consumers "only if the contract arbitration clause and specified applicable rules comply with their ... minimum standards of fairness." Id. One minimum standard provides, in relevant part:

> With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $ 125, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company including any [**37] remaining JAMS Case Management Fee and all professional fees for the arbitrator's services.

Id.

This evidence is insufficient to rebut Plaintiffs' evidence that the costs are prohibitively expensive. Because the plain text of the Arbitration Rider provides that the borrower will be responsible for fees that are likely to exceed the JAMS maximum of $ 125, the Rider does not comply with JAMS "minimum standards of fairness" and therefore whether JAMS would agree to arbitrate a claim under the Rider is uncertain. Additionally, the Arbitration Rider provides that "in the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Arbitration Rider, this Arbitration Rider shall govern." (Roberts Decl. Ex. A at 1). Were a borrower contemplating arbitration to investigate the cost of JAMS-administered arbitration and read the provision quoted above, the borrower reasonably could conclude that her claim is ineligible for JAMS arbitration or that even given the JAMS fee structure, pursuant to the Rider she would be responsible for far more extensive fees. Household's assertions regarding the cost of an arbitration administered [**38] by the American Arbitration Association similarly fail. n7

> n7 Household asserts that "the AAA rules for consumer disputes limit consumers' costs to $ 125 for claims up to $ 10,000, or $ 375 for claims up to $ 75,000." (Defendants' Reply at 5). A plain reading of the Arbitration Rider leads to the conclusion that the Rider's provisions trump the AAA provisions. Additionally, certain Plaintiffs may have claims exceeding $ 75,000, resulting in far higher costs. Finally, the AAA consumer dispute provisions do not apply if the consumer's claim is "non-monetary or undetermined." (Parlette Decl. Ex. C at 5). Because Plaintiffs seek equitable relief, the AAA consumer dispute provisions likely would not apply.

Because the costs of arbitration are likely drastically to exceed the costs of pursuing the claims in court, the Arbitration Rider's fee splitting provisions weigh heavily in favor of a finding of unconscionability. Mendez, 111 Wn. App. at 465 (2002); see also ACORN, 211 F. Supp. 2d at 1174. [**39]

**f.   Conclusions   Regarding   Substantive Unconscionability.**

The Arbitration Rider's provisions regarding class actions, the use of court proceedings for ancillary or preliminary remedies, confidentiality, and fee sharing constitute one-sided provisions [*1183] that, taken together, grossly favor Household.

Case 4:03-cv-40268-FDS    Document 33-4    Filed 02/14/2005    Page 12 of 12

Page 11

236 F. Supp. 2d 1166, *; 2002 U.S. Dist. LEXIS 21761, **

The conduct required to support a finding of unconscionability in the consumer context differs from that required in a wholly commercial transaction. In a seminal opinion regarding unconscionability, Judge Skelly Wright noted that "in determining the reasonableness or fairness" of a contract challenged on unconsionability grounds "the terms [must be] considered in light of the circumstances existing when the contract was made." Williams v. Walker-Thomas Furniture Co., 121 U.S. App. D.C. 315, 350 F.2d 445, 450 (D.C. Cir. 1965). A party's status as a consumer is one of those circumstances. Washington courts have recognized that the consumer or commercial nature of a contract should be considered in the substantive unconscionability inquiry. See M.A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wn. 2d 568, 587, 998 P.2d 305 (2000); see also [**40] Kaplan v. RCA Corp., 783 F.2d 463 (4th Cir. 1986) ("factors determining unconscionability [include] whether the plaintiff is a substantial business concern").

Phrases such as "shocks the conscience" and "monstrously harsh" have found their way into the law of unconscionability from a time when it was felt that individuals should almost always be held to contracts they signed, regardless of the disparity in sophistication between the parties and the one-sidedness of the term. The more enlightened view recognizes that the totality of the circumstances must be considered.

Were the Arbitration Rider entered between Household and a commercial entity, the Court would not be inclined to find it unconscionable. However, the consumer nature of the transactions at issue magnifies the impermissible effects of the class action, use of court proceedings for ancillary or preliminary remedies, confidentiality, and fee sharing provisions. The totality of the circumstances has established a fundamental unfairness, which makes the Arbitration Rider unconscionable and unenforceable under Washington law.

The Arbitration Rider contains a severability clause. However, an unlawful provision [**41] may taint an entire agreement, making judicial reformation inappropriate. See Graham Oil Co. v. ARCO Prods. Co., 43 F.3d 1244, 1249 (9th Cir. 1995). Here the unconscionable provisions are interrelated and each serves to magnify the one-sidedness of the others. As such the Arbitration Rider is tainted with illegality. Therefore the Court finds that severance of the offending provisions is inappropriate and that the Arbitration Rider is unenforceable.

### IV. CONCLUSION

For the foregoing reasons Household's motion to compel arbitration and to stay proceedings pending arbitration (Dkt. # 86) is DENIED. Household's motion to strike Plaintiffs' exhibit (Dkt. # 99) and Plaintiffs' motion to stay arbitration (Dkt. # 85) are GRANTED. The Clerk of the Court is directed to send copies of this Order to all counsel of record.

DATED this 4th day of November, 2002.

Robert S. Lasnik

United States District Judge