UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM A. & MARITZA STORIE,       )
    Plaintiffs,                    )
VS.                                )        No. 03-40268- FDS
                                   )
HOUSEHOLD INTERNATIONAL, INC.,     )
BENEFICIAL FINANCE CORP.,          )
    Defendants.                    )

## DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING ON MATTERS INVOLVING "RELEASE" AND "JURISDICTION" PENDING OUTCOME OF RULING ON PLAINTIFF'S MOTION TO RECONSIDER

Defendants, "Household International, Inc." and "Beneficial Finance Corp.", ("Defendants")[1] hereby object to Plaintiffs' Motion for Leave to File Supplemental Pleadings. As grounds for this Objection, Defendants state that: (1) Plaintiffs' motion is untimely; (2) there has not been any intervening change in the law; (3) Plaintiffs have failed to present any new evidence not previously available; (4) Plaintiffs have not set forth a clear error of law to suggest that reconsideration is warranted; and (5) Plaintiffs' motion is otherwise frivolous and constitutes a violation of Rule 11 of the Federal Rules of Civil Procedure.

This matter was dismissed on or about January 25, 2005, and this Court issued a Memorandum and Order as well as a Memorandum and Order on Plaintiff's Motion to Reconsider. *See* Exhibit A attached. Since Dismissal, in addition to the instant motion, the *pro se* plaintiffs have filed another motion to reconsider and another memorandum of law in support

---

[1] As set forth in Defendants' Motion to Dismiss, Plaintiffs have failed to name or serve proper the legal entities. Although this Court lacks jurisdiction over the Defendants due to Plaintiffs' failure to name or serve the proper defendants, the named defendants have no choice but to respond to the Plaintiffs' motions. However, such response(s) are in no way a waiver of any of the defenses set forth in the Answer or pending Motion to Dismiss.

of reconsideration. Plaintiffs merely restate previously rejected arguments, make additional arguments that could have been made earlier, and cite to preexisting case law from other jurisdictions that are readily distinguishable from the case at bar. In light of this Court's thorough and well-reasoned decision dismissing this matter, Defendants will not burden the Court with yet another memorandum of law.

Defendants incorporate by reference its previously filed memoranda of law including: (1) Memorandum of Law in Support of Defendants' Objection to Plaintiffs' Motion and Amended Motion for Contempt and Request for Sanctions; (2) Memorandum of Law in Support of Defendants' Objections to Plaintiffs' Motion to Reconsider Contempt of Court Order and Request for Sanctions; and (3) Memorandum of Law in Support of Defendants' Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration and Stay Litigation Pending Arbitration.

**WHEREFORE**, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion for Leave to File Supplemental Pleadings.

Defendants,
Household International, INC. and
Beneficial Finance Corp.,
By their Attorneys,
Shechtman Halperin Savage, LLP,

Gini Spaziano, Esq. BBO #637221
Dean J. Wagner, Esq. BBO #633181
86 Weybosset Street
Providence, RI 02903
(401) 272-1400

2

## Certificate of Service

I certify that the within Defendants' Objection to Plaintiffs' Motion to Reconsider Order of Dismissal was served upon the following *pro se* Plaintiffs by first class mail, postage prepaid, on February 18, 2005:

William A. and Maritza Storie
59 Crawford Road
Oakham, MA 01068

_____
Dean J. Wagner, Esquire



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**William A. Storie and Maritza
Storie,**
          **Plaintiff,**

     **V.**

**Household International, Inc.,
and Beneficial Finance Corp.,**
       **Defendant,**

**CIVIL ACTION**

**NO. 03-40268-FDS**

## ORDER OF DISMISSAL

**SAYLOR,  D. J.**

    In accordance with the Court's Memorandum and Order dated **1/25/05** , allowing the defendant's motions to dismiss,  it is hereby ORDERED that the above-entitled action be and hereby is dismissed.

                        **By the Court,**

    **1/25/05**                 **/s/ Martin Castles**
      **Date**                   **Deputy Clerk**

(Dismmemo.ord - 09/92)                           [odism.]



