UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM A. STORIE and MARITZA STORIE, ) ) ) ) Plaintiffs, ) ) v. ) ) HOUSEHOLD INTERNATIONAL, INC., ) and BENEFICIAL FINANCE CORP., ) ) Defendants. ) ) | Civil Action No. 03-40268-FDS |

MEMORANDUM AND ORDER ON
PLAINTIFFS' MOTION FOR RECONSIDERATION

**SAYLOR, J.**

This case involves allegations of predatory lending practices by the defendants Household International, Inc. and Beneficial Finance Corporation. Plaintiffs William and Maritza Storie, proceeding *pro se*, ask the Court to reconsider its January 25, 2005 memorandum and order dismissing their complaint in favor of compulsory arbitration. Plaintiffs have also filed a motion for leave to supplement their pleadings. For the reasons stated below, plaintiffs' motion for reconsideration will be denied.[1]

**I.   Background**

The facts as alleged in plaintiffs' complaint are recited at length in the Court's January 25,

---

[1] Plaintiffs style their motion as a "Motion to Reconsider Granting of Defendants' Motion to Dismiss." The Federal Rules of Civil Procedure do not expressly recognize post-judgment motions for reconsideration. *See, e.g., Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Because, among other things, appeal rights are potentially affected, parties should characterize their motions as one to alter or amend the judgment under Fed. R. Civ. P. 59(e), or as one for relief from judgment under Fed. R. Civ. P. 60(b), as applicable. *Id.* As stated below, the court construes the present motion as having been brought under Rule 59(e).

2005 decision.  For purposes of understanding the issues involved in the motion for reconsideration, the following abbreviated statement of facts is provided.

Plaintiffs obtained a home-equity loan (the "Loan") with an initial line of credit of $37,000 from Beneficial Massachusetts, Inc., on August 24, 2000.  The Loan was secured by a mortgage conveyed to Beneficial Massachusetts, Inc., by Mr. Storie and Maritza Storie, "husband and wife."  Although Mrs. Storie signed the mortgage, she did not sign the promissory note for the Loan, the Home Equity Credit Line Revolving Loan Agreement ("Loan Agreement").

The mortgage signed by the Stories specifically references the Loan Agreement.  The Loan Agreement expressly states, in a section titled "Alternative Dispute Resolution and Other Riders," that "[t]he terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction *are incorporated into this Agreement*."  (emphasis added).

The Arbitration Rider, which like the Loan Agreement was signed only by Mr. Storie, expressly provides for arbitration whenever there is a dispute relating to the Loan Agreement.  Indeed, it clearly states that either party has a right to demand that any dispute be submitted to arbitration and further provides, in relevant part:

> By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, and third party claims, *arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement* ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

(emphasis added).

Plaintiffs alleged that defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, as amended by the Home Owners Equity Protection Act ("HOEPA"), Regulation Z, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* Plaintiffs also brought claims under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, and the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D. Although Mrs. Storie did not sign the Loan Agreement that is the subject of this dispute, she claimed that she had standing to contest the legality of defendants' disclosure practices because she executed a mortgage in favor of defendants.

Defendants moved to dismiss or, in the alternative, to compel arbitration and stay this litigation pending arbitration. Although that motion sought relief on various grounds, the Court addressed only the portion seeking to dismiss or stay this action pending arbitration.[2] Defendants asserted that dismissal or a stay was appropriate because the dispute is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.

Plaintiffs opposed arbitration on the grounds that (1) they were fraudulently induced to enter into the Loan; (2) it would be unconscionable under Mass. Gen. Laws ch. 106, § 2-302 to hold them to the Arbitration Rider; (3) the cost of arbitration may be prohibitive; and (4) public policy favors the public resolution of this dispute.

---

[2] Defendants also moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, based on the presence of a release executed by Mr. Storie and the expiration of the relevant statute of limitations. Defendants further moved to dismiss under Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction); 12(b)(4) (insufficiency of process); 12(b)(5) (insufficiency of service of process); and 12(b)(7) (failure to join an indispensable party. Those motions were all based on plaintiffs' purported failure to name the correct defendant in this case, which defendants assert is Beneficial Massachusetts, Inc., the party from whom plaintiffs obtained the loan.