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WILLIAM A. STORIE and MARITZA STORIE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Civil Action No.** **03-40268-FDS** |
| HOUSEHOLD INTERNATIONAL, INC. and BENEFICIAL FINANCE CORP., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

**SAYLOR, J.**

Plaintiffs William and Maritza Storie, proceeding *pro se*, bring this lawsuit against

Household International, Inc. and Beneficial Finance Corporation, claiming that the defendant

financial-services companies engaged in various predatory-lending practices in connection with a

home-equity line of credit obtained by the plaintiffs. Specifically, plaintiffs claim that defendants

failed to comply with their disclosure obligations under the Truth in Lending Act ("TILA"), 15

U.S.C. § 1601 *et seq.*, as amended by the Home Owners Equity Protection Act ("HOEPA").

Plaintiffs seek rescission of the home-equity loan, injunctive relief, damages, and attorneys' fees.

This case was originally filed in Worcester Superior Court on October 30, 2003.[1] On

---

[1] There were proceedings in the Superior Court prior to removal. The original complaint was filed by Mr. Storie alone against "Beneficial Finance owned by Household Retail Finance" and did not specifically refer to any statute or cause of action. On November 7, 2003, Mr. Storie amended the complaint to add his wife, Maritza, as a plaintiff; to change the named defendants as set forth in the caption; and to explicitly assert a claim under TILA. On the same date, a justice of the Superior Court heard the matter on a motion for preliminary injunction. The court issued an order that plaintiff should not "make any payments to the defendant until after [further] hearing." The court later continued that order in effect until December 29, 2003. Although the Superior Court injunction remained in effect in this Court after removal, *see Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local No. 70*, 415

*28*

December 2, 2003, defendants removed the case to this Court on the basis of federal-question

jurisdiction and supplemental jurisdiction. Plaintiffs allege that defendants violated TILA,

HOEPA, Regulation Z, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*

Plaintiffs also allege claims under the Massachusetts Consumer Protection Act, Mass. Gen. Laws

ch. 93A, and the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch.

140D. Although Mrs. Storie did not sign the Loan Agreement that is the subject of this dispute,

she claims that she has standing to contest the legality of defendants' disclosure practices because

she executed a mortgage in favor of defendants.

After removal, defendants filed a Motion to Dismiss or, in the Alternative, Motion to

Compel Arbitration and Stay Litigation Pending Arbitration. Although that motion seeks relief

on several grounds, the Court will address only the portion that seeks to dismiss or stay this

action pending arbitration.[2] Defendants assert that dismissal or a stay is appropriate because the

dispute is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.

Plaintiffs oppose arbitration on the grounds that (1) they were fraudulently induced to

enter into the loan; (2) it would be unconscionable under Mass. Gen. Laws ch. 106, § 2-302 to

hold them to the arbitration agreement; (3) the cost of arbitration may be prohibitive; and (4)

---

U.S. 423, 436 (1974), it expired by its terms on December 29, 2003.

[2] Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief
can be granted, based on the presence of a release executed by Mr. Storie and the expiration of the relevant statute of
limitations. Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction); 12(b)(4)
(insufficiency of process); 12(b)(5) (insufficiency of service of process); and 12(b)(7) (failure to join an
indispensable party. Those motions are all based on plaintiffs' purported failure to name the correct defendant in
this case, which defendants assert is Beneficial Massachusetts, Inc., the party from whom plaintiffs obtained the loan.

public policy favors the public resolution of this dispute. For the reasons stated below, the Court

concludes that it must dismiss this case in favor of arbitration.[3]

## I.    **Background**

### A.    **The Loan Transaction and Documents**

Plaintiffs own property in Oakham, Massachusetts, for which a home-equity loan (the

"Loan") was obtained on August 24, 2000, from Beneficial Massachusetts, Inc. The initial line

of credit was $37,000. The Loan was secured by a mortgage conveyed to Beneficial

Massachusetts, Inc. by Mr. Storie and his wife, Maritza Storie, "husband and wife." Although

Mrs. Storie signed the mortgage, she did not sign the promissory note for the Loan, the Home

Equity Credit Line Revolving Loan Agreement ("Loan Agreement").[4]

The mortgage signed by the Stories specifically references the Loan Agreement. The

Loan Agreement expressly states, in a section titled "Alternative Dispute Resolution and Other

Riders," that "[t]he terms of the Arbitration Agreement and any other Riders signed as part of

this loan transaction *are incorporated into this Agreement*." (emphasis added).