The Court dismissed the case in favor of arbitration. The Court concluded that all of the issues presented in this case are arbitrable under the FAA. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Specifically, the Court observed that the language of the Arbitration Rider is very broad and applies to "any claim, dispute or controversy . . . arising from or relating to" the Loan Agreement. Because the Stories' claims all involve allegations of inadequate disclosures in connection with the Loan Agreement, they are covered by the Arbitration Rider and are arbitrable. The Court also determined that Mrs. Storie's claims are arbitrable because, although she did not sign the Loan Agreement or the Arbitration Rider, she did sign the mortgage, and, accordingly, she may be deemed to have assented to arbitration for claims arising out of the loan transaction. *See Fluehmann v. Associates Fin. Svcs.*, 2002 WL 500564 (D. Mass. 2002).

As to plaintiffs' specific objections to arbitration, the Court concluded that neither fraudulent inducement nor unconscionability provided a defense to arbitration because those theories were asserted with respect to the Loan Agreement generally, and not the Arbitration Rider itself. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). The Court further found that, even if there were public policy reasons favoring the court resolution of this dispute, those reasons could not outweigh the "liberal federal policy favoring arbitration agreements" expressed by Congress through the FAA. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24-25 (1983); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). Finally, the Court held that, because plaintiffs had failed to present evidence that arbitration would present truly prohibitive costs, and because of the availability of fee sharing and awards of costs and attorneys' fees, the cost of arbitration would not be so great as to preclude

them from effectively vindicating their statutory rights in the arbitral forum. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 92.

Ultimately, having determined that under the FAA these claims must proceed in arbitration, the Court was left only to decide whether dismissal or a stay was appropriate. The Court concluded that, because all of the issues before the Court were arbitrable, dismissal rather than a stay should result. *See Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998); *Unlimited Servs. Corp. v. Swift-Eckrich, Inc.*, 727 F. Supp. 75, 78 (D.P.R. 1989) (quoting *Sea-Land Servs., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757-58 (D.P.R. 1986) (internal citations omitted)).

On February 4, 2005, plaintiffs filed a motion to reconsider the Court's January 25, 2005 decision. On February 17, plaintiffs filed a motion for leave to file a "supplemental pleading," contingent upon a favorable ruling from the Court on their motion to reconsider.[3] Defendants oppose plaintiffs' motion to reconsider as untimely, inconsistent with the grounds for reconsideration required by Rule 59, and frivolous in violation of Fed. R. Civ. P. 11.[4]

## II. Analysis

Plaintiffs' motion essentially challenges the enforceability of the Arbitration Rider. More specifically, the Stories claim that they have "new evidence" demonstrating that the Arbitration Rider is unenforceable under theories of unconscionability, duress, fraud, and indue influence,

---

[3] Because the motion for reconsideration will be denied, the motion for leave to file a supplemental pleading will be denied as moot.

[4] As grounds in partial support of their objection to plaintiffs' motion to reconsider, defendants state that "Plaintiffs' motion is otherwise frivolous and constitutes a violation or Rule 11 of the Federal Rules of Civil Procedure." The Court does not interpret this as a motion for sanctions under Rule 11. In any event, although *pro se* plaintiffs are subject to sanctions, *see Lefebvre v. Commissioner*, 830 F.2d 417, 420-21 (1st Cir. 1987), plaintiffs' claims are not obviously frivolous, and therefore such sanctions are not appropriate here.

including (1) cases from outside Massachusetts in which the identical arbitration agreement has been found unconscionable; (2) information from a former Beneficial loan officer that she was trained to represent that the Arbitration Rider was a contingency in obtaining the loan; and (3) the existence of an unsigned "customer copy" of the Arbitration Rider.

### A.     Timeliness of Motion

As noted, plaintiffs' motion for reconsideration does not cite any specific rule of civil procedure.  Because it was filed after dismissal of the case, it is necessarily either a motion to alter or amend the judgment under Rule 59(e) or a motion for relief from judgment under Rule 60(b).  Because plaintiffs' memorandum cites Rule 59(e), and because that rule has been construed to permit a court to vacate its judgment, this Court will construe the motion as having been brought under that rule.  *See Foman v. Davis*, 371 U.S. 178, 181 (1962); 8 CHARLES A. WRIGHT & ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1. (2d ed. 1995).