The Arbitration Rider, which like the Loan Agreement was signed only by Mr. Storie,

expressly provides for arbitration whenever there is a dispute relating to the Loan Agreement.

---

[3] Also pending before the Court is plaintiffs' Motion for Complaint Modification to Include Plaintiffs' Memorandum of Facts in Support of Plaintiffs' Complaint and Worcester Superior Court Transcripts When Available (Docket #7). As its caption indicates, that motion seeks to further amend the complaint to incorporate (1) the Memorandum of Facts in Support of Plaintiffs' Complaint and Request for Permanent Injunction that was filed in the Superior Court and (2) transcripts of certain proceedings held in the Superior Court. The Court has consulted the Memorandum of Facts – which (despite its caption) is a tangle of factual allegations and legal argument – to more fully understand the nature of plaintiffs' claims. Nevertheless, given the Court's determination that plaintiffs must submit their claims to arbitration, the Court will deny the motion as moot.

[4] There is a question whether the mortgage secures the correct parcel of land, that is, the parcel on which the Stories' home is located or an adjacent parcel. That dispute is not material to the issues presented here.

Indeed, it clearly states that either party has a right to demand that any dispute be submitted to arbitration and further provides, in relevant part:

> By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third party claims, *arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement* ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

(emphasis added).

### B.    The State's Investigation of Defendants and the Resultant Settlement

At some point, the lending practices of Household International, Inc. and its affiliated companies, including Beneficial Massachusetts, Inc. (collectively "Household-Beneficial"), became the subject of an investigation by the Massachusetts Office of the Attorney General ("OAG"). Based upon the results of that investigation, and similar ones in other states, the Commonwealth filed a complaint in Massachusetts state court alleging that Household-Beneficial had violated various consumer-protection statutes and regulations. The Commonwealth and Household-Beneficial reached a settlement agreement that resulted in entry of a consent judgment effective December 16, 2002. As part of the settlement, Household-Beneficial was required to pay restitution to a fund administered by the OAG for the benefit of eligible borrowers.

After entry of that consent judgment, the Attorney General notified eligible Household-Beneficial loan customers, including Mr. Storie, that they could receive a cash payment as a

4

result of the settlement between the Commonwealth and Household-Beneficial. The Attorney

General's letter notice informed recipients that the settlement payment would be for a minimum

amount specified on the Release and Agreement to Participate in Household-Beneficial

Settlement that accompanied the letter. The Attorney General's letter also stated:

> It is your choice whether to participate in this settlement and receive this payment.
> You may wish to do so if you do not plan to sue Household or Beneficial for any
> claims you might have about your loan(s). If you choose to accept the settlement
> payment, you must agree not to sue Household or Beneficial on your own, or to
> join any class action lawsuits against them that involve issues covered by the
> settlement. The agreement not to sue is explained on the attached "Release and
> Agreement to Participate in Household-Beneficial Settlement" form. **Please read
> the form carefully before signing it. Please understand that by signing it, you
> give up your right to sue Household or Beneficial, but you would still have
> the right to contest a foreclosure.** You may wish to consult an attorney of your
> choosing before making your decision.

(emphasis in original).

The release Mr. Storie received from the OAG was addressed to him individually; it did

not name Mrs. Storie. It stated that in exchange for "the restitution payment received" (in Mr.