Rule 59(e) states that "any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."  This matter was dismissed by the Court on January 25, 2005.  Under Fed. R. Civ. P. 6(a), when the period of time prescribed under a rule is less than 11 days, intermediate Saturdays, Sundays, and legal holidays are excluded from the computation.  Plaintiffs therefore had until February 9, 2005, to file a motion under Rule 59(e).  The motion was filed on February 7, 2005, and was therefore timely.[5]

---

[5] Plaintiffs filed their motion for reconsideration on February 7 and their supporting memorandum on February 14.  Under Local Rule 7.1(B)(1) the memorandum should have been filed with the motion; however, the requirement is not jurisdictional, and in light of plaintiffs' *pro se* status, the Court will overlook the error.

B.     **Standard for Deciding a Motion under Rule 59(e)**

Rule 59(e) is "aimed at reconsideration, [and] not initial consideration, and thus is not a proper mechanism to advance arguments that should have been presented before judgment was entered, but were not." *Sandoval Diaz v. Sandoval Orozco*, 2005 WL 1501672, at *2 (D.P.R. 2005). The court should analyze a Rule 59(e) motion with an eye toward balancing the interest in rendering a just decision with the need for finality of judgments. *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 190 (1st Cir. 2004).

The court may exercise discretion to grant a Rule 59(e) motion if the movant presents (1) new evidence not previously available; (2) an intervening change in controlling law; or (3) the need to correct a clear error of law or to prevent manifest injustice. *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 n.3 (1st Cir. 1993); *Sandoval Diaz,* 2005 WL 1501672, at *3. Because "[s]uch problems rarely arise . . . , the motion for reconsideration should be equally rare." *Id*. *See also* 8 WRIGHT & MILLER § 2810.1 ("In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied.").

Plaintiffs claim to have discovered "new evidence" (consisting of cases from other jurisdictions) holding that the same arbitration rider has been found unenforceable; that one of the defendant's former loan officers has told the plaintiffs that she was trained to represent that the signing of the Arbitration Rider was a contingency in obtaining the loan; and that plaintiffs' "customer copy" of the Arbitration Rider, which they claimed not to have found until February 13, 2005, was not executed. Plaintiffs do not explain why this "new evidence" was not available to them before the Court's entry of judgment on January 25, 2005. The cases plaintiffs cite in their memorandum—*ACORN v. Household International, Inc.*, 211 F. Supp. 2d 1160 (N.D. Cal.

2002) and *Luna v. Household Finance Corp. III*, 236 F. Supp. 2d 1166 (W.D. Wash. 2002)—were reported in June 2002 (*ACORN*) and November 2002 (*Luna*), more than a year before the complaint in this matter was even filed (in December 2003).

However, in light of the fact that plaintiffs are proceeding *pro se*, this Court will exercise its discretion to reconsider its decision and determine whether the new material presented by plaintiffs warrants a conclusion that there is a need to correct a clear error of law or to prevent a manifest injustice. In so doing, as explained below, the Court finds no basis to vacate the judgment previously entered. *See Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 n.3 (1st Cir. 1993).

### A.     The Enforceability of the Arbitration Rider

The Federal Arbitration Act ("FAA") provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, upon application by one of the parties, federal courts must stay any suit in which any issue is referable to arbitration under a written agreement. 9 U.S.C. § 3. Courts may dismiss such an action where "all of the issues before the court are arbitrable." *See Bercovitch*, 133 F.3d at 156 n.21. Whether a contract containing an arbitration clause is unenforceable based on a common-law contract defense is an issue for the arbitrator, not the court. *See Prima Paint*, 388 U.S. at 403-04. But when, as here, the arbitration agreement *itself* is challenged under traditional contract defenses, the court determines its enforceability by applying "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

As recited above, plaintiffs raise the following defenses to the enforceability of the Arbitration Rider:  duress, undue influence, fraud, and unconscionability.  The Court will consider each defense in turn.