Storie's case, a minimum settlement payment of $285.91) the signatory would release

Household-Beneficial:

> from all civil actions and causes of action which [he] may have as of the date of
> this release agreement, in contract, in tort . . ., in statute, regulation or common
> law . . . whether known or unknown, threatened or unasserted, that arise from or
> are related to the restitution received or the following lending practices by
> [Household-Beneficial] in connection with [the loan]: . . . loan points and origination fees, interest rat
> and other insurance products, prepayment penalties, loans offered through a negotiable check
> (i.e. "live checks") home equity lines of credit, loan billing practices relating to simple interest
> calculations, balloon payments, payoff information, non English language documentation, and
> net tangible benefit in loan refinancing.

On August 23, 2003, Mr. Storie alone executed the release.

5

As noted above, Mr. Storie filed the original complaint in this case on October 30, 2003. By letter dated November 9, 2003, Mr. Storie informed the OAG that he wished to rescind his release. Among other things, Mr. Storie stated that he had "learned much more" about the case since he signed the release, and, he rued, "If I knew then what I know now, I would never have signed the release." Mr. Storie asserted that he had not received and did not want any consideration from the class action—in other words, apparently, that he had not cashed the settlement check. He further stated, "My wife is CO-borrower on HELOC I have with Household Int./Beneficial Finance. She did not sign the release in August. This should make the release null and void." The OAG responded by letter dated November 17, 2003, that it did not have the power to rescind the release and that the release, if valid, was effective upon receipt by the settlement administrator. But the OAG also advised Mr. Storie that his release may not have been valid if his wife was co-borrower on the loan but did not sign the release, as he had stated.

## II.    **Legal Analysis**

Defendants move to dismiss or stay this action in favor of arbitration pursuant to § 3 of the FAA.[5] That provision reads:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

---

[5] The FAA applies to arbitration agreements involving "contracts evidencing a transaction involving commerce." 9 U.S.C. § 2. Plaintiffs do not dispute that the Loan Agreement evidences a transaction involving commerce and that the FAA therefore applies. Indeed the Arbitration Rider itself states that it "is made pursuant to a transaction involving interstate commerce, and shall be governed by the [FAA]."

9 U.S.C. § 3. Section 3 is a remedy intended for a defendant desiring to compel a plaintiff to arbitrate: it provides for a stay of the trial of an action brought in a federal court on an issue referable to arbitration pursuant to a written arbitration agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The FAA's stay-of-litigation provision is mandatory, and, if issues in the case are within the reach of the arbitration agreement, the district court has no discretion to deny the stay. *Gutierrez v. Academy Corp.*, 967 F. Supp. 945, 947 (S.D. Tex. 1997).

To determine whether the claims at issue are subject to arbitration, this Court must first consider whether the parties agreed to submit their claims to arbitration. That threshold question, "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy," raises a question of arbitrability for the court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

There is a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

With those principles in mind, the Court will proceed to consider the arbitrability of the Stories' claims and the Stories' specific objections to arbitration.

### A.    Arbitrability of Issues

The Court has no trouble concluding that all the issues presented here are arbitrable. The language of the Arbitration Rider is very broad. Thus, it applies to "any claim, dispute or

7

controversy . . . arising from or relating to" the Loan Agreement. The Stories' claims all involve

allegations of inadequate disclosures in connection with the Loan Agreement; accordingly, they

are covered by the Arbitration Rider and are arbitrable.

**B.    Arbitrability of Mrs. Storie's Claims**

There is no question that Mr. Storie signed both the Loan Agreement and the Arbitrator

Rider and that, therefore, he is potentially bound by the arbitration agreement, subject to certain

defenses. But because Mrs. Storie did not sign the Loan Agreement or the Arbitration

Rider—although she did sign the mortgage—there is a question whether the arbitration

agreement is enforceable against her.

In *Fluehmann v. Associates Financial Services*, Judge Gorton of this District faced a

nearly identical set of facts. *See* 2002 WL 500564 (D. Mass. 2002). Like Mrs. Storie here,

plaintiff Catherine Fluehmann was the wife of a man who obtained a consumer mortgage loan.