### 1.    **Duress**

Plaintiffs apparently claim that defendants obtained their consent to the Arbitration Rider by duress and that the Arbitration Rider is therefore unenforceable.  Plaintiffs allege that, when defendants first made contact with them in July 2000, they were in the midst of a financial crisis attributable to the stock-market plunge, a past-due first mortgage, modest-to-low income, credit-card debt, a car loan, a tractor loan, and three small children.  "Plaintiffs felt desperate and were in fear of losing their home.  Notices of default were being sent and [their mortgagee] was sending assessors to view Plaintiff's property."  According to the Stories, defendants persuaded them to place much of their consumer debt, including a $17,000, 0% interest car loan, into the Loan—ostensibly to reduce their financial strain.  As part of the closing of the Loan, Mr. Storie signed the Arbitration Rider.

As an initial matter, this argument, like those the Court rejected in its memorandum and order on the motion to dismiss, is primarily geared toward the Loan Agreement, not the Arbitration Rider itself.  In essence, the Stories contend that the economic duress from which they suffered caused them to enter the Loan Agreement; they do not explain how any such duress caused them to enter the Arbitration Rider specifically.  As such, this argument is one that must be presented to the arbitrator.  *See id.*

In any event, Massachusetts law does not recognize a defense of duress based on the facts set forth above.  "To show economic duress (1) a party 'must show that he has been the victim of

a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of his unfettered will.'" *International Underwater Contractors, Inc. v. New Eng. Tel. & Tel. Co.,* 8 Mass. App. Ct. 340, 342 (1979) (quoting 13 WILLISTON, CONTRACTS § 1617, at 704 (3d ed. 1970)). The assertion of duress requires more than that a party took advantage of another's negative economic situation; it requires an allegation that the accused party caused the financial difficulty to induce the contract or agreement. *Id.* (citing 13 WILLISTON, *supra*, § 1617, at 708.).

Even if the Stories were in severe financial distress when they agreed to the terms of the Loan Agreement, there is nothing in the record to suggest that defendants caused plaintiffs' condition in any way. Rather, as the Stories acknowledge, their unfavorable financial condition was apparently caused by other indebtedness, the economy, and other factors not related to defendants. While defendants may have taken advantage of the Stories' situation, there is nothing in the record to support a finding that they were responsible for creating that condition. Therefore, duress is not a viable defense to the Loan Agreement, let alone the Arbitration Rider itself.

### 2. Undue Influence

Plaintiffs also claim that the same set of facts supporting a finding of duress support a finding of undue influence. Massachusetts follows the principles of law articulated by the RESTATEMENT (SECOND) OF CONTRACTS with respect to undue influence. *Bruno v. Bruno*, 384 Mass. 31, 34 (1981). The RESTATEMENT (SECOND) OF CONTRACTS § 177(1) provides: "Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who, by virtue of the relation between them, is justified in assuming that that person

will not act in a manner inconsistent with his welfare." The elements necessary to prove undue influence are "(1) a person who can be influenced, (2) the fact of deception practiced or improper influence exerted, and (3) submission to the overmastering effect of such unlawful conduct." *In re The Bible Speaks*, 869 F.2d 628, 641 (1st Cir. 1989) (internal citations omitted).

Plaintiffs argue that the Arbitration Rider is unenforceable due to undue influence because they were in a weakened financial state and defendants exploited that state to induce them to enter the Loan Agreement. As the Court has explained, any dispute regarding the validity of the Loan is subject to arbitration; therefore, the only relevant question is whether defendants asserted undue influence to induce the Stories to execute the Arbitration Rider.

The facts as alleged do not support a finding of undue influence. There is no indication that plaintiffs' will was dominated and their exercise of free choice destroyed. Nor is there any evidence in the record to suggest any type of confidential relationship that would support a finding that plaintiffs were justified in assuming that defendants would not act in a manner inconsistent with their welfare. *See Bruno*, 384 Mass. at 34-35. The types of confidential relationships recognized in cases of undue influence include "those of parent and child, husband and wife, clergyman and parishioner, and physician and patient." RESTATEMENT (SECOND) OF CONTRACTS § 177, cmt. a (1979). The relationship between a commercial lender and a private borrower is not in the slightest respect analogous to any of those relationships. Plaintiffs argue that they were extremely vulnerable at the time of the signing and that defendants were in a dominant position. Mere vulnerability to influence is not sufficient to prove undue influence, without a separate showing of the exertion of improper influence or submission to the

overmastering effect of such unlawful conduct. *Bruno*, 384 Mass. at 33 (internal citations omitted). Plaintiffs have made no such showing here.