*Id.* at *1. As in this case, Fluehmann executed a mortgage in favor of the lender but did not sign

the loan agreement or arbitration agreement. *Id.* Claiming that the lender failed to comply with

its disclosure obligations under TILA, Fluehmann brought suit in federal court to rescind the

loan. *Id.* In response, the defendant lender moved to stay the action pending arbitration. *Id.*

Fluehamnn opposed arbitration in part on the grounds that she had not entered into the arbitration

agreement with the lender. *Id.*

The court in *Fluehmann* ruled that Fluehmann, as a "co-signor" of the mortgage deed,

was bound by the arbitration agreement, even though she did not sign it. *Id.* at *7. The court

based its decision on contract principles, including the broad scope of the arbitration agreement,

8

and on a related estoppel theory stemming from the interdependence of the loan agreement and the mortgage deed. *Id.* at *6-*7.

In terms of contract principles, the court in *Fluehmann* began by analyzing the scope of the arbitration agreement. *See id.* at *6. The court found the arbitration agreement to be broad in that it covered "any dispute that may 'arise under' or 'relate to' the Loan Agreement." *Id.* The court noted that "similarly broad arbitration clauses governing 'all disputes' arising under the agreement apply even to a nonsignatory." *Id.* Furthermore, the fact that Fluehmann did not sign the arbitration agreement did not necessarily indicate her lack of assent to arbitration. *Id.* Rather, focusing on "the relationship established under the agreement and the duties and obligations set out therein," the court concluded that the mortgage deed, which Fluehmann signed, and the loan agreement and arbitration agreement, which Fluehmann did not sign, were so intertwined that it was appropriate under contract principles to hold Fluehmann to the arbitration agreement for claims arising out of the loan agreement. *Id.* at *7.

The court's conclusion was bolstered by application of an estoppel theory. *See id.* As the court noted, Fluehmann derived her standing under TILA to rescind the transaction and sue for damages from her role as the cosigner of the mortgage. *Id.* It would be unfair, the court concluded, for Fluehmann to have it both ways, that is, to "elect to secure only the benefits of the agreements at issue without likewise assuming their burdens." *Id.* Thus, the court concluded, "If the Loan Agreement and mortgage deed are sufficiently interdependent so as to give Fluehmann a cause of action under TILA, [the lender] can likewise invoke the Arbitration Agreement against her." *Id.*

9

As in *Fluehmann*, the arbitration clause here is also broad. By its terms, it applies to any dispute "arising from or relating to" the Loan Agreement. Also as in *Fluehmann*, Mrs. Storie is a cosigner of the mortgage, which was executed as part of the same transaction as the Arbitration Rider and is intertwined with both the Loan Agreement and the Arbitration Rider. The claims Mrs. Storie seeks to bring arise under the Loan Agreement. Finally, Mrs. Storie, like Fluehmann, seeks to establish her standing to assert the claims here, including those under TILA, by invoking her role as a cosigner of the mortgage. As the court in *Fluehmann* recognized, it is appropriate in such circumstances to require Mrs. Storie to arbitrate those claims.

### C.    The Stories' Specific Objections to Arbitration

Having determined that all of the claims in this case are arbitrable, the Court will now consider the Stories' objections to arbitration. As previously noted, the Stories interpose four specific arguments against arbitration: (1) they were fraudulently induced to enter the loan; (2) it would be unconscionable under Mass. Gen. Laws ch. 106, § 2-302 to hold them to the Arbitration Rider; (3) the cost of arbitration may be prohibitive; and (4) public policy favors the public resolution of this dispute. The Court will address each in turn.

#### 1.    Fraudulent Inducement

Plaintiffs assert that the Arbitration Rider is unenforceable because they were fraudulently induced to enter into the Loan Agreement. Specifically, the Stories state:

> Plaintiff entered into this Arbitration "Contract" with the understanding that Defendant was acting in the best interest of Plaintiff and that the information stated and documents offered to Plaintiff were accurate. Since evidence has been offered which may show "willful" and "knowing" deception, this "agreement" should not be enforceable as per any contractual agreement entered into under fraudulent terms.