### 3. **Fraud**

Plaintiffs make two arguments that the Court will construe as falling within the ambit of fraud. First, they allege an irregularity with respect to Mr. Storie's signature on the Arbitration Rider. The Court will interpret this claim as one for fraud in the execution. Second, they allege that the Beneficial loan officer who handled their transaction was trained to represent that the Loan was contingent on their execution of the Arbitration Rider. The Court will interpret this claim as one for fraudulent inducement.

To prove fraud in the execution under Massachusetts law, a plaintiff must show that he or she was "tricked into signing an instrument without knowledge of its true nature or contents." *Vasapolli v. Rostoff*, 39 F.3d 27 (1st Cir. 1994) (referring to the tort as "fraud in the factum"). In this regard, a misrepresentation must go to the document in its entirety–such as when a person believes he or she is signing only a receipt but in fact is signing a contract–and not just to the terms of a document. *Id*. Fraud in the execution does not occur when "the essential nature of the document . . . has been accurately represented or is understood by the signer; when the signer is capable of reading and understanding the content of the document; and when the element misrepresented does not involve the true nature or contents of the instrument, but concerns a term or factor in the transaction, even an important one, but not going to the essence. *Frederico v. Brockton Credit Union*, 39 Mass. App. Ct. 57, 63 (1995).

Plaintiffs' claim of fraud in the execution is based on the alleged fact that, in preparing their memorandum in support of their motion to reconsider, the Stories came across their

"customer copy" of the Arbitration Rider and that copy of the Arbitration Rider is not signed. The Stories acknowledge that defendants have submitted a copy of the Arbitration Rider purporting to be signed by Mr. Storie, and they do not deny that the signature on that copy of the Arbitration Rider is in fact Mr. Storie's. Nevertheless, the Stories now claim that they do not remember whether or not they actually signed the Arbitration Agreement.[6]

The Court finds no merit to this argument. It would not be unusual for a lender to send a borrower an unsigned copy of all loan forms for record keeping. More importantly, plaintiffs do not deny that the signature on the copy of the Arbitration Rider submitted by defendants is genuine. That they have no specific memory of signing the document is immaterial. Therefore, there is no basis for a finding of fraud in the execution of the Arbitration Rider.

To prove fraud in the inducement under Massachusetts law, a plaintiff must prove that the defendant made a material misrepresentation with knowledge of its falsity, or with reckless disregard of the actual facts, and that plaintiff was induced by and was reasonable in relying on the misrepresentation to enter the agreement. *Shawmut-Canton LLC v. Great Spring Waters of Am., Inc.*, 62 Mass. App. Ct. 330, 335 (2004).

Plaintiffs' claim of fraud in the inducement is apparently based on certain information provided to them by Suzanne Rauscher, the Beneficial loan officer who handled the Stories' transaction. According to the Stories, Ms. Rauscher informed them, on February 4, 2005, that

---

[6] Plaintiffs make a related argument as to the existence of the unsigned copy of the Arbitration Rider: "If Defendants reserve the right to be able to present either a signed or an unsigned copy of the Arbitration Agreement, this places them in an extremely advantageous position. They can then allege a Defendant did not sign an arbitration agreement and proceed through the courts system." This argument is entirely speculative and warrants no further attention from the Court.

13

"she was trained to represent that the signing of Defendants' Arbitration Rider was a contingency in obtaining the loan."

This theory fails for at least two reasons.  First, the Stories do not claim that *any* representations were made to them about the Arbitration Rider, let alone that they were told that their ability to obtain the Loan was contingent upon their executing the Arbitration Rider. Second, with respect to Ms. Rauscher's statement, there is no indication that what Ms. Rauscher explained was not in fact true:  that the ability of potential customers of Beneficial to obtain the Loan was contingent upon their executing the Arbitration Rider.

### 4. Unconscionability

Plaintiffs' final arguments relate to the claimed unconscionability of the Arbitration Rider. Plaintiffs maintain that the Arbitration Rider is unconscionable because (1) it is an adhesion contract, and they at the time had no other reasonably available source of credit; (2) the Rider prohibits class actions; (3) it provides non-mutual legal remedies, especially with regard to foreclosure; (4) it provides for the confidentiality of any awards; and (5) it requires the parties to share the costs of arbitration.[7]

#### a. The *ACORN* and *Luna* Cases

Plaintiffs rely heavily on two cases from outside Massachusetts—*ACORN* and *Luna*—in which the same arbitration rider was found to be unconscionable under the laws of their respective jurisdictions.