10

Memorandum of Facts in Support of Plaintiffs Complaint and Request for Permanent Injunction § III(A)(3). In perhaps their clearest articulation of the fraudulent-inducement claim, plaintiffs aver that they "would never had [*sic*] entered into a loan agreement or any Arbitration Agreement if they were aware the terms of the loan were in violation of M.G.L. Chapter 93A, TILA, HOEPA, and RESPA." Memorandum of Law at 10.

This Court, in passing upon an application under the FAA for a stay while the parties arbitrate, may consider only issues relating to the making and performance of the arbitration agreement, not the entire contract. 9 U.S.C. § 3. As the Supreme Court has explained:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to arbitrate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . . [I]n passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Prima Paint Corp.*, 388 U.S. at 403-04.

Here, plaintiffs do not claim that defendants fraudulently induced them to enter into the Arbitration Rider itself, as opposed to the Loan Agreement generally. Contrast *MCI Telecommunications Corp. v. Matrix Communications Corp.*, where the plaintiff claimed that it was duped into accepting the arbitration provision by representations from defendant officials that the arbitration clause applied only to certain billing disputes and by defendant's concealment of a secret agreement between defendant and the arbitrator. 135 F.3d 27, 30, 32 (1st Cir. 1998). Unlike that situation, here the only allegations of fraud go to plaintiffs' decision to enter into the Loan Agreement generally. Under *Prima Paint*, such claims are for the arbitrator to decide; they do not prevent enforcement of the arbitration agreement. *See* 388 U.S. at 403-04.

11

### 2.    Unconscionability

Plaintiffs also purport to raise an unconscionability defense to enforcement of the arbitration agreement, citing Mass Gen. Laws ch. 106, § 2-302. Plaintiffs state, "Defendant's representation of 'Monthly Savings' in the selling of this loan as well as the HUD Settlement Agreement, Page1, being omitted should make the Arbitration Rider null and void due to **unconscionability** both 'procedural' and 'substantive' pursuant, M.G.L. ch. 106, § 2-302," every contract imposes an obligation of good faith in its performance and enforcement. Memorandum of Law at 10 (emphasis in original).

As an initial matter, the cited provision is part of the Massachusetts version of the Uniform Commercial Code regarding sales of goods; it does not apply to mortgage lending. Furthermore, plaintiffs' unconscionability defense suffers from the same defect as their fraudulent-inducement defense: it goes to the Loan Agreement generally, not to the arbitration agreement specifically. Any such claim of unconscionability is for the arbitrator to decide.

### 3.    Public Policy Favors Public Resolution

Plaintiffs also raise a vague public-policy defense to arbitration, suggesting that the public interest favors the public resolution of this dispute. Plaintiffs maintain that the mutual confidentiality requirement of the Arbitration "is not in the best interest of the thousands of other potential victims of loans that have manufactured in a similar manner." Memorandum of Facts in Support of Plaintiffs Complaint and Request for Preliminary Injunction at 13. Even if the Court were to assume that there are public-policy reasons favoring the public resolution of this dispute, those reasons could not outweigh the "liberal federal policy favoring arbitration agreements" expressed by Congress through the FAA. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at

12

24-25. Moreover, it is clear that a borrower can be compelled to arbitrate a claimed violation of

the Truth in Lending Act. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 90. Indeed, even an

assertion of the right of rescission under TILA does not undo the obligation to take the rescission

claim to arbitration. *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 50 (1st Cir. 2002).

Accordingly, the Court finds that there is not public-policy reason preventing the arbitration of

plaintiffs' claims.

### 4.    **Prohibitive Costs**

Finally, plaintiffs observe that "[a]rbitration is very expensive," and they assert that if the

Court dismisses or stays the action pending arbitration, they "more than likely . . . would not be

able to pursue this action, 'prohibitive costs.'" Memorandum of Facts in Support of Plaintiffs

Complaint and Request for Preliminary Injunction at 13.

The Supreme Court has stated that "the existence of large arbitration costs could preclude

a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum."