---

[7] Plaintiffs also claim that the "misrepresentation of Ms. Suzanne Rauscher" points to unconscionability. The Court has analyzed this alleged misrepresentation in connection with the Stories' fraud-in-the-inducement argument.  It is not clear how this alleged misrepresentation relates separately to the concept of unconscionability.

In *ACORN*, a consumer-rights organization and individual borrowers alleged a course of predatory lending on the part of Household Finance Corporation of California and Beneficial California, Inc. and their affiliates. 211 F. Supp. 2d at 1161. Five of the seven individual plaintiffs in *ACORN* had signed arbitration agreements that were included in the loan agreements. *Id*. at 1162. The plaintiffs sought class-wide damages and equitable relief. *Id*. Defendants moved to stay the plaintiffs' claims and to compel arbitration. *Id*. at 1161.

The court concluded that the arbitration agreement was unconscionable and therefore unenforceable. *Id*. at 1174. Under California law, a contract must be both procedurally and substantively unconscionable. *Id.* at 1168. Procedural unconscionability generally concerns the context of bargaining, including any absence of meaningful choice by one party and the extent to which terms are hidden in an excessively long form agreement. *Id.* Substantive unconscionability generally concerns overly harsh or one-sided terms. *Id.* The arbitration agreement was procedurally unconscionable because it was a standardized contract imposed and drafted by the party of superior bargaining strength on a take-it-or-leave-it basis and the financially distressed plaintiffs were unlikely to be eligible for alternative sources of credit on more favorable terms. *Id.* at 1169. The agreement was substantively unconscionable because the terms of which the plaintiffs complained–the prohibition on class actions, the requirement that any arbitration award remain confidential, the fact that the remedy of foreclosure is specifically excluded from the arbitration provision, and the cost-splitting provision–were excessively favorable to the defendants. *Id.* at 1170-74.

Shortly thereafter, the United States District Court for the Western District of Washington was confronted with the same issue. The *Luna* plaintiffs also charged predatory-lending practices

15

by defendants who then moved to compel arbitration based on arbitration riders identical to those in *ACORN*. 236 F. Supp. 2d at 1170-71. Plaintiffs claimed the arbitration riders were unconscionable. Applying Washington law, the court noted that it differs in at least one important respect from California law: although the meanings of procedural and substantive unconscionability were very similar, under Washington law a contract may be invalidated on grounds of *either* procedural unconscionability *or* substantive unconscionability. *Id.* at 1174. The *Luna* court held that the arbitration agreement was not procedurally unconscionable because, although the agreement was an adhesion contract, adhesion contracts are not *per se* procedurally unconscionable and the circumstances surrounding the execution of the arbitration agreement did not suggest any impropriety. *Id.* at 1175-77. The agreement was "plainly written and unlikely to confuse a reasonably attentive lay reader" and its terms were not hidden in a maze of fine print. *Id.* at 1175-76. However, the *Luna* court found the arbitration rider substantively unconscionable in light of its inclusion of the four provisions, which were found fatal to the rider in *ACORN*, for much the same reasons as articulated in *ACORN*.[8] *Id.* at 1177-82.

The Court agrees that the Arbitration Rider is identical to those struck down in *ACORN* and *Luna*. Because those decisions turned on the application of California and Washington law, respectively, the Court will consider the enforceability of the Arbitration Rider under Massachusetts law.

---

[8] The *Luna* plaintiffs also challenged the rider's requirement that the arbitration be held in a city where a federal district court is located. *Id.* at 1178. The court determined that this restriction on locations for arbitration hearings was not overly harsh (as most areas in Washington are with a few hours' drive of a federal district court) and therefore was not substantively unconscionable. *Id.*

### b. Unconscionability under Massachusetts Law

Under Massachusetts law, an unconscionable contract is one "such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other." *Waters v. Min Ltd.*, 412 Mass. 64, 69 (1992). To prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise). *Zapatha v. Diary Mart, Inc.*, 381 Mass. 284, 294 & n.13; *United Companies Lending Corp. v. Sargeant*, 20 F. Supp. 2d 192, 206 (D. Mass. 1998). The test is a conjunctive one; that is, a plaintiff must prove *both* substantive *and* procedural unconscionability to prevail on this theory. *Zapatha*, 381 Mass. at 293 ("This two-part test for unconscionability involves determining whether there was an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.") (internal quotations omitted). Whether an agreement is unconscionable or not is a question of law. *Id*. at 291.