*Green Tree Fin. Corp.-Ala.*, 531 U.S. at 90. Nevertheless, "[w]here . . . a party seeks to

invalidate an arbitration agreement on the ground that arbitration would be prohibitively

expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at

92. The party resisting arbitration because of prohibitive costs cannot rest on mere speculation.

*Id.* at 91.

Here, plaintiffs have presented no evidence showing that the cost of arbitration would be

so great as to preclude them from effectively vindicating their statutory rights in the arbitral

forum. Moreover, the Arbitration Rider provides for fee sharing, and it further provides for an

award of costs and attorneys' fees where statutorily available. Such costs and attorneys' fees are

13

available to prevailing plaintiffs under TILA. *See* 15 U.S.C. § 1640(a)(3). Given the absence of evidence demonstrating that arbitration would present truly prohibitive costs and the availability of fee sharing and awards of costs and attorneys' fees, the Court concludes that arbitration is not inappropriate here.

### D.    Dismissal or Stay

Having determined that under the FAA these claims must proceed in front of an arbitrator, the Court must decide whether dismissal or a stay is appropriate. Where all of the issues before the court are arbitrable, the court may order dismissal rather than a stay. *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998). As one court has put it:

> Given our ruling that all issues in this action are arbitrable, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law. . . . *Since there are no live controversies before this court, the appropriate procedure is dismissal of the action without prejudice.* (citations omitted).

*Unlimited Servs. Corp. v. Swift-Eckrich, Inc.*, 727 F. Supp. 75, 78 (D.P.R. 1989) (quoting *Sea-Land Servs., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757-58 (D.P.R. 1986) (emphasis added) (internal citations omitted)).

Here, as the Court has previously determined, all of the issues are arbitrable. Accordingly, dismissal rather than a stay is appropriate.

14

III.   **Conclusion**

For the reasons stated above, defendants' motion to dismiss is GRANTED in order for

the plaintiffs to pursue arbitration.

**So Ordered.**

_____
F. Dennis Saylor IV
United States District Judge

Dated: January 25, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM A. STORIE and MARITZA STORIE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 03-40268-FDS |
| HOUSEHOLD INTERNATIONAL, INC. and BENEFICIAL FINANCE CORP., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO RECONSIDER

SAYLOR, J.

Plaintiffs William and Maritza Storie, proceeding *pro se*, ask the Court to reconsider its

November 18, 2004 decision denying their Motion and Amended Motion for Contempt and

Request for Sanctions. For the reasons stated below, plaintiffs' motion to reconsider is denied.

On March 19, 2004, plaintiffs petitioned for contempt based on defendants' alleged

violations of an injunction entered by the Superior Court prior to the removal of the case to this

Court. That injunction, dated November 10, 2003, stated:

> It is **ORDERED** and **ADJUDGED** that upon payment to the clerk of the sum of
> $90.00, and until further order of the Court, the application under the prayers of
> the complaint is hereby granted; and the plaintiff William A. Storie is ordered not
> to make any payments to the defendant until after the hearing on November 17,
> 2003 @ 2:00 P.M. when this Court will hear further testimony.

The Superior Court later continued the injunction in effect to December 29, 2003.

On November 18, 2004, the Court denied plaintiffs' motion for contempt, concluding that

27

the injunction (1) expired before much of the allegedly contemptuous conduct occurred and (2) did not explicitly restrain defendants' conduct.

An order denying a petition for contempt, like any interlocutory order, is subject to reconsideration by the trial court. *See Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994). "When faced with a motion for reconsideration, a district court must balance the need for finality against the duty to render just decisions." *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000). A motion for reconsideration of an interlocutory order should be granted only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order. *Id.*

Plaintiffs offer five reasons why the Court should reconsider its November 18 decision: the availability of "new evidence not previously available"; (2) Fed. R. Civ. P. 19 "joins Defendants as a party to the injunction"; (3) the initial application for the injunction supports a finding of contempt; (4) defendants should be estopped "regarding their understanding of the Injunction issued against them"; and (5) defendants are "in active concert with Plaintiffs" under Fed. R. Civ. P. 65(d). The Court will consider each of plaintiffs' theories in turn.