As to procedural unconscionability, plaintiffs must prove the Arbitration Rider had the potential for unfair surprise in light of the circumstances under which the agreement was made. Such unfair surprise might arise where the provision was "obscurely worded," "buried in fine print in the contract," or proposed under other circumstances suggesting unfairness. *Id*. at 293-94. The burden is on plaintiffs with respect to substantive unconscionability to show that "the agreement allocated the risks and benefits connected with termination in an unreasonably

disproportionate way and that the termination provision was not reasonably related to the legitimate commercial needs of '' the defendant. *Id*. at 295.

### c. Whether the Arbitration Rider Is Unconscionable

Here, plaintiffs point chiefly to the circumstances leading up to the loan as evidence of unconscionability. They allege that defendants "targeted them, because, at the time of the loan, they had a high debt to income ratios [sic], had significant unsecured debt, had modest income and had very recently experienced dramatic decrease in their stock portfolio." (emphasis removed). They conclude that this "intrusive marketing . . . directly led to this arbitration agreement allegedly being signed." They also state that they do not remember signing the Arbitration Rider and proffer an unsigned "customer copy" of the Arbitration Rider.

Under Massachusetts law, even if an agreement is a contract of adhesion, it is not necessarily unconscionable. *Zapatha*, 381 Mass. at 293 n.12. Plaintiffs acknowledge this in their brief, but contend that the take-it-or-leave-it character of the Arbitration Rider, combined with the circumstances leading up to the Loan, nevertheless make the agreement procedurally unconscionable. The Court disagrees. It is not at all clear how the plaintiffs' financial distress and the defendants' "intrusive marketing" unfairly influenced the plaintiffs' decision to enter into the Arbitration Rider specifically. *Cf. Prima Paint*, 388 U.S. at 403-04 (courts should consider claims of fraud in the inducement to enter the arbitration clause specifically, not the contract generally, in assessing the making of the agreement to arbitrate). As set forth in the Court's January 25, 2005 decision, plaintiffs must show how the circumstances unfairly affected their decision to agree to the Arbitration Rider. Plaintiffs seem to point to the information provided by Ms. Rauscher as somehow inducing them to enter the Arbitration Agreement; however, as noted

above, they have not shown her statement to have been a misrepresentation, and they do not even allege that they knew that the Arbitration Rider was a contingency to obtaining the Loan or that this impeded a meaningful choice to do so. In conclusory fashion, plaintiffs do allege that the "intrusive marketing . . . directly led to this arbitration agreement." However, they do not provide any facts that would support this conclusion. The facts as alleged do not show that the Arbitration Rider was riddled with improprieties in its formation, was hidden or obscured in a prolix form, or that it otherwise had the potential for unfair surprise. Nor do the plaintiffs allege that they had insufficient time to consider the agreement or any other procedural deficiency. Accordingly, the Arbitration Rider cannot be found to have been procedurally unconscionable.

Because the Arbitration Rider cannot be found to have been procedurally unconscionable, the Court need not reach the issue of whether it is substantively unconscionable.[9]

**III.  Conclusion**

For the reasons described above, plaintiffs' Motion to Reconsider Granting of Defendants' Motion to Dismiss is DENIED, and plaintiffs' Motion for Leave to File Supplemental Pleading is DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: September 22, 2005                     United States District Judge

---

[9] Because plaintiffs are not seeking class certification, and have not presented *any* evidence as to the costs of arbitration in their case or their ability to afford it, the question of whether the terms of the Arbitration Rider are substantively oppressive to plaintiffs would seem to be more theoretical than real. *See, e.g., Piantes v. Pepperidge Farm, Inc.*, 875 F. Supp. 929, 937 (D. Mass. 1995) (although the termination provision of a franchise agreement required no advance warning, this did not support the plaintiff's unconscionability theory as this concern was only theoretical where the plaintiffs received numerous oral warnings of impending termination).