**1.    New Evidence**

Plaintiffs claim that there is new evidence, in the form of correspondence sent to them by defendants, that establishes defendants' contempt. Specifically, on November 8, 2004, plaintiffs allegedly received from a Beneficial office in Worcester a "Notice of Negative Credit Reporting Disclosure" that stated "We may report information about your account to credit bureaus. Late payments, missed payments, or other default on your account may be reflected in your credit report."

2

Even if true, this new evidence does not affect the conclusions expressed in the Court's November 18 decision—namely, that the injunction in question (1) expired before much of the allegedly contemptuous conduct occurred and (2) did not explicitly restrain defendants' conduct. Therefore, it does not provide grounds for reconsideration.

## 2.    Fed. R. Civ. P. 19

Plaintiffs rely on Fed. R. Civ. P. 19(a) to show that, notwithstanding the Court's conclusion to the contrary, the Superior Court injunction did restrain defendants' conduct. That rule provides a mechanism by which to add to the action certain parties who are needed for just adjudication but who are not yet joined. There is no question that defendants are parties to this action, properly or not; accordingly, Fed. R. Civ. P. 19(a) does not apply.

## 3.    The Initial Application for the Injunction

Plaintiffs further argue that the Court, in interpreting the preliminary injunction, should consider the application for the preliminary injunction that was filed in Superior Court. Plaintiffs draw the Court's attention to passages from the application that state "I hereby request that this court place a restraining order on Beneficial Finance/Household Retail Finance acct. # 521721-7-506554-0" and "I am asking the Court for an injunction ceasing all activity on this loan."

Plaintiffs apparently suggest that the relief sought in the application for the preliminary injunction was somehow incorporated by reference into the injunction itself. That is factually incorrect. Moreover, even if it were true, the injunction would run afoul of the rule that "the putative contemnor [must be] able to ascertain from the four corners of the order precisely what acts are forbidden." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002)

3

(quotation omitted). Obviously, the application is outside the four corners of the injunction itself. Accordingly, the application does not provide a basis for reconsideration.

4. **Equitable Estoppel**

Plaintiffs also contend that, "[a]fter the injunction was granted, Defendants presented a material and accurate understanding of the injunction" in a memorandum submitted to the Superior Court. Thus, defendants wrote in that submission:

> As part of his Complaint, Plaintiff requested injunctive relief. Specifically, Plaintiff requested that the outstanding principal balance on the loan be placed in escrow, that Defendants be restrained from taking any action on the loan, and that Defendants bear court costs for any order entered in response to his request.

Plaintiffs apparently suggest that, because defendants understood the various forms of relief sought by Mr. Storie, they should be estopped from denying that a portion of the sought relief became part of the ultimate injunction entered by the Superior Court. This argument fails for the same reason as the last one: the test for determining precisely which acts are forbidden by a court order is limited to an examination of that document's text. *Goya Foods*, 290 F.3d at 76.

5. **Fed. R. Civ. P. 65(d)**

Finally, plaintiffs argue that, "as persons in active concert or participation with [parties to the action] who receive actual notice of the order by personal service or otherwise" under Fed. R. Civ. P. 65(d), defendants are enjoined from "aiding and abetting" plaintiffs to violate the injunction. Specifically, plaintiffs observe:

> In essence, Defendant's [*sic*] are provoking Plaintiffs to feel that they must violate the most narrow interpreted terms of the injunction by their continued demands of payment, delinquent notices, illegally providing false information to credit reporting agencies, past due amount invoices.

4

The portion of Rule 65(d) that plaintiffs cite defines who is bound by an injunction or restraining order. Defendants do not dispute that, as parties to this action, they were bound by the order. Nevertheless, the injunction restrained the conduct of only Mr. Storie, and it cannot be the basis for a finding of contempt against defendants.

For the reasons stated above, plaintiffs' motion to reconsider is DENIED.

**So Ordered.**

F. Dennis Saylor IV
United States District Judge

Dated: January 25, 2005

5